

Adam E. Lang (#022545)
Matt Jarvey (#031350)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: alang@swlaw.com
        mjarvey@swlaw.com
*Attorneys for Plaintiff Frontier Airlines, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Frontier Airlines, Inc., | No. 2:20-cv-01432-ESW |
|---|---|
| Plaintiff, | |
| v. | **PLAINTIFF'S RESPONSE TO MOTION FOR EXTENSION OF TIME TO COMPLETE DISCOVERY** |
| Menzies Aviation (USA), Inc., | |
| Defendant. | |

The Court should deny Menzies's motion to extend the fact-discovery deadline, which Menzies filed on the last day of the discovery period. Doc. 55. Menzies's motion seeks an additional two months to conduct discovery that it failed to diligently pursue during the discovery period. Menzies waited until late in the discovery period to begin propounding discovery to Frontier, and it waited even later in the period—until the last few weeks—to begin taking depositions. Whatever "new" information Menzies claims to have learned recently is either not new or is the product of Menzies's late start on discovery. Under the circumstances, Menzies's motion appears to be either an attempt to re-open discovery so that Menzies can pursue a costly fishing expedition against Frontier, or an attempt to give Menzies cover to remedy defects in its own record. Either way, the Court should deny the attempt.

Moreover, Frontier has long objected to the proposed additional discovery Menzies's purports to seek, yet Menzies never timely sought to resolve the objections with Frontier or the Court before discovery closed. Although Menzies's motion spans 19 pages with over 100 pages of exhibits, Menzies did not raise a single issue discussed in its motion—or *any* discovery issue at all—until three days before the discovery deadline. And Menzies's *never* timely raised a discovery dispute with the Court, including in its instant motion, which does not ask the Court to resolve a dispute or to compel any discovery but only to extend the discovery deadline. Doc. 55 at 17.[1] It is simply too late to raise a dispute or to seek an extension now.

The parties have had nine months to pursue discovery and raise discovery disputes. Waiting until the eleventh hour to seek more time or to raise underlying discovery issues does not comport with the standard of diligence needed to justify a discovery extension. The Court should thus deny Menzies's request for more time.

## I.    BACKGROUND

### A.    Factual Background

Menzies's motion arises from its purported attempt to discover information about a component of Frontier's damages. Despite Menzies's attempt to characterize those damages as "complex," Frontier's damage claim is straightforward. Doc. 55 at 5. A Menzies' employee ran a belt loader into the side of a Frontier aircraft, damaging it. Frontier was contractually obliged to repair that damage before returning the aircraft to the company from whom Frontier leased the aircraft. Frontier was also required to do routine maintenance checks on the aircraft before returning it (as is typical of aircraft leases). Frontier had scheduled the aircraft to undergo the routine checks starting on May 1, 2018, so that the aircraft could be returned to the lessor by the lease-return deadline of June 21, 2018. But because Frontier also had to repair the damage to the aircraft, Frontier was unable to return the aircraft until much later, which caused Frontier to incur contractual penalties to the lessor. Those penalties are thus a component of Frontier's damages.

---

[1] Frontier's citations refer to ECF page numbers.

4849-9739-8759

In response, Menzies has searched for a basis to argue that Frontier could have returned the aircraft sooner, and thus paid less in contractual penalties. The discovery record thus far, however, does not support that argument, however. Menzies thus seeks additional time to conduct discovery on every single minute aspect of maintenance or "wear-and-tear" that ever occurred on the aircraft and its component parts, hoping to find something to suggest that another maintenance problem—not the damage event—caused Frontier to return the aircraft late. As discussed below, this appears to be little more than a fishing expedition designed to either find the proverbial needle in the haystack, burden Frontier and delay the resolution of this case, or both.

**B.     Procedural Background**

Menzies has had ample time to pursue discovery. This case was removed to this Court on July 20, 2020. Doc. 1. Shortly thereafter, the parties stipulated to a fact-discovery deadline of February 26, 2021, which the Court entered. Docs. 25, 26. The parties later stipulated to extend that deadline to April 23, 2021, and the Court granted the extension. Doc. 37. The parties have thus had more than nine months to pursue fact discovery. Yet Menzies delayed actively litigating this case until late in the discovery period, which is why its motion to extend was not filed until the last day of the discovery period.

In fact, Menzies pursued no discovery whatsoever from Frontier for nearly six months after this case was removed. It was not until January 12, 2021, that Menzies propounded its first set of written discovery requests, a little over three months before the extended discovery deadline. Doc. 35. Menzies later propounded a second set of written discovery requests on March 9, 2021, just a month and a half before the extended discovery deadline. Doc. 47. Because Menzies propounded its requests so late in the discovery period, Frontier's responses were due even later in the period: Frontier's responses to Menzies's first set of written discovery requests were due about two months from the discovery deadline, and the responses to the second set were due within a couple weeks of the deadline. Menzies presumably knew this when it propounded its written discovery so late, and in full view of the Court's Case Management Order, which admonished that

"[a]bsent extraordinary circumstances, the Court will *not* entertain fact discovery disputes after the deadline for completion of fact discovery." Doc. 26 at 3.

Menzies also delayed pursuing depositions. Menzies took three depositions, all within about one week of the deadline to commence depositions (April 16, 2021) and within about two weeks of the discovery deadline (April 23, 2021). Menzies deposed James Mach, Frontier's Director of Maintenance, on April 6, 2021; Elias Sanchez, a former Frontier mechanic, on April 7, 2021; and Sharath Sashikumar, Frontier's Manager of Fleet & Strategic Sourcing, on April 9, 2021.

Finally, Menzies delayed raising any purported discovery disputes with Frontier. During the entire nine-month discovery period, Menzies never once raised a dispute with Frontier until three days before the discovery deadline. In an email on April 20, 2021, counsel for Menzies, for the first time, requested that Frontier supplement its discovery responses by producing a massive number of additional documents (to which Menzies alludes throughout its motion). Doc. 55 at 4; Ex. 1. As discussed below, however, Menzies knew months earlier that Frontier objected to such a massive request, yet Menzies never raised the issue with Frontier until days before the discovery deadline. And Menzies never raised the issue at all with the Court before the discovery deadline by filing a timely motion to compel.

In short, Menzies chose to backload its discovery by waiting until the end of the discovery period to pursue documents and testimony and to raise purported discovery disputes. That choice should inform how the Court understands Menzies's current attempt to seek more time for additional discovery.

## II. <u>LEGAL STANDARD</u>

Once entered, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)

4849-9739-8759

(citations and internal quotation marks omitted). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.* "If that party was not diligent, the inquiry should end." *Id.* The Court has "broad discretion" in deciding whether to modify a schedule. *Id.* at 607.

In exercising that discretion, however, federal courts have routinely declined to extend a schedule when a party, like Menzies, has delayed pursuing discovery or requests the extension on the eve of a deadline. *See, e.g.*, *Claytor v. Computer Assocs. Int'l, Inc.*, 211 F.R.D. 665, 666 (D. Kan. 2003) (denying a motion to reconsider the denial of an extension sought one day before the discovery deadline where the requesting party had never previously raised the discovery issues asserted); *Peterson v. Burris*, No. 14-CV-13000, 2016 WL 1458107, at *2 (E.D. Mich. Apr. 14, 2016) (affirming the denial of an extension where "discovery had already been extended four months" and the requesting party "waited until less than three weeks before the extended deadline to attempt to depose the non-parties"); *Boparai v. Shinseki*, No. 1:09-CV-01164 AWI, 2010 WL 4738125, at *2 (E.D. Cal. Nov. 16, 2010) (denying an extension where, "for more than five months, [the requesting party] failed to conduct discovery" and requested the extension "a mere six days before the non-expert discovery deadline"); *cf. United States ex rel. Gohil v. Sanofi U.S. Servs. Inc.*, No. CV 02-2964, 2020 WL 1888966, at *4–5 (E.D. Pa. Apr. 16, 2020) (collecting authorities) (noting that "[a] district court is well within its discretion when it denies untimely discovery requests that could have been made at an earlier date," and that a "motion to compel, filed one day before discovery closed, was clearly untimely"); *Colon v. City of New York*, No. 12-CV-9205 JMF, 2014 WL 4100607, at *2 (S.D.N.Y. Aug. 20, 2014) (noting that "it was incumbent upon [the moving party] to raise the [discovery] issues with the Court before the proverbial eleventh hour").

### III. ARGUMENT

**A.  Menzies failed to diligently pursue the discovery for which it now seeks an extension.**

Menzies ostensibly seeks a discovery extension to do three things: (1) "obtain and review outstanding documents" related to Frontier's damages; (2) "conduct at least one additional deposition of a Frontier employee," Thom DeMint; and (3) have the "*opportunity to seek*" discovery about an "unnamed individual" whom Menzies learned about during one if its depositions.  Doc. 55 at 5, 15, 16–17 (emphasis added).  According to Menzies, an extension is justified because Menzies only recently learned "new facts" about these documents and persons during its depositions on April 6th, 7th, and 9th, and after receiving a production of documents from Frontier on April 5th.  Doc. 55 at 6, 13.

Menzies, however, cannot wait until the eleventh hour to take depositions and request documents, and then plead "new" information.  In any deposition or document production, the requesting party learns "new" information; that is why parties take depositions and request documents.  By Menzies's logic, any party could simply wait until the end of discovery to begin taking depositions, and then argue that discovery must be extended because the party learned "new" information during the depositions.  This would, in essence, allow any party to extend the discovery period indefinitely, but it would contravene Rule 16(b)'s requirement of diligence.  The question is not merely *when* a party learned information, it is whether that party could have learned the information *sooner* via diligence in pursuing discovery.

As discussed below, Menzies knew about, or could have known about, the documents and persons at issue much sooner than Menzies asserts, and it could have acted on that knowledge much when it made that discovery.  Menzies did not pursue these documents and persons with diligence during the discovery period, however, and thus it is not entitled to more time to pursue them.

**1.  "Outstanding" documents regarding damages**

Menzies seeks "to obtain additional documents and information" on a broad range

4849-9739-8759

- 6 -

of topics: the "airworthiness" and "wear-and-tear" on the aircraft before the incident; the 1,500 task cards for routine-maintenance work performed on the aircraft before it was returned to the lessor; any "hidden damage"[2] revealed during the routine maintenance; the "relationship" between the damage-repair and routine-maintenance work performed; Frontier's "system" for distinguishing the repair work from the routine-maintenance work; and Frontier's "status updates" to the lessor during repairs. Doc. 55 at 11–12. This is an astounding volume of information, which would require a correspondingly astounding amount of time and expense to address. Menzies's request for such information smacks of an unfounded fishing expedition designed to unduly burden Frontier and delay the resolution of this case.

In addressing the requested extension, however, it suffices to note that Menzies was not diligent in pursuing this information. Menzies argues that "it became clear only after Mr. Mach's deposition" on April 6th that Menzies would need this additional information. Doc. 55 at 11. But Menzies's prior discovery requests belie that argument. In fact, Menzies sought this information long before Mr. Mach's deposition, in its first set of discovery requests propounded on January 12, 2021. There, Menzies requested virtually every conceivable document related not only to the repairs and maintenance that occurred after the incident at issue (including documents related to all of the aircraft's "component parts"), but also all repair and maintenance records dating back five or ten years in the past. *See* D. Ex. H, Doc. 55-8 (Request Nos. 1–4, 7, 15, 17). Menzies also asked Frontier to disclose the damage history of the aircraft's parts for five years preceding the incident, and the process and timing for completing the maintenance work and damage repairs. *See* D. Ex. E, Doc. 55-5 (Interrogatory Nos. 4, 8). In other words, Menzies knew in early January 2021 (at the latest) that it wanted to pursue the information identified in its motion related to the nature and timing of the repair and maintenance work performed. This was not something that Menzies only became aware of shortly before the discovery deadline.

---

[2] The record contains no evidence that any "hidden damage" existed, and Menzies accordingly cites none.

4849-9739-8759

Nor did Menzies only recently become aware of Frontier's objections to producing the massive volume of information requested. Frontier made good-faith document productions and responses to Menzies's discovery requests, including producing hundreds of pages of repair/maintenance records and day-by-day status reports of work performed following the incident. But, on February 19, 2021, Frontier objected to producing the full volume of documents requested on the grounds that they were irrelevant and unduly burdensome given the timeframe, the massive volume, and the difficulty of retrieving such documents, which are stored with a third-party vendor called FLYdocs.[3] *See* D. Ex. H, Doc. 55-8 (Resp. to Request Nos. 1–4); D. Ex. E, Doc. 55-5 (Resp. to Interrogatory No. 4). For two months after, Menzies never disputed the objections or raised any issue whatsoever with Frontier's production or responses. The first time Menzies ever raised an issue with Frontier was three days before the discovery deadline. Simply put, sitting silent with Frontier's objections for two months and only asking the Court for more time on the last day of the discovery period does not constitute Rule 16(b) diligence.

Similarly, Menzies similarly cannot justify its late request for an extension by citing Frontier's April 5th document production. According to Menzies, Frontier produced additional documents on the "eve of depositions," April 5th, before Mr. Mach's deposition on April 6th, and several of these documents (Menzies's Exhibits I–K) somehow made clear that Menzies needed additional documents. Doc. 55 at 13–15. Contrary to Menzies's characterization, however, Frontier's April 5th production was actually an *early* production. It comprised documents produced in response to Menzies's second set of document requests, which were not due until April 8th. Frontier produced the documents ahead of Menzies's depositions so that Menzies could use them during the depositions (though Menzies did not use Exhibits I–K in any deposition).

In any event, Menzies suggests that Frontier's April 5th production clarified

---

[3] Because Frontier has objected to producing the documents all along, those documents are not merely "outstanding"—as in, remaining to be delivered—as Menzies suggests in its motion. Doc. 55 at 17. They are the subject of a discovery dispute that Menzies never timely pursued.

4849-9739-8759

1  Menzies's need "to obtain documents . . . currently hosted on FLYdocs and/or in the custody
2  and control of custodians other than Mr. Mach." Doc. 55 at 15. But, again, Menzies was
3  on notice of such documents much earlier. Menzies knew that documents were hosted by
4  FLYdocs since at least February 19th when Frontier disclosed FLYdocs in numerous
5  discovery objections. *See* D. Ex. H, Doc. 55-8 (Resp. to Request Nos. 1–4); D. Ex. E, Doc.
6  55-5 (Resp. to Interrogatory No. 4). Yet Menzies never pursued third-party discovery from
7  FLYdocs (or any other third-party). Menzies similarly knew of "custodians other than Mr.
8  Mach" by at least February 19th when Frontier disclosed that "[m]any Frontier employees
9  were involved" with maintenance but that identifying and searching each such employee's
10 records would be unduly burdensome. *See* D. Ex. H, Doc. 55-8 (Resp. to Request No. 4).
11 Again, Menzies sat silent with those disclosures and objections for two months without ever
12 raising a concern with Frontier or the Court.

13     If Menzies wanted to dispute Frontier's good-faith objections or pursue additional
14 documents, Menzies could have done so easily before the discovery deadline, either in the
15 two months following Frontier's February 19th discovery responses or in the several weeks
16 following Frontier's April 5th production and Menzies's depositions. The Court's Case
17 Management Order even provided a mechanism—a short, joint statement of discovery
18 dispute—to quickly raise discovery issues to the Court's attention. Doc. 26 at 3. But
19 Menzies never pursued such an option, just like it never pursued *any* discovery for the first
20 six months of this case. In light of this, Menzies's present motion is little more than an
21 attempt to use recent events as a retroactive justification for its earlier lack of diligence.

22                **2.    Frontier employee Thom DeMint**

23     Menzies argues that it learned about a "recently identified" Frontier maintenance
24 manager, Thom DeMint, during Mr. Mach's deposition on April 6th, and thus it now
25 "requires the additional requested time to conduct the deposition of Mr. DeMint and any
26 other Frontier maintenance personnel who may yet be identified by Frontier." Doc. 55 at
27 15–16. But the only reason that Mr. DeMint was "recently identified" is that Menzies
28 waited so long to take Mr. Mach's deposition. Frontier disclosed Mr. Mach and his role in

4849-9739-8759

- 9 -

this case on January 25, 2021. *See* D. Ex. C, Doc. 55-3 at 10. Yet Menzies waited more than two months until the last few weeks of discovery to depose him.

Moreover, even after Menzies learned about Mr. DeMint on April 6th, it took no action with regard to him. At that time, Menzies had 17 additional days before the discovery deadline in which it could have sought to depose him. But Menzies never even *asked* to depose him, let alone notice his deposition. The first time Menzies ever mentioned Mr. DeMint was on April 20th when it asked Frontier to agree to extend discovery three days before the deadline, which, for all the reasons noted above, is too late.

### 3. The "unnamed individual"

Finally, Menzies seeks an extension to pursue discovery related to an "unnamed individual," whom Menzies learned about on during its deposition of former Frontier mechanic Mr. Sanchez[4] on April 7th. Doc. 55 at 16–17. This justification should fail for the same reason as that related to Mr. DeMint. Frontier first disclosed Mr. Sanchez on February 10, 2021. *See* D. Ex. D, Doc. 55-4 at 11. Menzies could have sought to depose him immediately but chose not to depose him until nearly two months later on April 7th. As with Mr. DeMint, even after Menzies learned about the unnamed individual on April 7th, it took no action despite having 16 additional days before the discovery deadline. Again, Menzies never asked to depose the unnamed individual, asked Frontier to identify him, or followed up with Frontier in any way until three days before the discovery deadline.

Similarly, until the last three days, Menzies never raised any issue with Frontier's response and objection to Menzies's Interrogatory No. 2, which Menzies now argues Frontier "must amend" to include the unnamed individual. Doc. 55 at 16–17; *see also* D. Ex. E, Doc. 55-5 (Resp. to Interrogatory No. 2). Frontier stands on its objection to Menzies's overly broad interrogatory, which objection Menzies never timely challenged, even after deposing Mr. Sanchez. Menzies cannot blame its lack of diligence on "changing disclosures."

---

[4] Mr. Sanchez is a *former* Frontier employee, and Frontier did not learn of his testimony about the unnamed individual before his deposition.

4849-9739-8759

Menzies attempts to justify its late request on purported "conflicting information" in Frontier's "changing disclosures" about its lease damages. Doc. 55 at 6–7, 12. Unsurprisingly, Frontier disputes that characterization. Frontier's damage disclosures only "changed" in the sense that they got more detailed as discovery proceeded, which is typical. But the characterization is also beside the point because virtually all of Menzies's discovery activity occurred *after* Frontier affirmatively clarified its lease damages. The implication in Menzies's argument is that it was toiling through discovery and expending resources under a misunderstanding about the nature of Frontier's damages, and that Menzies would have pursued the discovery at issue here sooner but for Frontier's shifting disclosures. That implication, however, is inaccurate.

As noted above, Menzies pursued no discovery from Frontier for the first six months of the case until it propounded its first discovery requests on January 12, 2021. Given the nature of Menzies's requests about the timing of the repair and maintenance work, it appears that Menzies *did* in fact understand Frontier's damage theory when it began conducting discovery. But even if Menzies was confused on January 12th, that confusion was short-lived because Frontier clarified its lease damages in a detailed letter to Menzies's counsel a couple weeks later, on January 29, 2021. Ex. 2.[5] That letter made clear the exact nature of Frontier's lease-damage theory, complete with citations to relevant documents. Thus, all but a couple weeks of Menzies's discovery activity occurred in full view of Frontier's damage theory. Moreover, Menzies did not discuss the letter with Frontier's counsel or otherwise change course in response to the letter; the letter did not appear to affect Menzies's discovery strategy in any way.

Thus, unlike the case of *Flowers-Carter v. Braun Corp.*, which Menzies cites throughout its motion, this case is not one in which the moving party "expended significant time and resources attempting to nail down the facts surrounding" an issue only to be met with "a series of changing disclosures." No. CV-18-03836-PHX-DWL, 2020 WL 4462174,

---

[5] Although Frontier considers its letter to be subject to Rule 408, Frontier does not reference its letter to prove the validity of its claims but rather to show that Menzies had notice of Frontier's damage theory, which is permissible under Rule 408(b).

4849-9739-8759

at *3 (D. Ariz. June 25, 2020). To the contrary, Menzies expended *no* time and resources on the issue of Frontier's damages before Frontier affirmatively clarified its lease-damage claim. And nothing about that clarification prevented Menzies from pursuing discovery either before or after.

Menzies similarly argues that it needs an extension due to "conflicting information" about the aircraft-repair timeline. Doc. 55 at 7–11. In short, Menzies argues that Mr. Mach's deposition testimony revealed conflicting information about when the damage and maintenance work at issue were performed. This, however, is a manufactured "conflict.". In responding to Menzies's discovery requests, Frontier disclosed that "the damage repairs had to be completed before the routine lease-return maintenance work could be completed" because, for a period of time during the repairs, the aircraft was in a "zero-stress" state that precluded simultaneous maintenance work. *See* D. Ex. E, Doc. 55-5 (Resp. to Interrogatory No. 8). Mr. Mach testified consistently with that disclosure, that "[d]uring the time of zero-stress jacking there could be no other maintenance accomplished on the aircraft," and that Frontier "had to replace the parts that were damaged . . . before we could continue the rest of the maintenance on the aircraft." Ex. 3 at 60:15–61:5. Of course, as in any deposition, Mr. Mach testified about additional details of the repair process insofar as he was asked about them. But nothing he said conflicted with Frontier's prior disclosures.

More broadly, however, whether Mr. Mach's testimony revealed a "conflict" is beside the point on the relevant issue of Menzies's diligence. Menzies asked about repair and maintenance timing in its initial discovery requests propounded on January 12th. Frontier disclosed Mr. Mach on January 25th and responded to Menzies's initial discovery requests on February 19th, but Menzies waited until April 6th to depose Mr. Mach. Put simply, the only reason any of the information at issue came to light so close to the discovery deadline is because Menzies propounded its discovery and took depositions so close to the deadline. The risk of taking discovery late is learning new information late. That is a risk Menzies took, and Menzies should bear the consequence of that risk, not Frontier.

**B.     The collateral implications of Menzies's motion weigh against granting a discovery extension.**

Equally important as Menzies's motion itself is what is behind the motion and what is likely to come later if the motion is granted. Although Menzies's motion is, in its face, simply about extending discovery by two months, at least three implications of the motion bear mention. First, a discovery extension would effectively allow Menzies to circumvent the time limit on discovery disputes set in the Court's Case Management Order. Second, a discovery extension would invite discovery disputes that would require even more time to litigate. Third, a discovery extension would unfairly provide cover for Menzies to remedy deficiencies in its own disclosures. Each of these implications weighs against the requested extension.

**1.     A discovery extension would allow Menzies to circumvent the limit on discovery disputes in the Court's Case Management Order.**

Menzies requests more time ostensibly to *allow* additional discovery—as if time was the only barrier to that discovery. As noted above, however, Frontier has objected all along to the additional documentary discovery that Menzies seeks. Completing that discovery is not simply a matter of time, it is a matter of litigating and resolving disputes about that discovery. But Menzies never timely raised those disputes with the Court before the discovery deadline. And Menzies's motion does not timely raise the dispute either because the motion only seeks an extension of time (and because the motion lacks the required LRCiv 7.2(j) certification for a discovery dispute). Doc. 26 at 3. Thus, as it stands, Menzies is barred from seeking the additional discovery under the Court's Case Management Order, which provides that, "[a]bsent extraordinary circumstances, the Court will *not* entertain fact discovery disputes after the deadline for completion of fact discovery." Doc. 26 at 3. Extending the discovery deadline, however, would allow Menzies to circumvent the Case Management Order by retroactively making the disputes Menzies was required to raise before the completion of fact discovery timely. This despite the fact that Menzies had ample opportunity to raise the underlying disputes before discovery closed. The Court should not

permit Menzies to so easily circumvent the case management deadlines for discovery disputes.

**2.   A discovery extension would give rise to discovery disputes, which would in turn further delay this case, potentially at great cost to Frontier.**

For all the reasons noted earlier, granting a two-month extension of discovery would only give rise to further disputes about the underlying discovery that Menzies's seeks. Those disputes, in turn, would necessitate additional time to address. In other words, although Menzies only requests two months, the effect of granting that request might delay the case even longer.

The likelihood of additional delay is compounded by the sheer magnitude of what Menzies seeks. Although Menzies does not clearly state the limits of what it would pursue in the extended discovery period, it lists a host of documents that it "would need to obtain," including those listed on pages 11 and 12 of Menzies's motion (and summarized on pages 6–7 of this response, above). To take just a couple examples from the list, Menzies ostensibly seeks documents related to "wear-and-tear" on the aircraft *before* the incident, and documents related to the 1,500 task cards for routine-maintenance work performed on the aircraft. Doc. 55 at 11. These requests echo the overly broad document requests Menzies propounded, in which Menzies asked Frontier to produce every single document related to the inspection, maintenance, or repair on the aircraft and its component parts (dating back either forever, ten years, or five years from the incident). *See* D. Ex. H, Doc. 55-8 (Request Nos. 1–4).

As Frontier noted in its discovery objections, the volume of documents Menzies requests is astounding. To search for, locate, review, and produce every historical document related to every maintenance event for every component of an Airbus A319 commercial aircraft would take well over two months. Moreover, as Frontier explained in its objections, there are typically tens or hundreds of thousands of documents related to a given aircraft, and Frontier stores those documents with a third-party vendor, FLYdocs. *See* D. Ex. H, Doc. 55-8 (Resp. to Request Nos. 1–4). FLYdocs's system does not allow Frontier to

quickly search for particular categories of documents. Rather, a Frontier employee (or several) would have to manually click through pages upon pages on the FLYdocs system to try and locate responsive documents. In short, the cost and burden would be enormous.

There is no reason to believe that cost and burden of such additional discovery would result in proportionately relevant evidence. Menzies would no doubt hope to find some evidence that Frontier's lease-return work was delayed due to an underlying maintenance issue unrelated to the damage event. But the discovery record to date contains no evidence suggesting that is the case. To the contrary, Mr. Mach testified that, aside from the damage, "all other aspects of the visit were normal. The [maintenance] check was normal. The return was normal." Ex. 3 at 63:13–18.

Frontier, however, has every reason to believe that the purpose of Menzies's request for additional discovery is not a genuine desire for more information, but rather to impose additional costs on Frontier. Frontier has already produced hundreds of pages of documents related to the repair and maintenance work following the damage incident at issue. Those documents include: nearly 200 pages of daily status reports about maintenance and repair work performed on the aircraft; nearly 180 pages of technical data and diagrams reflecting the components of the repair work; 35 pages of repair-related communications with Airbus (the aircraft's manufacturer); and Mr. Mach's communications related to the aircraft's repair and maintenance, among others. Yet, tellingly, Frontier never asked Mr. Mach about a *single document* during his deposition. Frontier also never sought discovery from FLYdocs or any other third party. And Menzies never raised any issue with Frontier's production before the last three days of discovery. In light of this, Menzies eleventh-hour request appears to be less an attempt to discover information of genuine interest as an attempt to burden Frontier with the cost of massive additional discovery.

      **3.**    **A discovery extension would unfairly give Menzies cover to remedy its own lack of evidence.**

Finally, although Menzies's motion naturally focuses on *Frontier's* disclosures and discovery responses, Menzies's own disclosures and responses are potentially implicated in

its request to extend discovery. Menzies's own disclosures and discovery responses have been woefully deficient. For example, in its Rule 26 disclosures, Menzies disclosed no persons with knowledge other than a few Frontier employees whom Frontier had previously disclosed. Ex. 4. Similarly, Menzies produced very few unique documents—only 235 pages of internal training materials, most of which have nothing to do with this case. And Menzies evaded and objected to almost all of Frontier's written discovery requests. *See* Exs. 5 & 6. For various reasons, Frontier, however, has chosen (thus far) not to litigate the deficiencies in Menzies's disclosures and discovery responses (and Frontier does not intend to litigate them in this response).

Based on its lack of discovery activity, Menzies now faces the problem of discovery being closed and Menzies having disclosed almost no evidence to use at trial. If discovery were to be re-opened, Menzies, however, might attempt to remedy its deficient disclosures and responses and supplement the record with additional witnesses and documents to support *its own* case. Allowing Menzies extra time to build an eleventh-hour supplemental record would obviously prejudice Frontier and reward dilatory discovery conduct. *See Johnson*, 975 F.2d at 609 (noting that "the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion"). The Court should accordingly deny Menzies's requested extension.[6]

### IV. CONCLUSION

Discovery in this case was like a footrace in which Menzies waited six months after the starter's pistol to begin running. Now, at the moment the parties cross the discovery finish line, Menzies asks the Court to extend the race either to allow Menzies to catch up or to burden Frontier with extra laps. The Court should decline to do so. Menzies had sufficient time to conduct discovery. It waited too long to do so, and even longer to raise any hint of the discovery disputes underlying its motion. Extending discovery would

---

[6] If the Court did grant an extension, however, it should prohibit Menzies from supplementing its own record, and it should strictly limit what discovery conduct could occur during the extended discovery period.

4849-9739-8759

1  greatly increase the costs of litigation without a proportional benefit to the parties.
2  Menzies's motion should be denied.

   DATED this 7th day of May 2021.

                                             SNELL & WILMER L.L.P.

                                        By: *s/Adam E. Lang*
                                             Adam E. Lang
                                             Matt Jarvey
                                             One Arizona Center
                                             400 E. Van Buren, Suite 1900
                                             Phoenix, Arizona 85004-2202

                                             *Attorneys for Plaintiff Frontier Airlines, Inc.*

4849-9739-8759

# **CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record in this matter.

 *s/Jan Snyder*

4849-9739-8759