**Exhibit 1**

| | |
|---|---|
| **From:** | GARY LINDER <Glinder@JSHFIRM.com> |
| **Sent:** | Tuesday, April 20, 2021 12:48 PM |
| **To:** | Jarvey, Matt |
| **Cc:** | Lang, Adam; Jennifer Bernardo; Danielle Brown |
| **Subject:** | Frontier v. Menzies |

**[EXTERNAL]** glinder@jshfirm.com

Re:     *Frontier Airlines, Inc. v. Menzies Aviation (USA) Inc.*
        U.S. District Court for the District of Arizona
        Case No. 2:20 Civ. 01432 (ESW)

Counsel:

        We write to address certain deficiencies in Plaintiff's responses to Menzies' First and Second Sets of Requests for Production of Documents, as well as Plaintiff's response to Menzies' Interrogatory No. 2.

        We itemize these deficiencies below in a good faith effort to reach a resolution.  The majority of deficiencies concern the nature and extent of the routine lease-return work and damage repairs that were performed on the subject Airbus A319 aircraft ("Aircraft").

        Based on the April 6, 2021 deposition testimony of James Mach, Frontier's Director of Maintenance, the repairs related to the alleged Incident were largely conducted simultaneously with a C-check and other lease-end work that Frontier was contractually obligated to perform prior to returning the Aircraft to the lessor.  According to Mr. Mach, the C8-level check which was conducted as part of the lease-end work encompasses over 1,500 maintenance tasks, and the length of time required to complete these tasks generally depends on an aircraft's age and flight-hours, the regular wear and tear on the aircraft, and the extent of the damage uncovered once the aircraft is opened up.  In addition, Mr. Mach testified that the routine lease-return work generally includes refurbishment of the interior of the aircraft, including installing new carpeting and overhead bins.

        Frontier had planned for the C8-check and other lease-return work to take no more than 52 days in total (May 1-June 21, 2018).  Since Frontier is demanding that Menzies reimburse Frontier for leasing charges incurred from June 21 through August 2018, documents concerning the extent of the routine maintenance and lease-return work that Frontier agreed to complete, the amount of time Frontier planned for this work to take, and the amount of time this work would have taken had the Incident not occurred, are directly related to Frontier's damages in this matter.

        Likewise, documents and communications concerning the nature, progression and duration of the repairs stemming from the Incident – documents showing whether the diagnostics, repairs and inspections were all necessary and conducted without undue delay – are also clearly related to Frontier's damages in this matter.

        Accordingly, Frontier's responses to Menzies' Requests 1, 2, 3, 7, 15, 17, 22, 23, and 24, and Menzies' Interrogatory 2 must be amended as set forth below.

**Deficiencies in Frontier's Responses to Individual Requests**

1

Request No. 1:

All documents relating to the inspection and maintenance of the Aircraft prior to the date of the Incident, including but not limited to maintenance manuals and checklists for the Aircraft that were in effect on that date.

Frontier's Response to Request No. 1:

Documents providing a detailed description of the maintenance performed on the aircraft at issue as a result of the Incident are produced at FRONTIER001354–1771.

Frontier objects to Request No. 1 under Rule 26(b)(1) because the request seeks documents that are not relevant to any claim or defense, and the burden or expense of identifying the requested documents would outweigh the likely benefit of such information.

The request for all prior inspection and maintenance records is both irrelevant and unduly burdensome.  Prior records are irrelevant because Frontier only seeks repair-related damages for work performed immediately after and as a result of the Incident.  Procuring all prior inspection and maintenance records would be unduly burdensome because of the volume of such records and the method in which they are stored.  The aircraft's records are stored via a cloud-based system maintained by a third-party vendor, FLYdocs.  That system maintains documents in a manner that does not allow Frontier to locate quickly all documents that are strictly related to inspection and maintenance.  There are typically tens or even hundreds of thousands of inspection and maintenance documents stored for a given aircraft.  Accordingly, locating all such documents would be unduly costly both in terms of time and monetary expense.

Request No. 2:

Any documents related to the repair, upkeep, maintenance, retrofitting, and airworthiness of the Aircraft in the five years prior to the Incident and to the present.

Frontier's Response to Request No. 2:

Documents providing a detailed description of the maintenance performed on the aircraft at issue as a result of the Incident are produced at FRONTIER001354–1771.

Frontier objects to Request No. 2 under Rule 26(b)(1) because the request seeks documents that are not relevant to any claim or defense, and the burden or expense of identifying the requested documents would outweigh the likely benefit of such information.

The request for all prior records related to repair, upkeep, maintenance, retrofitting, and airworthiness is both irrelevant and unduly burdensome.  Prior records are irrelevant because Frontier only seeks repair-related damages for work performed immediately after and as a result of the Incident.  Procuring all prior records related to repair, upkeep, maintenance, retrofitting, and airworthiness would be unduly burdensome because of the volume of such records and the method in which they are stored. The aircraft's records are stored via a cloud-based system maintained by a third-party vendor, FLYdocs. That system maintains documents in a manner that does not allow Frontier to locate quickly all documents that are strictly related to repair, upkeep, maintenance, retrofitting, and airworthiness.  There are typically tens or even hundreds of thousands such documents stored for a given aircraft. Accordingly, locating all such documents would be unduly costly both in terms of time and monetary expense.

**Menzies' Response to Frontier's Responses to Requests 1 and 2:**

Plaintiff has unreasonably and arbitrarily narrowed its search for responsive documents to those documents concerning "maintenance performed on the aircraft at issue *as a result of the Incident*."  The amount of labor and length of time required to complete a C8-check and other lease-return work depends on numerous factors, including, by Frontier's own deposition testimony, the age and total flight-hours of an aircraft, the wear and tear on the aircraft, and the extent of the hidden damage uncovered once an aircraft is opened up.  Documents concerning the maintenance

history of the Aircraft prior to the Incident are thus directly related to Frontier's claim for leasing-related damages in this case.

Notably, while the documents referred to in Plaintiff's responses to these Requests – FRONTIER001354–1771 – do not provide meaningful information concerning the nature or extent of the C8-check and other lease-return work that Frontier agreed to perform prior to returning the Aircraft to the lessor, several of the documents produced by Frontier on April 5, 2021 do pertain to this maintenance work and provide some limited insight into the details and timeline of the lease-return process. *See, e.g.*, FRONTIER001792–96. Many of these documents, which had apparently been in the custody and control of James Mach before they were produced, include the third-party vendor FLYdocs as a recipient.

The fact that routine email communication concerning the maintenance of the Aircraft was forwarded to FLYdocs as part of Frontier's ordinary course of business suggests that there are additional documents stored on FLYdocs that are not in Mr. Mach's custody and control, which directly relate to the details of the C8-check. Such documents may be in the custody and control of Thom DeMint, who was identified by Mr. Mach as the Maintenance Manager who was on site at the PEMCO facility in Tampa, Florida throughout the entire repair and maintenance period, or, based on the information contained in Frontier's April 2021 productions, they may be in the custody and control of Frontier employees Phil Meszler (Manager-Aircraft Returns), Michael Chipman (AOG Manager), Paul Fuentes (AOG Engineer), Robert Fanning (Senior Director), and other key custodians, including employees who received communications at the email address Engineering-Airframe@FlyFrontier.com (*see, e.g.*, FRONTIER001918). According to Mr. Mach, virtually all of Frontier's email communications – not just aircraft records – are stored on FLYdocs. As such, it is not unreasonable for Frontier's search for responsive documents to include a search of FLYdocs.

For these reasons, we request that Plaintiff 1) amend its responses to these Requests to reflect the fact that Frontier's search for responsive documents must include a search for documents created prior to the alleged Incident, as well as documents hosted on FLYdocs, and 2) produce all pre-Incident documents, including maintenance-related communications, logs, and checklists, which reflect or pertain to a) the condition and airworthiness of the Aircraft immediately prior to the Incident, b) the nature and extent of the lease-return work that was scheduled to be performed on the Aircraft beginning May 1, 2018, and c) the anticipated and actual length of time required to complete all aspects of the C8-check and lease-return work.

Request No. 3:

Any reports, whether created by you, your agents, or someone else, including but not limited to governmental agencies, insurers, and private entities, regarding any incidents, accidents, or other events causing damage to the Aircraft in the ten prior years to the Incident.

Frontier's Response to Request No. 3:

Frontier objects to Request No. 3 under Rule 26(b)(1) because the request seeks documents that are not relevant to any claim or defense, and the burden or expense of identifying the requested documents would outweigh the likely benefit of such information.

The request for prior records related to incidents, accidents, or other events causing damage to the Aircraft is both irrelevant and unduly burdensome. Prior records are irrelevant because Frontier only seeks repair-related damages for work performed immediately after and as a result of the Incident. Procuring all prior records related to incidents, accidents, or other events causing damage would be unduly burdensome because of the volume of such records and the method in which they are stored. The aircraft's records are stored via a cloud-based system maintained by a third-party vendor, FLYdocs. That system maintains documents in a manner that does not allow Frontier to locate quickly all documents that are strictly related to incidents, accidents, or other events causing damage to the Aircraft. There are typically tens or even hundreds of thousands such documents stored for a given aircraft. Accordingly, locating all such documents would be unduly costly both in terms of time and monetary expense.

Additionally, to the extent that Defendant seeks documents created by "someone else, including but not limited to governmental agencies, insurers, and private entities," Frontier objects to the request insofar as such documents are not in Frontier's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1).

**Menzies' Response to Frontier's Response to Request No. 3:**

Again, Frontier's witness testified that the amount of labor and length of time required to complete a C8-check and other lease-return work depends on numerous factors, including the age and total flight-hours of an aircraft, the wear and tear on an aircraft, and the extent of the hidden damage uncovered once the aircraft is opened up. Documents concerning the damage history of the Aircraft prior to the Incident are thus directly related to Frontier's claim for leasing-related damages in this case.

Notably, while the documents referred to in Plaintiff's response to this Request – FRONTIER001354–1771 – do not provide meaningful information concerning the nature or extent of the C8-check and other lease-return work that Frontier agreed to perform prior to returning the Aircraft to the lessor, several of the documents produced by Frontier on April 5, 2021 do pertain to this maintenance work and provide some limited insight into the details and timeline of the lease-return process. *See, e.g.*, FRONTIER001792–96. Many of these documents, which had apparently been in the custody and control of James Mach before they were produced, include the third-party vendor FLYdocs as a recipient.

The fact that routine email communication concerning the maintenance of the Aircraft was forwarded to FLYdocs as part of Frontier's ordinary course of business suggests that there are additional documents stored on FLYdocs that are not in Mr. Mach's custody and control, which directly relate to the details of the C8-check. Such documents may be in the custody and control of Thom DeMint, Phil Meszler, Michael Chipman, Paul Fuentes, Robert Fanning, or other key custodians, including employees who received communications at the email address Engineering-Airframe@FlyFrontier.com (*see, e.g.*, FRONTIER001918). According to Mr. Mach, the majority of Frontier's email communications – not just aircraft records – are stored on FLYdocs. As such, it is not unreasonable for Frontier's search for responsive documents to include a search of FLYdocs.

For these reasons, we request that Plaintiff 1) amend its response to this Request to reflect the fact that Frontier's search for responsive documents must include a search for documents created prior to the alleged Incident, as well as documents hosted on FLYdocs, and 2) produce communications and logs related to all damage incidents and accidents involving the Aircraft in the ten years prior to the Incident.

Request No. 7:

All documents relating to the inspection and maintenance of the Aircraft as a result of the Incident, including but not limited to maintenance log books, maintenance write-ups, and service reports.

Frontier's Response to Request No. 7:

*See* FRONTIER001354–1771

Request No. 15:

All reports, invoices, estimates, communications, or other documents reflecting or describing the process of conducting repairs and maintenance checks on the Aircraft following the Incident, including the process of deciding whether to conduct maintenance checks at the same time as, weeks after, or months after the aircraft repairs were conducted.

Frontier's Response to Request No. 15:

*See* FRONTIER000099–116, 1354–1771.

Request No. 17:

Any estimates, findings and/or reports reflecting the nature of the repairs and maintenance checks performed from April through August of 2018, and the reasons why such repairs and maintenance checks were not completed prior to June 2018.

Frontier's Response to Request No. 17:

*See* response to Request No. 15.

**Menzies' Response to Frontier's Response to Requests 7, 15 and 17:**

As an initial matter, Plaintiff's responses to these Requests fail to identify the parameters of Plaintiff's search limitation, *e.g.*, a defined period of time, substantive scope, or specific resources reviewed, thus rendering it impossible for Menzies to know whether Frontier is withholding responsive documents. *See* FED. R. CIV. P. 34 advisory committee note 2015.

Further, since Frontier is demanding that Menzies reimburse Frontier for leasing charges incurred from June 21 through August 2018, documents concerning the nature, extent, and duration of the routine lease-end maintenance and refurbishment (including documents relating to, *inter alia*, a) Frontier's negotiations with the lessor of the Aircraft concerning the extent of the work Frontier would perform; b) Frontier's plan to take the Aircraft out of service on May 1, 2018 and the factors leading Frontier to estimate that the C8-check and other lease-end work would take no more than 52 days; c) the results of the 1,500 routine C8 maintenance checks; d) PEMCO's findings once the aircraft was opened up as part of the C8-check – according to Mr. Mach's deposition testimony, the C8-check normally involves examination of thrust reversers and the aft area below the floors of the aircraft, and under this particular lease, Frontier was contractually bound to inspect other parts of the aircraft as well – and e) the time required to complete each of these tasks) are all directly related to Frontier's damages in this matter.  Documents concerning the nature and progression of the damage repairs (*e.g.*, documents relating to a) any undue delays in the repair process or the sourcing of parts; b) the flow of communication between Frontier, Airbus, and PEMCO throughout the repair period, and c) Frontier and PEMCO's system for differentiating between repair-related work and routine lease-end work) are also clearly related to Frontier's lease-related damages

.

The documents referred to in Plaintiff's responses to these Requests – FRONTIER000099–116 and FRONTIER001354–1771 – do not provide meaningful information concerning the nature and duration of the repair work and maintenance work that was performed after the Incident.  However, several of the documents produced by Frontier on April 5, 2021 pertain to Frontier's decision-making surrounding the repair work (including Frontier's request for Airbus to (possibly unnecessarily) investigate a permanent doubler repair in late April 2018 (*see, e.g.*, FRONTIER001912–13)), Frontier's sourcing of parts (and Airbus' possible delays in shipping some parts – *see, e.g.*, FRONTIER001846, FRONTIER001907), and Frontier's reporting of the progression of the repairs to the lessor (*see, e.g.*, FRONTIER001788–91).  These documents, which were apparently in the custody and control of James Mach before they were produced, are responsive to Frontier's Requests 15 and 17.  To the extent that there are additional documents within the custody and control of other custodians, and/or stored on FLYdocs, these documents must be produced.

As such, we request that Plaintiff 1) amend its responses to these Requests to identify the parameters of Plaintiff's search limitations and to state whether responsive documents are being withheld, and 2) produce all post-Incident communications and records reflecting or pertaining to the nature and progression of the repairs and maintenance that were conducted after the Incident.  Responsive documents related to lease-end work would include but are not limited to a) email communications between Frontier and the lessor concerning the extent of the work Frontier would perform as part of routine lease-end maintenance, b) internal communications relating to Frontier's plan to take the Aircraft out of service on May 1, 2018 and the factors leading Frontier to estimate that the C8-check and other lease-end work would take no more than 52 days, c) checklists and logs showing the results of the 1,500 routine C8 maintenance checks, and d) internal and external communications concerning PEMCO's findings once the aircraft was opened up as part of the C8-check.  Responsive documents related to the Incident-related repairs would include but are not limited to a) Frontier's internal communications regarding the progression of the repairs and any challenges in conducting the repairs, b) internal and external communications concerning the logistics of obtaining shoring, replacement aircraft skin, and other parts, c) communications between Frontier's Maintenance department and the lessor concerning the details of the repair (according to the April 9, 2021 deposition testimony of Frontier's Treasury Manager, Sharath Sashikumar, members of Frontier's Maintenance team and/or Senior Director Robert Fanning likely communicated with the lessor during the repair period), and d) documents concerning Frontier and PEMCO's systems for differentiating between repair-related work and routine lease-end work.

Request No. 22:

All diagnostic reports, communications, and other documents reflecting the assessments conducted by Airbus prior to the commencement of repairs to the Aircraft.

Response to Request No. 22:

*See* FRONTIER001354–1551 (daily status reports for repairs); 1552–1771 (technical repair documentation and communications).

To the extent that Request No. 22 seeks every single document that might, in some way, reflect Airbus's assessment of the aircraft, Frontier objects under Rule 26(b)(1) that such a request is not relevant to any claim or defense, and the burden or expense of identifying every single such documents would outweigh the likely benefit of such information.  Many Frontier employees were involved in some minor way in overseeing or tracking the repair work performed as a result of the incident, which was ultimately performed by a third-party, PEMCO.  It would be unduly burdensome to determine each such employee and conduct a search of each employee's electronic records (e.g., emails) or written documents for any document that arguably reflected any assessment performed by Airbus.

Frontier has made a good-faith effort to produce technical documents within the possession of Frontier's Director of Maintenance, reflecting Airbus's assessment and the timeline of repairs to the aircraft, which documents are cited above.

**Menzies' Response to Frontier's Response to Request No. 22:**

Since Frontier is demanding that Menzies reimburse Frontier for leasing charges incurred from June 21 through August 2018, all documents and communications concerning Airbus' diagnostics of the damage repairs – documents relating to, *inter alia*, a) the amount of time it took for Airbus to conduct diagnostics of the Aircraft and to prepare the repair definition, and b) the flow of communication between Frontier, Airbus, and PEMCO prior to the commencement of the repairs – are directly related to Frontier's damages in this matter.

Plaintiff has unreasonably and arbitrarily narrowed its search for responsive documents to those documents which were in the custody and control of Frontier's Director of Maintenance, James Mach.  To the extent that there are additional responsive documents within the custody and control of other custodians, these documents must be produced.

As such, we request that Plaintiff 1) amend its responses to these Requests to reflect the fact that Frontier's search for responsive documents must include a search for documents within the custody and control of custodians other than Mr. Mach, and 2) produce all post-Incident communications and records reflecting or pertaining to all diagnostics and inspections of the Aircraft that were conducted as a result of the Incident.  Responsive documents would include but are not limited to a) email communications between Frontier, Airbus, and PEMCO concerning Airbus' diagnostics of the Aircraft, b) communications concerning any repair plans provided by Airbus which were rejected by either Frontier or PEMCO, c) communications concerning whether and how many times the repair plan changed throughout the repair period, and d) internal and external communications concerning the different options that Airbus presented to Frontier for the repair plan and Frontier's decision-making related to the proposed repair plan.

Request No. 23:

All diagnostic reports, communications, and other documents discussing, reflecting, or providing estimates of the length of time required to conduct repairs to the Aircraft.

Response to Request No. 23:

*See* FRONTIER001552–2066.

To the extent that Request No. 23 seeks every single document that might, in some way, reflect the length of time to repair the aircraft, Frontier objects under Rule 26(b)(1) that such a request is not relevant to

any claim or defense, and the burden or expense of identifying every single such documents would outweigh the likely benefit of such information. Many Frontier employees were involved in some minor way in overseeing or tracking the repair work performed as a result of the incident, which was ultimately performed by a third-party, PEMCO. It would be unduly burdensome to determine each such employee and conduct a search of each employee's electronic records (e.g., emails) or written documents for any document that arguably reflected the timing of repair work performed as a result of the incident. Frontier has made a good-faith effort to produce technical documents within the possession of Frontier's Director of Maintenance, reflecting Airbus's assessment and the timeline of repairs to the aircraft, which documents are cited above.

**Menzies' Response to Frontier's Response to Request No. 23:**

Since Frontier is demanding that Menzies reimburse Frontier for leasing charges incurred from June 21 through August 2018, documents concerning the duration of each stage of the damage repair are clearly related to Frontier's lease-related damages.

Plaintiff has unreasonably and arbitrarily narrowed its search for responsive documents to those documents which were in the custody and control of Frontier's Director of Maintenance, James Mach.  To the extent that there are additional responsive documents within the custody and control of other custodians, these documents must be produced.

As such, we request that Plaintiff 1) amend its response to this Request to reflect the fact that Frontier's search for responsive documents must include a search for documents within the custody and control of custodians other than Mr. Mach, and 2) produce all post-Incident communications and records reflecting or pertaining to the duration of the repair process.  Responsive documents would include but are not limited to a) Frontier's internal and external communications concerning any delays in the Incident-related repairs, b) internal and external communications concerning the timeliness of shipments of shoring, aircraft skin, and other parts, and c) communications between Frontier's Maintenance department and the lessor concerning the shifting return-date of the Aircraft.

Request No. 24:

All communications between Frontier and the lessor of the Aircraft concerning Frontier's failure to return the Aircraft to the lessor on the date prescribed by the applicable lease, and concerning the leasing charges and penalties incurred from June 21, 2018 through August 2018.

Response to Request No. 24:

*See* FRONTIER001772–1776, 2041–2066, 2067–2072.  Also, some of the repair- or maintenance-related communications generated in the aftermath of the damage incident at issue in this case included persons associated with the lessor of the Aircraft.  *See* FRONTIER001788–2024.

**Menzies' Response to Frontier's Response to Request No. 24:**

Plaintiff's response to this Request fails to identify the parameters of Plaintiff's search limitation, *e.g.*, a defined period of time, substantive scope, or specific resources reviewed, thus rendering it impossible for Menzies to know whether Frontier is withholding responsive documents.  *See* Fed. R. Civ. P. 34 advisory committee note 2015.  As such, we request that Plaintiff amend its response to this Request to identify the parameters of Plaintiff's search limitation, and to state whether Plaintiff is withholding responsive documents.

Interrogatory No. 2:

Identify by name and job title each of your employees who was present at Phoenix Sky Harbor Airport at the time of the Incident.

Response to Interrogatory No. 2:

Frontier is aware of only one Frontier employee who was present at Phoenix Sky Harbor Airport and who witnessed the Incident when it occurred: Elias Sanchez, who was a mechanic.

To the extent that Defendant requests the identity of every single Frontier employee who happened to be present at Phoenix Sky Harbor Airport when the incident occurred, but who did not witness the Incident, Frontier objects under Rule 26(b)(1) that such a request is not relevant to any claim or defense, and the burden or expense of identifying every single Frontier employee who happened to be at the airport during the Incident would outweigh the likely benefit of such information.

**Menzies' Response to Frontier's Response to Interrogatory No. 2:**

During his April 7, 2021 deposition, former Frontier mechanic Elias Sanchez testified that there was a "lead" mechanic present with him at Frontier's office at the time of the Incident, who instructed Mr. Sanchez to conduct a "brake ride" while the Aircraft was moved back to the gate, likely knowing that Mr. Sanchez would be using the belt loader to gain access to the Aircraft. We therefore request that Plaintiff amend its response to this Interrogatory to provide the name of Mr. Sanchez's "lead" who was on site at the time of the Incident, as well as any other Frontier employees who were acting in a supervisory or managerial capacity at Phoenix Sky Harbor Airport at the time of the Incident.

\* \* \*

In addition to providing the above-requested documents and amended responses as soon as possible, we suggest that the parties stipulate to a two-month extension of the fact discovery deadline and expert disclosure deadline, which are currently set for April 23 and May 24, 2021, respectively. This extension is necessary in order for Frontier to produce the outstanding documents and information requested above and for Menzies to review and evaluate the same, to ascertain whether discovery will be necessary from third parties such as PEMCO or Airbus, to conduct the depositions of Frontier employees who were involved with the repairs and maintenance on a day-to-day basis, including Thom DeMint, and to engage an expert on the issue of damages.

We appreciate your anticipated cooperation in working to settle the foregoing matters without the need for court intervention.



**J. GARY LINDER** | Partner
Jones, Skelton & Hochuli, P.L.C.
40 North Central Avenue, Suite 2700 | Phoenix, AZ 85004
**P** (602) 235-7106 | **F** (602) 200-7883

website | bio | vCard | map | email | linkedin | facebook | twitter

g penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

This electronic mail transmission contains information from the law firm Jones, Skelton & Hochuli, P.L.C. that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (602) 263-1700. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

**Exhibit 2**

# Snell & Wilmer

ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, AZ 85004-2202
602.382.6000 P
602.382.6070 F

**Matt Jarvey**
**(602) 382-6270**
**mjarvey@swlaw.com**

January 29, 2021

**VIA E-MAIL**

J. Gary Linder
Jones, Skelton & Hochuli, P.L.C.
40 North Central Avenue, Suite 2700
Phoenix, AZ 85004

     Re:    *Frontier Airlines, Inc. v. Menzies Aviation (USA) Incorporation*
           **Confidential Rule 408 Settlement Communications**

Dear Gary:

     We write in response to your request that Frontier summarize its damages claim, in hopes that the summary will be valuable in helping the parties resolve this matter.

**Damages Summary**

     As of the date of this letter, Frontier's total damages claim is $1,403,218.11, plus attorneys' fees and costs. That total claim comprises three categories of damages: (1) flight operations costs; (2) maintenance costs; and (3) lease costs. The table below provides a computation of each category, a citation to the record evidence of the costs, and a description of how each category of costs resulted from Menzies damaging Frontier's aircraft.

| Item | Amount | Citation | Description |
|---|---|---|---|
| *Flight Operations Costs* | | | |
| Pilot and fuel costs | $16,464.32 | FRONTIER 95–96 | Frontier had to re-route aircraft to substitute for the damaged aircraft's scheduled flight on April 1, 2018. This caused Frontier to incur costs associated with staffing the substituted aircraft—e.g., crew compensation, transportation, hotel, per diem, as well as fuel costs for the re-routed aircraft. Frontier also incurred the fuel and |
| Flight attendant costs | $178.65 | FRONTIER 97 | |

4839-9939-8361.3

ALBUQUERQUE   BOISE   DENVER   LAS VEGAS   LOS ANGELES   LOS CABOS   ORANGE COUNTY
PHOENIX   PORTLAND   RENO   SALT LAKE CITY   SAN DIEGO   SEATTLE   TUCSON   WASHINGTON, D.C.

# Snell & Wilmer

J. Gary Linder
January 29, 2021
Page 2

| Item | Amount | Citation | Description |
|---|---|---|---|
| | | | pilot costs of ferrying the damaged aircraft to the repair facility in Tampa |
| *Maintenance Costs* | | | |
| PEMCO | $427,680.69 | FRONTIER 109, 681 | Frontier outsources its heavy maintenance and repair work to PEMCO.  PEMCO performed the repairs for the aircraft pursuant to the repair plan set forth by Airbus and charged Frontier for labor and materials. |
| Airbus | $195,000.00 | FRONTIER 131– 133, 680 | Because the damage to the aircraft was extensive and non-routine, the aircraft's manufacturer, Airbus, had to assess the damage and draft a repair plan for PEMCO to execute. |
| *Lease Costs* | | | |
| June 2018 | $102,536.17 | FRONTIER 119 | Frontier was contracted to return the aircraft to the lessor on June 21, 2018.  Per the lease, Frontier had to repair the aircraft before returning it.  The time necessary for the repairs forced Frontier to return the aircraft late and thus incur penalties per the lease. |
| July 2018 | $353,749.78 | FRONTIER 118 | |
| August 2018 | $307,608.50 | FRONTIER 117 | |
| **Total:** | **$1,403,218.11** | | |

In addition to the costs detailed in the table above, Frontier also seeks its costs under Rule 54(d), and its attorneys' fees under A.R.S. § 12-341.01 and the parties' ground-handling contract. Per § 4.1, that contract permits Frontier to recover not only its full damages but also its "court costs and attorney's fees."  *See* FRONTIER 000070.  As Frontier is forced to continue litigating this matter, it continues accruing attorneys' fees for which Menzies will ultimately be responsible.

## Lease Costs

As you requested, we also wanted to provide an additional summary of the lease-cost component of Frontier's damages to minimize any confusion as to costs that Frontier is seeking.

Frontier's lease governing the aircraft has been produced at FRONTIER000248–426.  The lease is dated June 22, 2006, which is the date on which Frontier received the aircraft.  Under the lease, the aircraft was due back to the lessor 144 months (12 years) later—i.e., on June 21, 2018.

Snell & Wilmer

J. Gary Linder
January 29, 2021
Page 3

*See* § 1.1 (definition of "Scheduled Expiry Date").  Before an aircraft is returned to the lessor, however, it must undergo certain inspections and maintenance per the lease.  Frontier outsources this lease-return maintenance work to PEMCO, which performs the work at its hangar in Tampa, Florida.

Had Menzies not damaged the aircraft, Frontier would have flown the aircraft to PEMCO's hangar in Tampa via a scheduled commercial flight.  Because the lease-return date was scheduled for June 21, 2018, Frontier had scheduled the aircraft to enter PEMCO's hangar on May 1, 2018, to allow enough time for the lease-return maintenance work before the aircraft was returned.

Menzies, however, damaged the aircraft on April 1, 2018.  Frontier thus ferried it directly to Tampa on April 1, 2018 (via a non-commercial pilot-only "ferry flight").  But the aircraft was not scheduled to be inducted into PEMCO's hangar for another month, on May 1, 2018, and the hangar was full of previously scheduled aircrafts undergoing their own scheduled maintenance work with their own deadlines.  The damaged aircraft thus had to be parked outside the hangar until it could be inducted into the repair process on May 1, 2018.

No work could be performed on the aircraft while it was parked outside the hangar for several reasons: PEMCO crews were already completely occupied with previously scheduled work in the hangar; there is no reasonably feasible way to perform heavy maintenance work outside of the hanger; and the type of repairs needed for the damaged aircraft at issue required the aircraft to be inside the hangar, protected from outdoor elements.

Once the aircraft was inducted into the hangar on May 1, 2018, it had to undergo extensive and time-consuming repairs due to the damage.  Under its lease, Frontier was required to keep the aircraft in good repair (§ 8.12) and to return it in a repaired condition (§ 12 & Schedule 3).  Because the damage was non-routine, the aircraft's manufacturer, Airbus, had to assess the damage and draft a repair plan for PEMCO to execute, to ensure that the aircraft was airworthy.  Moreover, the damage repairs had to be completed before the routine lease-return maintenance work could be completed; the damage repairs required the aircraft to undergo a process called "zero-stress shoring," during which the force applied to the aircraft had to be controlled to ensure the integrity of the structural repairs, which in turn precluded simultaneous maintenance work.  After the damages were repaired, the aircraft then underwent the routine maintenance work.

The damage repair took significant time and, as a result, Frontier was not able to return the aircraft to the lessor on June 21, 2018, as required or as planned.  Instead, per § 12.3(a)(iii) of the lease, Frontier incurred late-return penalty charges from the lessor for the remainder of June, July, and August 2018.

\* \* \*

Snell & Wilmer

J. Gary Linder
January 29, 2021
Page 4


       We hope the information summarized above helps you and your client assess Frontier's
damage claim in this matter.  If you have any additional questions, please feel free to reach out.

                              Very truly yours,

                              Snell & Wilmer

                              Matt Jarvey

MLJ:ks

**Exhibit 3**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA


Frontier Airlines, Inc.,          )
                                  )
                  Plaintiff,      )
                                  )
vs.                               ) No.2:20-cv-01432-ESW
                                  )
Menzies Aviation (USA), Inc.,     )
                                  )
                  Defendant.      )
_____ )


VIDEOCONFERENCE DEPOSITION OF JAMES MACH


Denver, Colorado
April 6, 2021
11:06 a.m. (MDT)


SEYMOUR REPORTING SERVICES
Registered Reporting Firm R1000
PREPARED BY:           137 East Elliot Road, #2473
                       Gilbert, Arizona  85299
Courtney C. Vanderwalker, RPR    (P)602.258.5800
Certified Reporter No. 50597     (F)888.881.5440

1  repairs, we had to change a number of skins that were

2  surrounding the door frame.  The door frame is a very

3  strong structural area because of the door that closes

4  and pressurizes and opens and closes multiple times.

5  And there was a number of parts that needed to be

6  replaced.  And in order to ensure that when you remove

7  all of these parts and you put the new parts in place,

8  that the structure doesn't shift, we had to zero-stress

9  load the aircraft.  We had to jack it in a number of

10  positions on the wing, on the fuselage, and the tail.

11  We had to put shoring underneath the aircraft.  And then

12  each of these jack points had to have a dynamometer

13  installed on them that had to be recorded every 24 hours

14  to ensure the aircraft didn't move at all.

15       During the time of zero-stress jacking there

16  could be no other maintenance accomplished on the

17  aircraft because the worst-case scenario is if the

18  aircraft shifted, the parts effectively wouldn't go back

19  together again.

20       Q.   So you're saying that no other maintenance of

21  the aircraft could be completed while it was zero

22  jacked?

23       A.   So you -- we could do maintenance up to the

24  point where 50 percent of the fasteners were removed.

25  And then at that point, no other maintenance, no other

JAMES MACH   APRIL 06, 2021

1  person, no other people could be on the aircraft.  We

2  had to replace the parts that were damaged and then we

3  had to install at least 50 percent of the fasteners back

4  in again before we could continue the rest of the

5  maintenance on the aircraft.

6      Q.   So during the repair of the damage, were you

7  also completing the maintenance associated with

8  returning the lease?

9      A.   Where we could, yes.

10      Q.   Do you know how much time the aircraft was

11  actually in a, you know, you said something about

12  50 percent of the fasteners and then 50 percent of the

13  fasteners back, how long it was that you couldn't

14  complete any other maintenance?

15      A.   As I recall it was a window of about three

16  weeks.

17      Q.   So would you say then that the timeline to

18  complete the repair and the C check and the maintenance

19  was extended by a period of three weeks because of the

20  repair?

21      A.   No.  That was only the portion of the time

22  where no other work could be done on the aircraft.

23      Q.   All right.  What else would have extended that

24  time period?

25      A.   The fact that you had to jack the aircraft,

1     Q.    I'm sorry, yeah.

2     A.    So our original plan before the damage event

3  is we brought -- it was scheduled out of service May 1.

4  It was scheduled to return sometime the end of June.  I

5  don't recall the exact date.  We ultimately returned the

6  aircraft, I believe, sometime in mid-August.

7     Q.    So you're calculating how many days extra did

8  it take to get this aircraft back to the lessor?

9     A.    I'm thinking in the neighborhood of 45.  I

10  don't have the exact dates, but somewhere in the

11  neighborhood of 45 additional days.

12     Q.    And how did you come to that determination?

13     A.    Because all other aspects of the visit were

14  normal.  The C check was normal.  The return was normal.

15  And we had originally scheduled to be done in June.  But

16  we weren't done until mid-August is when it finally, the

17  aircraft was operational and able to position over to

18  its paint actions.

19     Q.    Was part of the delay a function of manpower?

20     A.    No.

21     Q.    So is it -- am I correct to assume then that

22  what you are saying is that there were 45 days extra

23  time associated with the repair of the aircraft?

24     A.    Correct.

25     Q.    And that has to do with the fact that at least

JAMES MACH   APRIL 06, 2021

1    I think you are still on mute, Mr. Mach.

2          A.    Can you hear me?

3          Q.    I can hear you.   Okay.   As it turns out, I am

4    done with your deposition.   So I'll pass the witness

5    back.

6                    MR. JARVEY:   We'll read and sign.

7                    (Whereupon the deposition concluded at

8    1:36 p.m. MDT)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1 | STATE OF ARIZONA                )
  |                                 )   SS.
2 | COUNTY OF MARICOPA              )

3

4 |        BE IT KNOWN that the foregoing transcript was
  | taken before me, COURTNEY C. VANDERWALKER, a Certified
  | Reporter in the State of Arizona; that the witness
5 | before testifying was duly sworn by me to testify to the
  | whole truth; that the questions propounded to the
6 | witness and the answers of the witness thereto were
  | taken down by me in shorthand and thereafter reduced to
7 | print under my direction; that the foregoing pages are a
  | true and correct transcript of all proceedings, all done
8 | to the best of my skill and ability.

9 |        [X]  Review and signature was requested.

10 |        [ ]  Review and signature was waived.

11 |        [ ]  Review and signature not required.

12 |        I CERTIFY that I am in no way related to any
   | of the parties hereto nor am I in any way interested in
13 | the outcome hereof.

14 |        I FURTHER CERTIFY that I have complied with
   | the ethical obligations set forth in ACJA 7-206.
15 | DATED at Gilbert, Arizona this 15th day of April, 2021.

16

17 | _____
   | COURTNEY C. VANDERWALKER, RPR
18 | AZ Certified Reporter No. 50597

19 |        *    *    *    *    *    *
   |        I CERTIFY that SEYMOUR REPORTING SERVICES has
20 | complied with the ethical obligations set forth in ACJA
   | 7-206.
21

22 | _____
   |        Rosina Seymour, RPR, Owner
23 |        Seymour Reporting
   |        Arizona RRF No. R1000
24

25

**Exhibit 4**

J. Gary Linder, Bar #020552
JONES, SKELTON & HOCHULI, P.L.C.
40 North Central Avenue, Suite 2700
Phoenix, Arizona  85004
Telephone:  (602) 263-1700
Fax:  (602) 200-7883
glinder@jshfirm.com

Attorneys for Defendant Menzies Aviation
(USA), Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Frontier Airlines, Inc., | NO. 2:20-cv-01432-ESW |
| Plaintiff, | **DEFENDANT MENZIES AVIATION (USA), INC.'S THIRD SUPPLEMENTAL DISCLOSURE STATEMENT** |
| v. | |
| Menzies Aviation (USA), Inc., | |
| Defendant. | **(Cumulative Format, Supplemental Material In Bold Face Type)** |

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Defendant Menzies Aviation (USA), Inc. (hereinafter "Defendant" or "Menzies"), by and through counsel makes the following **Third Supplemental** disclosure based on the information reasonably available to Menzies as of the date hereof.  Menzies reserves the right, pursuant to the Federal rules of Civil Procedure, to supplement and/or amend these disclosures as discovery progresses in this action and based on additional information that Menzies learns in this action, including, without limitation, any information Menzies learns relating to the nature of the claims at issue in this litigation, any information Menzies learns relating to Plaintiff's defenses and contentions, and/or any information Menzies learns relating to any other issue relevant to this case.

By making these disclosures, Menzies does not represent that it is

9142325.1

9142325.1

identifying every document, tangible thing, or witness possibly relevant to this lawsuit. Menzies's disclosures are a good faith effort to identify information that it reasonably believes at this time it may use to support its claims or defenses, as required by Rule 26(a)(1).

Menzies's disclosures are made without in any way waiving: (1) the right to object on the grounds of competency, privilege, work-product doctrine, relevancy and materiality, undue burden, or any other proper ground, or to the use of any such information for any purpose, in whole or in part, in any subsequent proceeding in this action or any other action; (2) the right to object on any and all grounds, at any time, to any discovery request or proceeding involving or relating to the subject matter of these disclosures; and/or (3) the right to seek protection under any Protective Order adopted by the Court. By making these initial disclosures, Menzies does not in any way assume the burden of establishing the absence of a claim or defense for which Plaintiff bears the burden of affirmative proof.

All of the disclosures set forth below are made subject to the above objections and qualifications.

## I.  NAMES, ADDRESSES, AND TELEPHONE NUMBERS OF INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION

 1. Employees/Representatives of Menzies Aviation (USA) Inc.
c/o J. Gary Linder
Jones, Skelton & Hochuli, P.L.C.
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004

Individuals likely to have discoverable information that Menzies may use to support its defenses include (1) the Menzies ground handling agents who provided ground handling services for Frontier Airlines, Inc. ("Frontier") on April 1, 2018 at Sky Harbor Airport in Phoenix, Arizona, (2) other ground staff and airport personnel who were on duty at Sky Harbor Airport on April 1, 2018 and stationed near the Frontier aircraft which is the subject of Plaintiff's Complaint, and (3) any Frontier employees who were present at Sky Harbor Airport on April 1, 2018 and on duty at or near the Frontier aircraft which

is the subject of Plaintiff's Complaint.  All of these individuals may have relevant information concerning the facts underlying Frontier's claim for damages, Menzies' potential liability, and Menzies' affirmative defenses.  Menzies' investigation into this matter is continuing and Menzies reserves its right to supplement this Response at a later date.

        2.     Employees/Representative(s) of Frontier Airlines, Inc.
c/o Snell & Wilmer L.L.P.
One Arizona Center, 400
E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202

Employee(s)/Representative(s) of Frontier is/are likely to have information that Frontier may use to support its claims, including information pertaining to Frontier's claims in this action, the relevant contracts between the parties, the incident at issue in the lawsuit, the damages Frontier suffered as a result of Menzies' conduct, and communications between Frontier and Menzies and Menzies' insurance adjuster regarding the foregoing.

        3.     Carl Sykes, Frontier Airlines, Inc.
c/o Snell & Wilmer L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202

Mr. Sykes is a senior analyst for Frontier Airlines and is likely to have information that Frontier may use to support its claims, including information pertaining to Frontier's claims in this action, the relevant contracts between the parties, the incident at issue in the lawsuit, the damages Frontier suffered as a result of Menzies' conduct, and communications between Frontier and Menzies and Menzies' insurance adjuster regarding the foregoing.

        4.     Jake Filene, Frontier Airlines, Inc.,
c/o Snell & Wilmer L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202,

Mr. Filene is the SVP of Customers for Frontier and is likely to have information that Frontier may use to support its claims, including information pertaining

9142325.1

to Frontier's claims in this action, the relevant contracts between the parties, the incident at issue in the lawsuit, the damages Frontier suffered as a result of Menzies' conduct, and communications between Frontier and Menzies and Menzies' insurance adjuster regarding the foregoing.

5.    Graham Gunner, Frontier Airlines, Inc.
      c/o Snell & Wilmer L.L.P.
      One Arizona Center
      400 E. Van Buren, Suite 1900
      Phoenix, Arizona 85004-2202,

Mr. Gunner was a regional manager for Frontier at the time of the incident that is at issue in the lawsuit and is likely to have information that Frontier may use to support its claims, including information pertaining to the incident at issue in the lawsuit, Frontier's investigation of the incident, and the damages Frontier suffered as a result of the incident.

## II.    A COPY OF OR A DESCRIPTION BY CATEGORY AND LOCATION OF ALL DOCUMENTS THAT ARE RELEVANT TO DISPUTED FACTS

1.    The Standard Ground Handling Agreement pursuant to which Menzies provided ground handling services to Frontier on April 1, 2018, and all annexes and amendments

2.    Invoices, expense reports, and other documents provided by Frontier concerning damages resulting from the incident complained of in the Complaint.

3.    All deposition transcripts from testimony provided in this matter unless otherwise objected to.

4.    Any reports prepared by an expert in this case.

5.    Curricula vitae of all expert witnesses.

6.    All discovery by the parties and responses to the same.

7.    Documents used for impeachment.

8.    Demonstrative exhibits for use at trial.

9.    Standard Ground Handling Agreement, Bates numbers Menzies_000001–000027. Attached hereto.

9142325.1                                          4

9142325.1

1      **10.      Training Report Status, Bates number Menzies_000028-000031,**

2  **attached to Defendant's Third Supplemental Disclosure Statement.  Attached hereto.**

3          Without waiving any objections, any and all exhibits identified by any other

4  parties, even if later withdrawn.

5          Defendant anticipates that additional documents/tangible evidence will be

6  identified as discovery continues and will supplement at that time.  Menzies' investigation

7  into this matter is continuing and Menzies reserves its right to supplement this Response at a

8  later date.

9  **III.      COMPUTATION OF DAMAGES**

10         Not applicable to Defendant, except that Defendant will seek costs and fees

11  as appropriate.

12  **IV.      RELEVANT INSURANCE AGREEMENTS**

13         This claim is covered by an insurance policy that provides coverage for an

14  amount well in excess of the amount sought by Plaintiff.  No reservation of rights has

15  been issued.

16         Defendant is insured through JLT policy no. B0901J51716007000, effective

17  December 1, 2017 through June 1, 2019, policy limits bates stamped Menzies_000028 to

18  000029, attached to Defendant's Second Supplemental Disclosure Statement.  The full

19  policy will be provided upon receipt.

20         DATED this 12th day of February 2021.

21                        JONES, SKELTON & HOCHULI, P.L.C.

22

23                        By _____

24                        J. Gary Linder
                          40 North Central Avenue, Suite 2700
25                        Phoenix, Arizona  85004
                          Attorneys for Defendant Menzies Aviation
26                        (USA), Inc.

27

28

9142325.1                              5

9142325.1

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of February 2021, I emailed/mailed counsels of record.

Adam Lang
Matt Jarvey
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2202
alang@swlaw.com
mjarvey@swlaw.com
Attorney for Plaintiff
Frontier Airlines, Inc.

*Jennifer Bernardo*

_____

9142325.1

**Exhibit 5**

J. Gary Linder, Bar #020552
JONES, SKELTON & HOCHULI, P.L.C.
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 263-1700
Fax: (602) 200-7883
glinder@jshfirm.com

Attorneys for Defendant Menzies Aviation
(USA), Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Frontier Airlines, Inc., | NO. 2:20-cv-01432-ESW |
| Plaintiff, | **DEFENDANT MENZIES AVIATION (USA), INC.'S SECOND SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** |
| v. | |
| Menzies Aviation (USA), Inc., | |
| Defendant. | |

Defendant MENZIES AVIATION (USA), INC. ("Menzies"), by and through its attorneys, hereby **Second Supplemental** answers the First Set of Interrogatories of Plaintiff Frontier Airlines, Inc. dated December 16, 2020 (All Supplementations are in **bold**.) as follows:

## SUPPLEMENTAL ANSWERS TO INTERROGATORIES

## INTERROGATORY NO. 1:

In your Rule 26.1 Initial Disclosure Statement, dated October 15, 2020, you represent as follows:

Individuals likely to have discoverable information that Menzies may use to support its defenses include (1) the Menzies ground handling agents who provided ground handling services for Frontier Airlines, Inc. ("Frontier") on April 1, 2018 at Sky Harbor Airport in Phoenix, Arizona, (2) other ground staff and airport personnel who were on duty at Sky Harbor Airport on April 1, 2018 and stationed near the Frontier aircraft which is the subject of Plaintiff's Complaint, and (3) any Frontier employees who were

9243887.1

9243887.1

present at Sky Harbor Airport on April 1, 2018 and on duty at or near the Frontier aircraft which is the subject of Plaintiff's Complaint.

Identify the persons who fall into categories (1), (2), and (3) listed above, and the specific discoverable information that those persons have.

**ANSWER:**

Menzies objects to this Interrogatory to the extent that it requests information which is easily accessible by Plaintiff or within the possession, custody or control of Plaintiff. Without waiving and subject to the foregoing objection, Menzies states that Shantell Jordan and Robert Lammon were present at Phoenix Sky Harbor Airport on April 1, 2018, and witnessed the incident which is the subject of Plaintiff's Complaint. Menzies further states that it is in the process of identifying additional witnesses to the subject incident, and will supplement this Response at a later date.

SUPPLEMENTAL ANSWER:

Menzies objects to this Interrogatory to the extent that it requests information which is easily accessible by Plaintiff or within the possession, custody or control of Plaintiff. Without waiving and subject to the foregoing objection, Menzies states that Shantell Jordan and Robert Lammon were present at Phoenix Sky Harbor Airport on April 1, 2018. Shantell Jordan witnessed the incident which is the subject of Plaintiff's Complaint, and Robert Lammon was the evening ramp supervisor on duty at the time of the incident. Further, Menzies employee David Yanez arrived at the site immediately following the collision, and gathered some information concerning the incident. The Frontier mechanic who requested that Shantell Jordan use the belt loader to allow access to the aircraft, other Frontier personnel who were on site at the time of the incident, and various Menzies ramp workers who were on site at the time of the incident are likely to have discoverable information concerning the factors giving rise to Frontier's damages. Menzies further

states that it is in the process of identifying Menzies employees who are likely to have discoverable information concerning the subject incident, and will supplement this Response at a later date.

**INTERROGATORY NO. 2:**

For your Fourth Affirmative Defense, you allege: "Plaintiff's damages, if any, were caused or contributed to by Plaintiff's own negligence or fault, by the negligence or other fault of third parties, and/or by other intervening or superseding causes . . . ." Identify each fact supporting this affirmative defense, including the specific acts of "negligence or fault," "third parties," and "intervening or superseding causes."

**ANSWER:**

Menzies objects to this Interrogatory on the ground that it appears to seek a legal conclusion, and Menzies cannot fully answer it without conducting further discovery as to the circumstances surrounding Plaintiff's alleged damages.  Subject to the foregoing Objections, Menzies states that its investigation revealed that one of the influencing preconditions of the accident was that Frontier personnel requested that Menzies allow a Frontier mechanic to gain access to the aircraft.  Menzies' investigation is continuing, and Menzies reserves the right to supplement this Response at a later date.

SUPPLEMENTAL ANSWER:

Menzies objects to this Interrogatory on the ground that it appears to seek a legal conclusion, and Menzies cannot fully answer it without conducting further discovery as to the circumstances surrounding Plaintiff's alleged damages.  Subject to the foregoing Objections, Menzies states that its investigation revealed that one of the influencing preconditions of the accident was that Frontier personnel requested that Menzies allow a Frontier mechanic to gain access to the aircraft.  Further, Frontier had failed to provide

Menzies with some of the equipment necessary to access Frontier aircraft for routine cleaning and maintenance. Menzies' investigation is continuing, and Menzies reserves the right to supplement this Response at a later date.

**INTERROGATORY NO. 3:**

For your Fifth Affirmative Defense, you allege: "Plaintiff failed to use reasonable diligence and due care to mitigate or otherwise reduce its damages if any . . . ." Identify each way in which Frontier failed to mitigate or otherwise reduce its damages.

    **ANSWER:**

Menzies objects to this Interrogatory on the ground that Menzies cannot fully answer it without conducting further discovery as to the circumstances surrounding Plaintiff's alleged damages. Subject to the foregoing Objection, Menzies states that its investigation revealed that the extent of Plaintiff's damages could have been further mitigated by completing the maintenance checks on the subject aircraft at the same time as or immediately after the aircraft repairs were being completed, and by avoiding delays in the aircraft repairs. Menzies' investigation is continuing, and Menzies reserves the right to supplement this Response at a later date.

**INTERROGATORY NO. 4:**

In Frontier's Initial Disclosure Statement (including any supplements thereto), Frontier disclosed the components and calculation of its damages. Identify each component or amount in Frontier's damages calculation you dispute, if any, and the facts and documents that support your position.

    **ANSWER:**

Menzies objects to this Interrogatory on the ground that Menzies cannot fully answer it without conducting further discovery as to the circumstances surrounding Plaintiff's alleged damages. Menzies further objections to the extent that this Interrogatory is

duplicative of Interrogatory No. 3.  Subject to the foregoing Objections, Menzies states that its investigation revealed that the extent of Plaintiff's damages could have been further mitigated by completing the maintenance checks on the subject aircraft at the same time or immediately after the aircraft repairs were being completed, and by avoiding delays in the aircraft repairs.  Menzies' investigation is continuing, and Menzies reserves the right to supplement this Response at a later date.

**INTERROGATORY NO. 5**:

Identify and describe all training courses, teaching, guidance, or instruction that Menzies employee Shantell Jordan received prior to the Incident related to the proper use and operation of belt loaders, including the dates of any such training courses, teaching, guidance, or instruction.

**ANSWER:**

Menzies objects to this Interrogatory on the ground that it is unduly burdensome and disproportionate to the needs of this case.  In particular, the phrase "all training courses, teaching, guidance, or instruction" is vague and overly broad.  Subject to the foregoing Objections, Menzies states that Shantell Jordan had received training on the operation of belt loaders prior to the Incident.  Menzies' investigation is continuing, and Menzies reserves the right to supplement this Response at a later date.

**SUPPLEMENTAL ANSWER:**

**Menzies objects to this Interrogatory on the ground that it is unduly burdensome and disproportionate to the needs of this case.  In particular, the phrase "all training courses, teaching, guidance, or instruction" is vague and overly broad.  Subject to the foregoing Objections, Menzies states that Shantell Jordan had received training on the operation of belt loaders prior to the Incident.  Menzies further refers Plaintiff to Menzies' Supplemental Response to Plaintiff's First Set of Requests for**

**Production.  Menzies' investigation is continuing, and Menzies reserves the right to supplement this Response at a later date.**

**INTERROGATORY NO. 6**:

For each response to any of Plaintiff's requests for admission that you did not answer with an unqualified "Admit," identify all facts and documents that support your denial or qualification.

**ANSWER:**

Menzies objects to this Interrogatory on the ground that it is unduly burdensome and disproportionate to the needs of this case, and duplicative of Interrogatories 2, 3, 4, 10 and 11.  Subject to the foregoing Objection, Menzies refers Plaintiff to Menzies' Responses to Interrogatories 2, 3, 4, 10 and 11.

**INTERROGATORY NO. 7**:

Identify any person who may have relevant knowledge regarding this matter, including a description of that knowledge.

**ANSWER:**

Menzies states that the individuals identified in Menzies' and Plaintiff's Initial Disclosures are likely to have relevant knowledge regarding the Incident.  Menzies' investigation is continuing, and Menzies reserves the right to supplement this Response at a later date.

**SUPPLEMENTAL ANSWER:**

Menzies objects to this Interrogatory to the extent that it requests information which is easily accessible by Plaintiff or within the possession, custody or control of Plaintiff. Without waiving and subject to the foregoing objection, Menzies states that Shantell Jordan and Robert Lammon were present at Phoenix Sky Harbor Airport on April 1, 2018. Shantell Jordan witnessed the incident which is the subject of Plaintiff's Complaint, and

6

Robert Lammon was the evening ramp supervisor on duty at the time of the incident. Further, Menzies employee David Yanez arrived at the site immediately following the collision, and gathered some information concerning the incident. The Frontier mechanic who requested that Shantell Jordan use the belt loader to allow access to the aircraft, other Frontier personnel who were on site at the time of the incident, and various Menzies ramp workers who were on site at the time of the incident are likely to have discoverable information concerning the factors giving rise to Frontier's damages. Menzies further states that it is in the process of identifying Menzies employees who are likely to have discoverable information concerning the subject incident, and will supplement this Response at a later date.

**INTERROGATORY NO. 8:**

Identify each person who investigated the Incident or the damage claimed by Frontier as a result of the Incident.

**ANSWER:**

Menzies objects to this Interrogatory to the extent that it is duplicative of Interrogatory No. 7. Subject to the foregoing Objection, Menzies refers Plaintiff to Menzies' Response to Interrogatory No. 7.

**INTERROGATORY NO. 9:**

To the extent you denied the allegations in Paragraph 13 of the Amended Complaint, identify the basis for your denial and identify all facts and documents that support your denial.

**ANSWER:**

Menzies objects to this Interrogatory on the ground that it is unduly burdensome and disproportionate to the needs of this case. Further, Paragraph 13 of the Amended Complaint quotes portions of the parties' Agreement without providing any additional

context regarding the rights and duties of the parties.  Subject to the foregoing Objections, Menzies states that under the Agreement, Menzies is not required to indemnify Frontier for indirect and consequential damages, which are being sought here by Frontier.

**INTERROGATORY NO. 10:**

Identify the basis for your denial of Paragraph 15 of the Amended Complaint and identify all facts and documents that support your denial.

**ANSWER:**

Menzies objects to this Interrogatory on the ground that it is ambiguous, unduly burdensome and disproportionate to the needs of this case.  In particular, Paragraph 15 of the Amended Complaint, "Menzies failed to conduct its services to Frontier in conformity with Frontier's standards," is vague and overly broad.  Subject to the foregoing Objections, Menzies states that one of the influencing preconditions of the accident was that Frontier personnel requested that Menzies allow a Frontier mechanic to gain access the subject aircraft.  Menzies' investigation is continuing, and Menzies reserves the right to supplement this Response at a later date.

SUPPLEMENTAL ANSWER:

Menzies objects to this Interrogatory on the ground that it is ambiguous, unduly burdensome and disproportionate to the needs of this case.  In particular, Paragraph 15 of the Amended Complaint, "Menzies failed to conduct its services to Frontier in conformity with Frontier's standards," is vague and overly broad.  Subject to the foregoing Objections, Menzies states that some of the influencing preconditions of the accident are that Frontier personnel requested that Menzies allow a Frontier mechanic to gain access the subject aircraft, and that Frontier had failed to provide Menzies with some of the equipment necessary to allow access to the aircraft for routine cleaning and maintenance.

Menzies' investigation is continuing, and Menzies reserves the right to supplement this Response at a later date.

**INTERROGATORY NO. 11:**

Describe your understanding of how the Incident occurred, and how and why Frontier sustained damages and identify all facts and documents in support of your understanding.

**ANSWER:**

Menzies objects to this Interrogatory to the extent that it is duplicative of Interrogatories 2, 3, and 10. Subject to the foregoing Objection, Menzies refers Plaintiff to Menzies' Responses to Interrogatories 2, 3, and 10.

**INTERROGATORY NO. 12:**

At the time of the Incident, do you contend that the belt loader was being used as it was designed to be used? If yes, please identify all facts and documents that support your position.

**ANSWER:**

Menzies objects to this Interrogatory to the extent that it is duplicative of Interrogatories 10 and 11. Further, the phrase "as it was designed to be used" is vague and ambiguous. Subject to the foregoing Objections, Menzies states that on the date of the Incident, the belt loader was used to allow a Frontier mechanic to gain access to the aircraft.

**INTERROGATORY NO. 13**:

Identify and describe all training courses, teaching, guidance, or instruction that Menzies employee Robert Lammon received prior to the Incident related to the proper use and operation of belt loaders.

**ANSWER:**

Menzies objects to this Interrogatory on the ground that it is unduly burdensome and disproportionate to the needs of this case. Subject to the foregoing Objection, Menzies

9243887.1

states that at all relevant times Robert Lammon was subject to Menzies' standard policies and procedures concerning training and supervision.  Menzies' investigation is continuing, and Menzies reserves the right to supplement this Response at a later date.

**SUPPLEMENTAL ANSWER:**

**Menzies objects to this Interrogatory on the ground that it is unduly burdensome and disproportionate to the needs of this case.  Subject to the foregoing Objection, Menzies states that at all relevant times Robert Lammon was subject to Menzies' standard policies and procedures concerning training and supervision.  Menzies further refers Plaintiff to Menzies' Supplemental Response to Plaintiff's First Set of Requests for Production.  Menzies' investigation is continuing, and Menzies reserves the right to supplement this Response at a later date.**

**INTERROGATORY NO. 14:**

At the time of the Incident, did Shantell Jordan fail to comply with any of the training, teaching, guidance, or instruction provided by Menzies relating to the proper use and operation of belt loaders?  If no, please identify all facts and documents that support your position.

**ANSWER:**

Menzies objects to this Interrogatory to the extent that it is duplicative of Interrogatories 10 and 11.  Subject to the foregoing Objection, Menzies states that on the date of the Incident, the belt loader was used to allow a Frontier mechanic to gain access to the subject aircraft.  Menzies' investigation is continuing, and Menzies reserves the right to supplement this Response at a later date.

**INTERROGATORY NO. 15:**

At the time of the Incident, did Robert Lammon fail to comply with any of the training, teaching, guidance, or instruction provided by Menzies relating to the proper use and operation of belt loaders? If no, please identify all facts and documents that support your position.

**ANSWER:**

Menzies objects to this Interrogatory to the extent that it is duplicative of Interrogatories 10 and 11.  Subject to the foregoing Objection, Menzies states that on the date of the Incident, the belt loader was used to allow a Frontier mechanic to gain access to the subject aircraft.  Menzies' investigation is continuing, and Menzies reserves the right to supplement this Response at a later date.

**INTERROGATORY NO. 16:**

Identify all managers responsible for overseeing Shantell Jordan at the time of the Incident.

**ANSWER:**

Menzies states that Robert Lammon was on site at the time of the Incident.  Menzies' investigation is continuing, and Menzies reserves the right to supplement this Response at a later date.

**INTERROGATORY NO. 17:**

Identify any persons you or anyone acting on your behalf interviewed concerning the Incident. For each state the name, address, telephone number, date of interview, and the person who conducted the interview.

**ANSWER:**

Menzies objects to this Interrogatory on the ground that it is unduly burdensome and disproportionate to the needs of this case.  Subject to this Objection, Menzies states that Robert Lammon and Shantell Jordan were interviewed as witnesses for Frontier's incident

investigation report.  Menzies' investigation is continuing, and Menzies reserves the right to supplement this Response at a later date.

**INTERROGATORY NO. 18:**

Are you denying responsibility for the Incident? If yes, please identify all facts and documents that support your position.

    **ANSWER:**

    Menzies objects to this Interrogatory on the ground that Menzies cannot fully answer it without conducting further discovery as to the circumstances surrounding the Incident and Plaintiff's alleged damages, and on the ground that the phrase "denying responsibility" is vague and ambiguous.  Menzies further objects to this Interrogatory to the extent that it is duplicative of Interrogatory No. 10. Subject to the foregoing Objections, Menzies refers Plaintiff to Menzies' Response to Interrogatory No. 10.

**INTERROGATORY NO. 19:**

Identify the reason(s) for why you have not furnished payment to Frontier for the damage caused by the Incident, including all facts or documents that support your position.

    **ANSWER:**

    Menzies objects to this Interrogatory on the ground that it is unduly burdensome and disproportionate to the needs of this case, and to the extent that it is duplicative of Interrogatories 2, 3, 4, and 10.  Subject to the foregoing Objections, Menzies refers Plaintiff to Menzies' Responses to Interrogatories 2, 3, 4, and 10.  Frontier also seeks damages to which it is not entitled.  Menzies' investigation is continuing, and Menzies reserves the right to supplement this Response at a later date.

DATED this 19ᵗʰ day of March 2021.

JONES, SKELTON & HOCHULI, P.L.C.

By _____
J. Gary Linder
40 North Central Avenue, Suite 2700
Phoenix, Arizona  85004
Attorneys for Defendant Menzies Aviation
(USA), Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 19ᵗʰ day of March 2021, I caused the foregoing document to be served on counsel of record via U.S. mail/email.

Adam Lang
Matt Jarvey
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2202
alang@swlaw.com
mjarvey@swlaw.com
Attorney for Plaintiff
Frontier Airlines, Inc.

/s/ _____

9243887.1

13

9243887.1

**Exhibit 6**

1   J. Gary Linder, Bar #020552
    JONES, SKELTON & HOCHULI, P.L.C.
2   40 North Central Avenue, Suite 2700
    Phoenix, Arizona  85004
3   Telephone:  (602) 263-1700
    Fax:  (602) 200-7883
4   glinder@jshfirm.com
5
    Attorneys for Defendant Menzies Aviation
6   (USA), Inc.
7
8                    **UNITED STATES DISTRICT COURT**
9                         **DISTRICT OF ARIZONA**

10  Frontier Airlines, Inc.,                  NO. 2:20-cv-01432-ESW

11                              Plaintiff,    **SUPPLEMENTAL ANSWERS OF**
                                              **DEFENDANT MENZIES AVIATION**
12            v.                              **(USA), INC. TO PLAINTIFF'S FIRST**
                                              **SET OF REQUESTS FOR**
13  Menzies Aviation (USA), Inc.,             **PRODUCTION OF DOCUMENTS**
14                              Defendant.
15

16  **SUPPLEMENTAL RESPONSE TO FIRST SET OF REQUESTS FOR PRODUCTION OF**
17            **DOCUMENTS BY DEFENDANT MENZIES AVIATION (USA), INC.**

18          Defendants MENZIES AVIATION (USA), INC., by and through their attorneys, hereby

19  respond to plaintiff's First Set of Requests for Production of Documents dated December 16, 2020 as

20  follows:

21  **REQUEST NO. 1:**

22  Produce all documents related to the Incident, including any inspection reports or similar reports

23  created about the Incident and any documents generated in any internal investigation related to

24  the Incident.

25

26

27

28
    9009522.1

    9243838.1

**RESPONSE**:

Menzies objects to this Request on the ground that the phrase "all documents" is vague and overly broad.  Menzies further objects to the extent that this Request seeks documents which are protected by the attorney-client privilege and/or are properly withheld as attorney work product.  Subject to the foregoing Objections, Menzies states that it is in the process of gathering non-privileged responsive documents, and will produce its incident reports and results of internal investigations once it has located such documents.

**REQUEST NO. 2:**

Produce all documents and correspondence submitted to any of your insurers related to the Incident.

**RESPONSE**:

Menzies objects to this Request on the ground that it is unduly burdensome and disproportionate to the needs of this case.  In particular, the phrase "all documents and correspondence" is vague and overly broad.  Menzies further objects to this Request to the extent that it seeks documents which are protected by the attorney-client privilege and/or are properly withheld as attorney work product.  Subject to the foregoing Objections, Menzies states that it is in the process of gathering non-privileged responsive documents, and will produce its incident reports and results of internal investigations once it has located such documents.

**REQUEST NO. 3:**

Produce all communications related to the Incident.

**RESPONSE**:

Menzies objects to this Request on the ground that it is unduly burdensome and disproportionate to the needs of this case.  In particular, the phrase "all communications"

is vague and overly broad.  Menzies further objects to the extent that this Request seeks documents which are easily accessible to Plaintiff or already within Plaintiff's possession, custody, or control.  Subject to the foregoing Objections, Menzies states that it is in the process of gathering responsive documents, and will produce its non-privileged communications concerning the Incident and Plaintiff's alleged damages once it has located such documents.

**REQUEST NO. 4:**

Produce Shantell Jordan's employee file, including all records related to discipline and all training courses/presentations in which he participated.

**RESPONSE:**

Menzies objects to this Request on the ground that it is unduly burdensome and disproportionate to the needs of this case.  Subject to the foregoing Objection, Menzies states that it is in the process of gathering responsive documents, and will produce its records concerning Shantell Jordan's training and disciplinary history once it has located such documents.

**SUPPLEMENTAL RESPONSE:**

**Menzies objects to this Request on the ground that it is unduly burdensome and disproportionate to the needs of this case.  Subject to the foregoing Objection, Menzies refers Plaintiff to the documents bearing Bates numbers Menzies_000030– 000031.  Menzies reserves the right to further supplement this Response.**

**REQUEST NO. 5:**

Produce all policies, procedures, forms, and training materials—that were in effect on April 1, 2018, and that governed Menzies employees at Phoenix Sky Harbor International Airport—that relate to a Menzies employee's use of or authorization to operate a belt loader.

**RESPONSE:**

Menzies objects to this Request on the ground that it is unduly burdensome and disproportionate to the needs of this case.   In particular, the phrase "all policies, procedures, forms, and training materials" is vague and overly broad.   Subject to the foregoing Objection, Menzies states that it is in the process of gathering responsive documents, and will produce its written policies and training materials which pertain to operation of belt loaders once it has located such documents.

**SUPPLEMENTAL RESPONSE:**

**Menzies objects to this Request on the ground that it is unduly burdensome and disproportionate to the needs of this case.   In particular, the phrase "all policies, procedures, forms, and training materials" is vague and overly broad.   Subject to the foregoing Objection, Menzies refers Plaintiff to the documents bearing Bates numbers Menzies_000032–000263.   Menzies reserves the right to further supplement this Response.**

**REQUEST NO. 6:**

Produce all policies, procedures, forms, and training materials—that were in effect on April 1, 2018, and that governed Menzies employees at Phoenix Sky Harbor International Airport—that relate to a Menzies employee's ability to perform services for Menzies under the Agreement and SGHA with Frontier.

**RESPONSE:**

Menzies objects to this Request on the ground that it is unduly burdensome and disproportionate to the needs of this case.   In particular, the phrase "all policies, procedures, forms, and training materials" is vague and overly broad.   Subject to the foregoing Objection, Menzies states that it is in the process of gathering responsive

documents, and will produce its written policies and procedures which pertain to training and supervision of employees once it has located such documents.

**SUPPLEMENTAL RESPONSE:**

**Menzies objects to this Request on the ground that it is unduly burdensome and disproportionate to the needs of this case.  In particular, the phrase "all policies, procedures, forms, and training materials" is vague and overly broad.  Subject to the foregoing Objection, Menzies states that it has limited its search to written policies, procedures, and materials which pertain to training and supervision of employees tasked with operation of belt loaders.   Menzies further refers Plaintiff to the documents bearing Bates numbers Menzies_000032–000263.  Menzies reserves the right to further supplement this Response.**

**REQUEST NO. 7:**

Produce any written or recorded statements you obtained from any individual related to the Incident.

**RESPONSE:**

Menzies objects to this Request to the extent that it seeks documents and information which are easily accessible to Plaintiff or already within Plaintiff's possession, custody, or control.  Further, Menzies objects to the extent that this Request is duplicative of Requests 1, 2, and 3.  Subject to the foregoing Objections, Menzies refers Plaintiff to its Responses to Requests 1, 2, and 3.

**REQUEST NO. 8:**

Produce any photographs, site diagrams, or videotapes depicting any place, object, or individual concerning the Incident or damage resulting from the Incident.

**RESPONSE**:

Menzies objects to this Request to the extent that it seeks documents and information which are easily accessible to Plaintiff or already within Plaintiff's possession, custody, or control.  Further, Menzies objects to the extent that this Request is duplicative of Requests 1 and 2.  Subject to the foregoing Objections, Menzies refers Plaintiff to its Responses to Requests 1 and 2.

**REQUEST NO. 9:**

Produce Robert Lammon's employee file, including all records related to discipline and all training courses/presentations in which he participated.

**RESPONSE**:

Menzies objects to this Request on the ground that it is unduly burdensome and disproportionate to the needs of this case.  Subject to the foregoing Objection, Menzies states that it is in the process of gathering responsive documents, and will produce its records concerning Robert Lammon's training and disciplinary history once it has located such documents.

**SUPPLEMENTAL RESPONSE:**

**Menzies objects to this Request on the ground that it is unduly burdensome and disproportionate to the needs of this case.   Subject to the foregoing Objection, Menzies refers Plaintiff to the documents bearing Bates numbers Menzies_000028–000029.  Menzies reserves the right to further supplement this Response.**

**REQUEST NO. 10:**

Produce any documents showing proof that, following the Incident, Menzies provided one-on-one training with the station manager for all employees performing services for Menzies under the Agreement and SGHA with Frontier.

**RESPONSE**:

Menzies objects to this Request to the extent that it seeks documents and information which are easily accessible to Plaintiff or already within Plaintiff's possession, custody, or control.  Further, Menzies objects to the extent that this Request is duplicative of Requests 1, 2, and 3.  Subject to the foregoing Objections, Menzies refers Plaintiff to its Responses to Requests 1, 2, and 3.

**REQUEST NO. 11:**

Produce copies of all "read and sign" or similar documents for all employees performing services for Menzies under the Agreement and SGHA with Frontier at the time of the Incident stating that the employee is not permitted to operate any equipment that she/he is not signed off on except during training and under the supervision of a Frontier certified trainer.

**RESPONSE**:

Menzies objects to this Request to the extent that it seeks documents and information which are easily accessible to Plaintiff or already within Plaintiff's possession, custody, or control.  Further, Menzies objects to the extent that this Request is duplicative of Request No. 6.  Subject to the foregoing Objections, Menzies refers Plaintiff to its Response to Request No. 6.

**REQUEST NO. 12:**

Produce copies of all documents and communications received by You from Frontier expressing concerns or complaints about Menzies allowing employees not trained on Frontier policies or equipment to perform services under the Agreement and SGHA with Frontier.

**RESPONSE**:

Menzies objects to this Request to the extent that it seeks documents and information which are easily accessible to Plaintiff or already within Plaintiff's possession, custody, or

control.  Further, Menzies objects to the extent that this Request is duplicative of Requests 1, 2, and 3.  Subject to the foregoing Objections, Menzies refers Plaintiff to its Responses to Requests 1, 2, and 3.

**REQUEST NO. 13:**

Produce all documents that relate to or that you consulted, referred to, relied on, or referenced in responding to any of Frontier's interrogatories or in any denial or partial denial of your responses to any of Frontier's requests for admission.

**RESPONSE:**

Menzies objects to this Request on the ground that it is unduly burdensome and disproportionate to the needs of this case.  Menzies further objects to the extent that this Request seeks documents which are protected by the attorney-client privilege and/or are properly withheld as attorney work product.  Subject to the foregoing Objections, Menzies refers Plaintiff to Menzies' Responses to Requests 1, 2 and 3, and to the documents produced by Plaintiff in conjunction with Plaintiff's Supplemental Disclosure Statement. Menzies also refers Plaintiff to the documents bearing Bates numbers Menzies_000001– 000027, which are being produced concurrently with these Responses.

**REQUEST NO. 14:**

Produce all documents that support or relate to any affirmative defense you allege in this lawsuit.

**RESPONSE:**

Menzies objects to this Request on the ground that it is unduly burdensome and disproportionate to the needs of this case.  Menzies further objects to the extent that this Request seeks documents which are protected by the attorney-client privilege and/or are properly withheld as attorney work product.  Subject to the foregoing Objections, Menzies

refers Plaintiff to Menzies' Responses to Requests 1, 2, 3, and 13, and to the documents produced by Plaintiff in conjunction with Plaintiff's Supplemental Disclosure Statement.

DATED this 19th day of March 2021.

JONES, SKELTON & HOCHULI, P.L.C.

By _____

J. Gary Linder
40 North Central Avenue, Suite 2700
Phoenix, Arizona  85004
Attorneys for Defendant Menzies Aviation (USA), Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of March 2021, I caused the foregoing document to be served on counsel of record via U.S. mail/email.

Adam Lang
Matt Jarvey
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2202
alang@swlaw.com
mjarvey@swlaw.com
Attorney for Plaintiff
Frontier Airlines, Inc.

_____

9243838.1