1   J. Gary Linder, Bar #020552
    JONES, SKELTON & HOCHULI P.L.C.
2   40 N. Central Avenue, Suite 2700
    Phoenix, Arizona 85004
3   Telephone: (602) 263-7340
    Fax: (602) 200-7883
4   glinder@jshfirm.com

5   Attorneys for Defendant Menzies Aviation
    (USA), Inc.

6

7                    **UNITED STATES DISTRICT COURT**

8                         **DISTRICT OF ARIZONA**

9
    Frontier Airlines, Inc.,                No. 2:20-cv-01432-ESW
10
                            Plaintiff,       **MEMORANDUM OF LAW IN**
11                                           **SUPPORT OF DEFENDANT**
                                             **MENZIES AVIATION (USA), INC.'S**
12          v.                               **MOTION FOR SUMMARY**
                                             **JUDGMENT**
    Menzies Aviation (USA), Inc.,
13
                            Defendant.
14

15

16

17                       **TABLE OF CONTENTS**

18  ARGUMENT ...................................................................................................... 4

19  I. Frontier May Not Recover Rental Charges or Penalties Imposed by
       SMBC ........................................................................................................... 4
20
    A. Frontier's Obligations Under the Lease Were Not Foreseeable to
21     Menzies ....................................................................................................... 8
22
    B. Frontier's Leasing Costs Arose From Several Collateral
23     Relationships ............................................................................................... 9
24
    C. Frontier's Claim for Lease-Related Costs Are Closely Related to
25     Lost Profit, Lost Revenue, and Loss-of-Use Damages that Are
       Clearly Barred ........................................................................................... 11
26
    II. Frontier Is Not Entitled to Attorneys'
27      Fees ............................................................................................................ 13
28
    A. A.R.S. § 12-341.01 Does Not Apply to this Case ..................................... 13

9792934.1                          ii

B.  The Annex's Indemnity Provision Does Not Apply to First-Party Claims..................................................................................... 14

III. Frontier's    Tort    Claim    Should    Be    Dismissed    In    Its Entirety............................................................................................ 15

A.  Arizona Law Applies to Frontier's Negligence Claim ............................ 16

B.  Frontier May Not Bring Tort Claims in Addition to its Contract Claim .............................................................................................. 16

CONCLUSION .................................................................... 18

9792934.1

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abogados v. AT & T, Inc.*,
   223 F.3d 932 (9th Cir. 2000) ......................................................................... 4

*Aircraft Repair Servs. v. Stambaugh's Air Serv., Inc.*,
   175 F.3d 314 (3d Cir. 1999) ........................................................................ 11

*Alitalia v. Arrow Trucking Co.*,
   977 F. Supp. 973 (D. Ariz. 1997) .............................................................. 7, 8

*Am. Power Prod., Inc. v. CSK Auto, Inc.*,
   396 P.3d 600 (Ariz. 2017).......................................................................... 13

*Aspect Sys., Inc. v. Lam Research Corp.*,
   2009 WL 1390837 (D. Ariz. May 14, 2009) .............................................. 13

*Bates v. Superior Court, Maricopa County*,
   749 P.2d 1367 (1988).................................................................................. 15

*Boyd Motors, Inc. v. Emps. Ins. of Wausau*,
   880 F.2d 270 (10th Cir. 1989) .................................................................... 11

*Brace Indus. Contracting, Inc. v. Peterson Enterprises, Inc.*,
   2016 WL 6426398 (Del. Ch. Oct. 31, 2016) ............................................ 6, 7

*Brace Indus. Contracting, Inc. v. Peterson Enterprises, Inc.*,
   224 A.3d 574 (Del. 2020) ............................................................................. 6

*In re Castle Cheese, Inc.*,
   541 B.R. 586 (Bankr. W.D. Pa. 2015) ......................................................... 5

*Century 21 Real Est. Corp. v. Motlagh*,
   2007 WL 778184 (D. Ariz. Mar. 12, 2007)................................................ 14

*Colonial Bancgroup Inc. v. PricewaterhouseCoopers LLP*,
   2016 WL 9686250 (M.D. Ala. Aug. 25, 2016) ............................................ 5

*Cook v. Orkin Exterminating Co.*,
   258 P.3d 149 (Ariz. Ct. App. 2011)...................................................... 16, 17

*Deere & Co. v. Exelon Generation Acqs., LLC*,
   2016 WL 6879525 (Del. Super. Nov. 22, 2016)......................................... 14

iv

*Delevin v. Holteen*,
    687 F. App'x 532 (9th Cir. 2017) ........................................................................ 12, 13

*Delevin v. Holteen*,
    2016 WL 10721809 (D. Ariz. Apr. 26, 2016) ............................................................ 12

*Devincentis v. Eur. Performance, Inc.*,
    2012 WL 1646347 (Del. Super. Ct. Apr. 17, 2012) ................................................... 11

*eCommerce Indus., Inc. v. MWA Intel., Inc.*,
    2013 WL 5621678 (Del. Ch. Sept. 30, 2013) ............................................................. 5

*Erie R. Co. v. Tompkins*,
    304 U.S. 64 (1938) ..................................................................................................... 12

*Evans v. Singer*,
    518 F. Supp. 2d 1134 (D. Ariz. 2007) ....................................................................... 16

*Flagstaff Affordable Hous. Ltd. P'ship v. Design All., Inc.*,
    223 Ariz. 320 (2010) ............................................................................................ 15, 17

*Gates Rubber Co. v. USM Corp.*,
    508 F.2d 603 (7th Cir. 1975) ...................................................................................... 5

*Glick v. KF Pecksland LLC*,
    2017 WL 5514360 (Del. Ch. Nov. 17, 2017) ............................................................ 13

*Gloucester Holding Corp. v. U.S. Tape and Sticky Products, LLC*,
    832 A.2d 116 (Del. Ch. 2003) .................................................................................... 5

*Invenergy Solar Dev. LLC v. Gonergy Caribbean SARL*,
    2011 WL 6155689 (Del. Ch. Nov. 28, 2011) .............................................................. 4

*Iron Branch Assocs., LP v. Hartford Fire Ins. Co.*,
    2021 WL 4129116 (D. Del. Sept. 9, 2021).............................................. 6, 10, 11, 12

*Island Creek Coal Co. v. Lake Shore, Inc.*,
    832 F.2d 274 (4th Cir. 1987) ...................................................................................... 5

*James Ventures, L.P. v. Timco Aviation Servs., Inc.*,
    2009 WL 10696244 (S.D. Fla. June 19, 2009) ......................................................... 13

*James Ventures, L.P. v. Timco Aviation Servs., Inc.*,
    403 F. App'x 425 (11th Cir. 2010) ............................................................................ 13

*Krauss v. Greenbarg*,
    137 F.2d 569 (3d Cir. 1943) ...................................................................................... 10

v

*Kuwait Airways Corp. v. Ogden Allied Aviation Servs.*,
    726 F. Supp. 1389 (E.D.N.Y. 1989) ................................................................. 11

*Mass. Mut. Life Ins. Co. v. Certain Underwriters at Lloyd's Of London*,
    2010 WL 2929552 (Del. Ch.) ........................................................................... 6

*Murray v. Holiday Rambler, Inc.*,
    83 Wis. 2d 406 (1978) ..................................................................................... 11

*Nanini v. Nanini*,
    802 P.2d 438 (Ariz. Ct. App. 1990) ................................................................. 4

*Norton v. Phonejockey LLC*,
    2016 WL 5939723 (Ariz. Ct. App. Oct. 13, 2016) ......................................... 13

*Penncro Assocs., Inc. v. Sprint Spectrum, L.P.*,
    499 F.3d 1151 (10th Cir. 2007) ................................................................... 6, 12

*Pharmaceutical Product Development, Inc. v. TVM Life*,
    2011 WL 549163 (Del. Ch. Feb. 10, 2011) .................................................. 6, 10

*Powell Elec. Sys., Inc. v. Hewlett Packard Co.*,
    356 S.W.3d 113 (Tex. App. 2011) ................................................................ 7, 10

*Relax Ltd. v. ANIP Acquisition Co.*,
    2011 WL 2162915 (Del. Super. Ct. May 26, 2011) ..................................... 10, 11

*S. Union Co. v. Sw. Gas Corp.*,
    165 F. Supp. 2d 1010 (D. Ariz. 2001) ............................................................. 4

*Salt River Project Agric. Improvement and Power Dist. v. Westinghouse
    Elec. Corp.*,
    694 P.2d 198 (Ariz. 1984) .............................................................................. 15

*Senior Hous. Capital, LLC v. Shp Senior Hous. Fund, LLC*,
    2013 WL 1955012 (Del. Ch. May 13, 2013) ............................................... 13, 14

*SKF USA Inc. v. Okkerse*,
    992 F. Supp. 2d 432 (E.D. Pa. 2014) ............................................................... 5

*SLH Gen. Contractor, Inc. v. Ambience Inc.*,
    2020 WL 1130325 (Del. Com. Pl. Mar. 4, 2020) ...................................... 6, 7, 10

*Smyrna Hosp., LLC v. Petrucon Constr., Inc.*,
    2013 WL 6039287 (Del. Super. Ct. Sept. 27, 2013) ....................................... 7

*In re Sneva*,
    605 B.R. 201 (Bankr. D. Ariz. 2019) ............................................................. 13

vi

*Spirit Master Funding IV LLC v. Martinsville Corral Inc.*,
   2016 WL 4877622 (D. Ariz. Sept. 15, 2016) ............................................................ 13

*Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*,
   971 F.2d 401 (9th Cir. 1992) ...................................................................................... 15

*Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*,
   524 F.3d 315 (1st Cir.2008) .......................................................................................... 5

*TranSched Sys. Ltd. v. Versyss Transit Sols., LLC*,
   2012 WL 1415466 (Del. Super. Ct. Mar. 29, 2012) ................................................... 14

*Turtur v. Rothschild Registry Int'l, Inc.*,
   26 F.3d 304 (2d Cir. 1994) ............................................................................................ 5

*Verifone, Inc. v. A Cab, LLC*,
   2015 WL 6443126 (D. Nev. Oct. 23, 2015) ................................................................. 7

*VGS, Inc. v. Castiel*,
   2003 WL 723285 (Del. Ch. Feb. 28, 2003) .................................................................. 5

*Wachob Leasing Co. v. Gulfport Aviation Partners, LLC*,
   2017 WL 5247920 (S.D. Miss. May 5, 2017) .............................................................. 7

*Winshall v. Viacom Int'l Inc.*,
   2019 WL 5787989 (Del. Super. Ct. Nov. 6, 2019) ..................................................... 14

*Winshall v. Viacom Int'l Inc.*,
   237 A.3d 67 (Del. 2020) .............................................................................................. 14

*World Enterprises, Inc. v. Midcoast Aviation Servs., Inc.*,
   713 S.W.2d 606 (Mo. Ct. App. 1986) ........................................................................ 11

*WSFS Fin. Corp. v. Great Am. Ins. Co.*,
   2019 WL 2323839 (Del. Super. Ct. May 31, 2019) ...................................................... 6

**Statutes**

A.R.S. § 12-341.01 ...................................................................................... 12, 13, 17

**Other Authorities**

Black's Law Dictionary .......................................................................................... 6, 11

**Rules**

Fed. R. Civ. P. 56 ........................................................................................................ 3

9792934.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PRELIMINARY STATEMENT**

This action arises from an incident which took place on April 1, 2018 at Phoenix Sky Harbor International Airport, where a piece of equipment operated by an employee of Defendant MENZIES AVIATION (USA) INC. ("Menzies") – in the course of Menzies' performance of ground handling services for Plaintiff FRONTIER AIRLINES, INC. ("Frontier") – struck a Frontier aircraft.  This motion seeks a determination as to the damages recoverable under the contract between the parties.

The Amended Complaint pleads causes of action for negligence and breach of contract, alleging that Menzies was negligent in failing to exercise due care in providing ground handling services to Frontier – *i.e.*, failing to "operate ground services equipment in a safe and prudent manner so as not to damage Frontier aircraft" (ECF No. 16 at ¶ 20) – and that Menzies also breached its contractual obligations by (1) failing to provide services according to the standards set forth in the applicable service contract, and (2) failing to indemnify Frontier for the damage resulting from such breach (*id.* ¶¶ 24-30).

Through this action, Frontier seeks to recover (1) flight operations costs incurred as a result of having to re-route flights immediately following the incident (totaling $16,642.97), (2) the cost of diagnostics, labor, and materials required to repair the subject aircraft (totaling $622,680.69), and (3) rental charges and penalties imposed by the lessor of the aircraft during the months of June, July, and August 2018, due to Frontier's delay in returning the aircraft pursuant to the applicable lease (totaling $763,894.45).  *See* accompanying Statement of Facts ("SOF"), at  ¶ 52.

The pertinent ground handling agreement between the parties explicitly waives Frontier's claims for any "indirect, incidental, punitive, exemplary or consequential damages."  *See* Exhibit A ("Ex. A") to SOF, at Para. 4.3.  In view of this provision, Menzies has asserted from the commencement of this litigation that its liability in this matter must be limited to Frontier's direct damages (*i.e.*, flight operations costs and repair costs, categories 1 and 2 above).  Nonetheless, Frontier has continued in its efforts to recover items of damage that it has expressly waived: namely, consequential damages in the form of leasing fees and penalties paid to the aircraft's lessor during the repair period.  These consequential damages make up over half of Frontier's claim.  *Id.*

9792934.1

Moreover, while Frontier expects to recover all attorneys' fees arising from prosecuting this action pursuant to the indemnification provision in the parties' contract (SOF ¶ 53), the contract does not explicitly grant fee-shifting for substantive claims between the parties, thus barring recovery for attorneys' fees in this matter.

Accordingly, Menzies now moves for summary judgment pursuant to F. R. Civ. P. 56, on grounds that the damages recoverable by Frontier in this action must be limited to the cost of repairing the subject aircraft ($622,680.69) and the short-term flight operations costs Frontier incurred as a result of the damage ($16,642.97). Frontier's substantial claims for both the fees paid to the lessor of the aircraft from June through August of 2018 ($763,894.45) and any attorneys' fees are both barred as a matter of law. In addition, while Frontier's express waiver of consequential damages bars recovery of lease-related costs under either a tort or contract theory, there is also independent ground for dismissing Frontier's tort claims under Arizona's economic loss rule. Thus, Menzies requests that the Court dismiss Frontier's tort claim in its entirety.

## **BACKGROUND**

Frontier's claims concern an Airbus A319 aircraft that was leased to Frontier in 2006 by SMBC, and due to be returned to SMBC on or around June 21, 2018. *See* SOF ¶ 24. As discussed below, the subject incident took place on April 1, 2018 – exactly one month before the aircraft was scheduled to be pulled out of service and inducted into its mandatory lease-return protocol. *Id.* ¶¶ 1, 32.

On the date of incident, Menzies personnel were providing ground handling services to Frontier pursuant to a service agreement (Ex. A) designated as "Annex B" to the 2013 Standard Ground Handling Agreement ("SGHA") published by the International Air Transport Association ("IATA") ("Ex. B" to SOF). *See* SOF ¶ 2. One of Menzies' regular duties under the Annex was to help perform pushbacks of aircraft and to tow aircraft to and

2

from gates.  *Id.* ¶ 11.[1]

Whenever an aircraft is moved to or from a gate, a "brake ride" – *i.e.*, a safety precaution wherein a mechanic rides in the cockpit of the aircraft while a ground handling agent tows the aircraft, so that the mechanic can apply the brakes in the event of an emergency – needs to be performed.  *Id.* ¶¶ 14-15.  On April 1, 2018, Frontier A&P mechanic Elias Sanchez was assigned to perform a brake ride while Menzies towed the A319 from the jetway to the gate.  *Id.* ¶ 16.

At approximately 12:25 a.m. on the date of incident, Menzies employee Shantell Jordan was tasked with positioning a belt loader – a piece of ground handling equipment typically used to load baggage onto an aircraft[2] – near the door of the A319 so that Mr. Sanchez could board the aircraft and perform the brake ride.  *Id.* ¶ 20.  At some point while Mr. Jordan was positioning the belt loader near the door, the belt loader made contact with the aircraft, causing damage below the aircraft door.  *Id.* ¶ 21.

Although the aircraft was damaged on April 1, 2018, the repairs could not begin until May 1, 2018, purportedly due to lack of space in the hangar belonging to Frontier's maintenance contractor, PEMCO, in April.  *Id.* ¶ 44.  Beginning May 1 – the date on which the A319 was already scheduled to begin routine maintenance and refurbishment as

---

[1] Since Frontier had only one gate at Sky Harbor in 2018, Frontier would regularly "play musical aircraft" with several planes that would arrive and depart throughout the day, rotating aircraft between a parking pad on the jetway and the Frontier gate.  SOF ¶ 12.

[2] In order for a brake rider to gain access to the cockpit while the aircraft is located on the tarmac, a piece of equipment such as stairs or a ladder must be pulled up to the aircraft door.  SOF ¶ 17.  At Sky Harbor it was a common practice, known by both Menzies and Frontier management, for belt loaders – conveyor belts used to load baggage onto aircraft – to be used for the purpose of enplaning and deplaning brake riders.  *Id.* ¶¶ 18, 19.

3

1    required by Frontier's lease with SMBC (*id.* ¶¶ 32-33, 36) – the repairs and routine lease-

2    return work were performed largely simultaneously (*id.* ¶ 45), and together took

3    approximately 120 days to complete (*id.*).  The aircraft was eventually returned to SMBC

4    on or around September 8, 2018.  *Id.* ¶ 50.

5    **ARGUMENT**

6    Under Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the

7    movant shows that there is no genuine dispute as to any material fact and the movant is

8    entitled to judgment as a matter of law."  Here, there is no genuine factual dispute as to the

9    items of damage that are recoverable under the SGHA and Annex.  *See generally Invenergy*

10    *Solar Dev. LLC v. Gonergy Caribbean SARL*, No. 5455 (VCP), 2011 WL 6155689, at *4

11    (Del. Ch. Nov. 28, 2011) (determining whether items of damage constitute consequential

12    damages on motion for summary judgment).

13    **I.    FRONTIER MAY NOT RECOVER RENTAL CHARGES OR PENALTIES**

14    **IMPOSED BY SMBC**

15    As an initial matter, because this Court sits in Arizona, the Court must apply

16    Arizona's choice-of-law rules.  *See Abogados v. AT & T, Inc.,* 223 F.3d 932, 934 (9th Cir.

17    2000).   Under Arizona's choice of law rules, the law chosen by the parties generally

18    governs, as long as the chosen law has some nexus with the parties or the contract.  *See*

19    *Nanini v. Nanini*, 802 P.2d 438, 441 (Ariz. Ct. App. 1990).  Here, the parties intended for

20    the SGHA and Annex to be governed and interpreted according to the laws of the State of

21    Delaware – the state where Menzies is incorporated.  *See* SOF ¶ 9; *S. Union Co. v. Sw. Gas*

22    *Corp.*, 165 F. Supp. 2d 1010, 1029 (D. Ariz. 2001) (finding "substantial relationship"

23    between the parties and California where one party was incorporated in California)

24    (collecting cases).  As such, Delaware law applies to substantive issues surrounding the

25    parties' contract.

26

27

28

4

1    Paragraph 4 of the Annex[3] waives both parties' claims to consequential damages

2    arising from the SGHA or Annex, as follows:

3    UNLESS SPECIFICALLY PERMITTED BY THIS AGREEMENT, NEITHER
     PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT,
4    INCIDENTAL, PUNITIVE, CONSEQUENTIAL OR EXEMPLARY
     DAMAGES, INCLUDING, WITHOUT LIMITATION, DAMAGES FOR
5    LOSS OF REVENUE OR LOST PROFITS, ARISING FROM ANY
     PROVISION OF THIS AGREEMENT, EVEN IF SUCH PARTY HAS BEEN
6    ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, AND EACH
     PARTY HEREBY RELEASES AND WAIVES ANY CLAIMS AGAINST THE
7    OTHER PARTY REGARDING SUCH DAMAGES.

8

9    *See* Ex. A to SOF, at Para. 4.3.

10    Under Delaware law, such "limitation[s] on liability clauses that preclude various

11    types of damages . . . are typically enforceable" (*eCommerce Indus., Inc. v. MWA Intel.,*

12    *Inc.*, No. 7471 (VCP), 2013 WL 5621678, at *45 (Del. Ch. Sept. 30, 2013)), and given the

13    plain language of this paragraph, which first excludes recovery of any consequential

14    damages "arising from" the SGHA or Annex, and then broadly states that "each party . . .

15    waives *any* claims . . . regarding [consequential] damages" (Ex. A (emphasis added)),

16    Frontier's waiver applies to its tort claim as well as its breach of contract claim.  *See*

17    *generally VGS, Inc. v. Castiel*, No. 17995, 2003 WL 723285, at *7 n.29 (Del. Ch. Feb. 28,

18    2003) (finding that choice-of-law provision applying to "any claim arising out of or relating

19    to" a contract covered tort claims); *Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304,

20    310 (2d Cir. 1994) (same, cited by *Gloucester Holding Corp. v. U.S. Tape and Sticky*

21    *Products, LLC*, 832 A.2d 116, 124 (Del. Ch. 2003)); *SKF USA Inc. v. Okkerse*, 992 F.

22    Supp. 2d 432, 449 (E.D. Pa. 2014) (same); *In re Castle Cheese, Inc.*, 541 B.R. 586, 598

23    (Bankr. W.D. Pa. 2015) (same, with regard to jury waiver).  It is also well-settled among

24    U.S. courts that limitation of liability clauses need not apply only to claims for breach of

25

26    [3] The Preamble to the Annex states that "the terms of the [SGHA] shall apply to this
     Annex B as if such terms were repeated here in full," thus incorporating the SGHA.
27    Paragraph 4 of the Annex provides that "Sub-Article 8.5 of the [SGHA]," which
     addresses Menzies' indemnity obligations, "is modified to read in full" as set forth in
28    Paragraph 4 of the Annex.  Accordingly, Paragraph 4 of the Annex is referenced
     throughout the instant motion.

5

the underlying contract.  *See, e.g., Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.,* 524 F.3d 315, 328 (1st Cir.2008) (interpreting damages exclusion to exclude liability for negligence, and noting that exculpatory clauses permit parties to make "sensible business judgments" allocating risk); *Gates Rubber Co. v. USM Corp.*, 508 F.2d 603, 617 (7th Cir. 1975) (noting that limitation of liability clause need not expressly refer to negligence in order to be applied to negligence claims); *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 278 (4th Cir. 1987) (same); *Colonial Bancgroup Inc. v. PricewaterhouseCoopers LLP*, No. 2:11 Civ. 746 (BJR), 2016 WL 9686250, at *8 (M.D. Ala. Aug. 25, 2016) (finding that application of limitation of liability clause to negligence claim did not contravene public policy) (collecting cases).

Direct or general damages are those inherent in an alleged breach – the necessary and usual result of a wrongful act, which flows "naturally and necessarily" from the act. *WSFS Fin. Corp. v. Great Am. Ins. Co.*, No. N18C-09-088 (EMD) (CCLD), 2019 WL 2323839, at *4 (Del. Super. Ct. May 31, 2019); *see also MASS. MUT. LIFE INS. CO. V. CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON*, No. 4791 (VCL) (JTL), 2010 WL 2929552, at *21 (Del. Ch.) (same).  Direct damages compensate the plaintiff for the loss that is "conclusively presumed" to have been foreseen by the defendant from his wrongful act.  *WSFS Fin. Corp.*, 2019 WL 2323839, at *4.  Notably, direct damages occur "without reference to the special character, condition, or circumstance of the plaintiff."  *Id.* at *6 (citation omitted).

By contrast, consequential damages, otherwise called special damages under Delaware law, have been defined both as damages that "do not flow directly and immediately from the act of the breaching party, but only from some of the consequences or results of such act," and as those "which are the actual, but not the necessary, result of the injury complained of," which "follow [the injury] . . . by reason of special circumstances or conditions."  *Pharmaceutical Product Development, Inc. v. TVM Life,* No. 5688 (LES), 2011 WL 549163, at *6 (Del. Ch. Feb. 10, 2011) (citing Black's Law Dictionary 354 (5th ed. 1979)); *see also Brace Indus. Contracting, Inc. v. Peterson*

6

*Enterprises, Inc.*, No. 11189 (VCG), 2016 WL 6426398, at *13 (Del. Ch. Oct. 31, 2016), *aff'd*, 224 A.3d 574 (Del. 2020) (same).

Distinguishing between direct and consequential damages requires examination of the degree to which the damages are a "foreseeable" and "highly probable" consequence of a breach. *WSFS Fin. Corp.*, 2019 WL 2323839, at *5; *Iron Branch Assocs., LP v. Hartford Fire Ins. Co.*, No. 21 Civ. 463 (MAK), 2021 WL 4129116, at *16 (D. Del. Sept. 9, 2021) (same). In particular, where a category of damage flows from an intervening or preexisting contractual relationship, such damages are considered consequential in nature. *See SLH Gen. Contractor, Inc. v. Ambience Inc.*, No. CPU4-19-001661 (AJS), 2020 WL 1130325, at *6 (Del. Com. Pl. Mar. 4, 2020) (damages stemming from "other tangential contracts" considered consequential); *Iron Branch Assocs., LP*, 2021 WL 4129116, at *16 (same); *see also Penncro Assocs., Inc. v. Sprint Spectrum, L.P.*, 499 F.3d 1151, 1156 (10th Cir. 2007) (noting that the "common legal meaning" of consequential damages is "economic harm beyond the immediate scope of the contract").

Here, the leasing fees that Frontier incurred during the repair period (May 1 through the beginning of September 2018) were clearly unforeseeable to Menzies at the time of contracting and at the time of the alleged breach, and also resulted from Frontier's pre-existing contractual relationships with SMBC, PEMCO, and Airbus. Indeed, as discussed in full below, courts determining whether damages analogous to Frontier's aircraft leasing fees constitute consequential damages have consistently answered in the affirmative. *See, e.g., SLH Gen. Contractor, Inc.*, 2020 WL 1130325, at *6 (finding that damages stemming from a lease that was "collateral to the [a]greement" between the parties constitute consequential damages and "in no way represented what the parties to the [a]greement bargained for"); *Smyrna Hosp., LLC v. Petrucon Constr., Inc.*, No. N10C-01-061 (CLS), 2013 WL 6039287, at *2 (Del. Super. Ct. Sept. 27, 2013) (finding plaintiff "potentially liable" only for direct damages in the form of repair costs stemming from faulty work, since the parties had mutually waived consequential damages); *Brace Indus. Contracting, Inc.*, 2016 WL 6426398, at *13 (rental costs for equipment required to complete jobs

7

following defendants' breach constitute consequential damages); *see also Alitalia v. Arrow Trucking Co.*, 977 F. Supp. 973, 978 (D. Ariz. 1997) (leasing fees imposed by the lessor of an aircraft engine during the repair of the engine constitute consequential damages); *Wachob Leasing Co. v. Gulfport Aviation Partners, LLC*, No. 1:15 Civ. 237 (HSO) (RHW), 2017 WL 5247920, at *3 (S.D. Miss. May 5, 2017) (describing aircraft leasing fees as consequential damages); *Powell Elec. Sys., Inc. v. Hewlett Packard Co.*, 356 S.W.3d 113, 118 (Tex. App. 2011) (penalties incurred due to delay in performance of a collateral contract constitute consequential damages); *Verifone, Inc. v. A Cab, LLC*, No. 2:15 Civ. 00157 (GMN) (GWF), 2015 WL 6443126, at *2 (D. Nev. Oct. 23, 2015) (increased operational costs and other alleged "unnecessary . . . expenditures" incurred as a result of breach constitute consequential damages).

### A. Frontier's Obligations Under the Lease Were Not Foreseeable to Menzies

Frontier's obligations with regard to the return of the A319 aircraft – including, *inter alia*, the lease-return date, the conditions of the lease return, and the consequences for failing to return the aircraft as required – arise entirely from Frontier's 2006 lease with SMBC (SOF ¶ 23),[4] and Frontier cannot demonstrate that Menzies had any prior knowledge whatsoever of the terms of this lease, or could have in any way foreseen, upon entering into the parties' agreement in January 2018, that a damage incident occurring in April 2018 could have resulted in over $750,000 in leasing charges for all of June, July, and August of that year. Frontier's Treasury Manager confirmed during his deposition that Menzies would not have been privy to the terms of Frontier's lease with SMBC, as Frontier's Fleet department, which deals with leases, operates entirely separately from its

---

[4] Specifically, the lease provided that if Frontier failed to return the aircraft on the scheduled return date, Frontier would have to pay the base rent for the first ten days after this agreed return date, an additional 15 percent of the base rent for the next 30 days, and then an additional 50 percent for any additional days. SOF ¶ 47. Frontier planned for all mandatory lease-end work on the A319 aircraft to take up to 52 days in total. *Id.* ¶ 38. Had this work taken longer than 52 days to complete, Frontier would have been required to pay SMBC regardless of any damage allegedly caused by Menzies. *Id.* ¶ 39.

8

1   Ground Handling department, which deals with ground handling services.  *Id.* ¶ 51.

2   Further, when Frontier renegotiated the penalties owed to SMBC during the aircraft repair

3   process (notably, an SMBC representative was present at PEMCO's hangar throughout the

4   entire repair process (*id.* ¶ 49)), the progress and results of those negotiations were similarly

5   not communicated to Menzies.  *Id.* ¶ 51.

6       Since Frontier simply cannot establish that the charges imposed by SMBC during

7   the repair period were known or foreseeable by Menzies prior to the April 2018 damage

8   incident, there is no material dispute as to whether damages stemming from the 2006

9   SMBC lease constitute unrecoverable consequential damages.  *See Alitalia*, 977 F. Supp.

10  at 977–78 (finding that, where plaintiff sought to hold defendant liable for leasing fees

11  incurred during repair of aircraft engine, such costs constituted consequential damages

12  since plaintiff failed to demonstrate that the leasing fees were reasonably foreseeable to

13  defendant at the time of contracting; finding plaintiff's assertion that "it is a common

14  practice to lease engines" insufficient to demonstrate that defendant knew "about the lease

15  and its impending termination," or "that a delay in delivery would lead to a lease extension

16  costing [plaintiff] $3,400 per day").

17      **B.     Frontier's Leasing Costs Arose From Several Collateral Relationships**

18      There were numerous intervening factors in addition to the damage incident that

19  caused Frontier to return the aircraft in September rather than in June 2018, and to incur

20  fees and penalties as a result, including (1) Airbus's previous determination that certain

21  routine checks must be performed at various points in the lifespan of an aircraft (SOF ¶¶

22  25-26),[5] (2) Frontier's prior arrangement with PEMCO and Airbus for the A319's routine

23

24

25

_____

26      [5] At the time of the subject incident, Frontier aircraft typically underwent "C

27  check" maintenance every two years or 4,750 flight hours.  SOF ¶ 25.

28

C-check to align with the end of its lease (*id.* ¶¶ 27-28),[6] (3) the fact that the aircraft was previously scheduled to undergo an intensive, time-consuming C8-level check between May 1, 2018 and the scheduled return date in June 2018 (*id.* ¶¶ 33-34),[7] (4) Frontier and SMBC having negotiated various lease-end refurbishment tasks that were also required to be completed prior to the return of the aircraft (*id.* ¶¶ 28-30),[8] (5) PEMCO's hangar in Tampa, Florida already being filled with four other Frontier aircraft immediately after the incident, such that (according to Frontier's Director of Maintenance) no work purportedly could take place during the entire month of April (*id.* ¶ 44), and of course, (6) Frontier's negotiation of certain late-return penalties with SMBC, both prior to contracting with SMBC in 2006, and during the repair process in 2018 (*id.* ¶¶ 48-49).

Frontier's dealings with SMBC, Airbus, and PEMCO were "collateral to the [a]greement between [Frontier and Menzies]," and the rental charges and penalties that

---

[6] In 2018 Frontier would ordinarily schedule C-checks to align with the end of a lease, because doing so allowed Frontier to perform other lease-end work concurrently with the C-check.  SOF ¶ 27.

[7] A C8-check is a relatively heavy, ten-year maintenance check that requires PEMCO to open up certain parts of the aircraft to uncover hidden damage, and complete over 1500 maintenance tasks.  SOF ¶¶ 33-34.  The length of time required to complete these tasks generally depends on numerous factors, including the regular wear and tear on a given aircraft and the extent of the hidden internal damage to the aircraft.  *Id.* ¶ 34.

[8] Prior to a lease return, Frontier negotiates with the lessor regarding how much work PEMCO must complete before the aircraft can be returned.  SOF ¶¶ 28-30. Notably, the SMBC lease required upkeep of more components than a typical lease requires.  *Id.* ¶ 36.

All told, it is likely impossible to pinpoint the total number of man-hours spent completing only the repairs arising from the damage incident, since PEMCO engaged in the damage repairs, C8-check, and lease-return tasks largely simultaneously.  *Id.* ¶ 45.

10

resulted from these relationships "in no way represent what [Frontier and Menzies] . . . bargained for" through the SGHA and Annex. *SLH Gen. Contractor, Inc.*, 2020 WL 1130325, at *6; *see also Iron Branch Assocs., LP*, 2021 WL 4129116, at *15 (finding that, after contractor failed to perform on construction contract, costs plaintiff incurred in relocating tenants were consequential in nature, since they "require[d] the existence of [plaintiff]'s relationship with the relocated tenants to be sustained"); *Krauss v. Greenbarg*, 137 F.2d 569, 570 (3d Cir. 1943) (damages stemming from company's inability to maintain its scheduled deliveries considered consequential damages); *Relax Ltd. v. ANIP Acquisition Co.*, No. N10C-06-032 (JRS), 2011 WL 2162915, at **2, 4 (Del. Super. Ct. May 26, 2011) (finding that under U.S. law in general, where one party improperly terminates an agreement, damages arising from the other party's inability "to fulfill commitments under third party contracts" and "the penalties arising therefrom[]" constitute consequential damages) (internal quotation marks omitted); *Powell Elec. Sys., Inc.*, 356 S.W.3d at 118 (penalties incurred under third-party contracts considered consequential damages) (collecting cases).

At bottom, Frontier's lease-related costs occurred "by reason of special circumstances or conditions" (*Pharmaceutical Product Development, Inc.*, 2011 WL 549163, at *6), and as such, they are not recoverable under the Annex.

**C.**     **Frontier's Claims for Lease-Related Costs Are Closely Related to Lost Profit, Lost Revenue, and Loss-of-Use Damages that Are Clearly Barred**

The Annex between Frontier and Menzies explicitly lists lost profits and lost revenues as examples of unrecoverable consequential damages. *See* Ex. A, Para. 4.3. Delaware courts have recognized that any damages "*relat[ing] to* . . . lost business or lost profits" likewise constitute consequential damages. *Relax Ltd.*, 2011 WL 2162915, at *4 (emphasis added); *see also Iron Branch Assocs., LP*, 2021 WL 4129116, at *19 (determining that where defendant expressly waived consequential damages in the form of lost profits and lost income, damages stemming from loss of low-income tax credits were encompassed under such waiver – reasoning that, "had [plaintiff] received the credits, its

11

federal income tax would have been reduced, increasing its profit").   Here, Frontier's leasing costs are a critical component of its profits (*see* SOF ¶ 22, noting that Frontier leases all of the aircraft in its fleet), and as in *Iron Branch*, are encompassed by the Annex's explicit waiver of lost profits and revenues.

Further, it is well-settled that leasing costs represent loss of use of a vehicle.  *See, e.g.*, *Devincentis v. Eur. Performance, Inc.*, No. N10C-08-069 (MMJ), 2012 WL 1646347, at *5 (Del. Super. Ct. Apr. 17, 2012) (observing that leasing costs are generally used to calculate damages for loss of use of vehicles) (collecting cases); *see also Kuwait Airways Corp. v. Ogden Allied Aviation Servs.*, 726 F. Supp. 1389, 1390 (E.D.N.Y. 1989) (same, since "[t]he value of the lost use of a thing for a period of time is . . . estimated by the expense of acquiring the use of that item for that time, *i.e.*, the rental cost of a replacement").  Loss-of-use damages are typically considered consequential in nature.  *See, e.g.*, *Aircraft Repair Servs. v. Stambaugh's Air Serv., Inc.*, 175 F.3d 314, 321 (3d Cir. 1999) (loss of use damages described as consequential damages); *Boyd Motors, Inc. v. Emps. Ins. of Wausau*, 880 F.2d 270, 273 (10th Cir. 1989) (same); *Murray v. Holiday Rambler, Inc.*, 83 Wis. 2d 406, 430 (1978) (same, collecting cases); *World Enterprises, Inc. v. Midcoast Aviation Servs., Inc.*, 713 S.W.2d 606, 610 (Mo. Ct. App. 1986) (same, applying Black's Law Dictionary definition of consequential damages).  Frontier's leasing costs essentially represent its loss of use damages for the period during which the lease with SMBC was extended due to the repairs and scheduled maintenance, and those damages are barred as a form of consequential damages.

As such, although the Annex does not specifically preclude aircraft rental costs under the waiver of consequential damages (which waiver "*include[es], without limitation*, damages for loss of revenue or lost profits" (Ex. A, Para. 4.3) (emphasis added)), rental costs represent a sort of "economic harm beyond the immediate scope of [the SGHA and Annex]" that (1) falls within the "common legal meaning" of consequential damages (*Penncro Assocs., Inc.*, 499 F.3d at 1156), and (2) is closely related to those forms of consequential damages that are expressly waived.  *See Iron Branch Assocs., LP*, 2021 WL

12

4129116, at *19 (examining each claimed item of damage under both the contract's explicit waiver of consequential damages and common law).

## II.   FRONTIER IS NOT ENTITLED TO ATTORNEYS' FEES

Frontier's breach of contract claim alleges in part that Menzies "breached the indemnification provision of the [Annex] by failing and refusing to indemnify Frontier for damages, losses and costs arising out of and from the [April 1, 2018 incident], upon Frontier's immediate demand."  Compl. ¶ 29.  Frontier's Complaint further requests an award of attorneys' fees pursuant to both the Annex and A.R.S. § 12-341.01, which provides that "[i]n any contested action arising out of a contract . . . the court may award the successful party reasonable attorney fees."

As an initial matter, A.R.S. § 12-341.01 does not apply in this case, given the choice of law provision in the Annex.  Further, the plain language of the Annex bars Frontier from recovering fees and costs stemming from so-called "first-party," or *inter se*, actions between Frontier and Menzies.

### A.   A.R.S. § 12-341.01 Does Not Apply to this Case

"It is well established that under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."  *Delevin v. Holteen*, No. 12 Civ. 00118 (TUC) (FRZ), 2016 WL 10721809, at *2 (D. Ariz. Apr. 26, 2016), *aff'd*, 687 F. App'x 532 (9th Cir. 2017) (citing *ERIE R. CO. V. TOMPKINS*, 304 U.S. 64 (1938)) (internal quotation marks and alterations omitted).  Arizona courts consider the award of attorneys' fees to be a substantive issue for choice of law purposes (*see, e.g.*, *Delevin*, 2016 WL 10721809, at *2), and as stated above, Delaware law governs the SGHA and Annex.  As such, "the substantive law of [Delaware] applies in determining whether [Frontier is] entitled to an award of attorneys' fees" under the SGHA and Annex.  *Id.*; *see also Delevin v. Holteen*, 687 F. App'x 532, 534 (9th Cir. 2017) (affirming district court's determination that the body of law that "govern[s] the underlying merits . . . also governs the entitlement to attorney's fees"); *In re Sneva*, 605 B.R. 201, 208 (Bankr. D. Ariz. 2019) (looking to choice-of-law provision in contract to determine which state's law should be applied to the

1  issue of attorneys' fees); *Am. Power Prod., Inc. v. CSK Auto, Inc.*, 396 P.3d 600, 605 (Ariz.

2  2017) (same); *Spirit Master Funding IV LLC v. Martinsville Corral Inc.*, No. 14 Civ. 00720

3  (PHX) (GMS), 2016 WL 4877622, at *2–3 (D. Ariz. Sept. 15, 2016) (same, finding that

4  since A.R.S. § 12–341.01(A) "expressly allows for contractual provisions to modify the

5  default statutory rule," it was not a violation of public policy to apply the law chosen by

6  the parties to the issue of attorneys' fees); *see also James Ventures, L.P. v. Timco Aviation*

7  *Servs., Inc.*, No. 06 Civ. 60420 (STB), 2009 WL 10696244, at *1 (S.D. Fla. June 19, 2009),

8  *aff'd*, 403 F. App'x 425 (11th Cir. 2010) (same, applying Arizona choice-of-law rules).

9       Here, as discussed below, neither the SGHA nor Annex addresses fee-shifting, and

10  in the absence of such a provision, Delaware follows the "American Rule," in which

11  attorneys' fees are not ordinarily awarded to a prevailing party.  *See generally Glick v. KF*

12  *Pecksland LLC*, No. 12624 (CB), 2017 WL 5514360, at *50 (Del. Ch. Nov. 17, 2017);

13  *SENIOR HOUS. CAPITAL, LLC V. SHP SENIOR HOUS. FUND, LLC*, 2013 WL 1955012,

14  at *45 (Del. Ch. May 13, 2013).  As such, not only is A.R.S. § 12-341.01 inapplicable in

15  this case, but Frontier is also precluded from recovering attorneys' fees under Delaware

16  law.  *See Norton v. Phonejockey LLC*, No. 15 Civ. 0186 (PBS), 2016 WL 5939723, at *4

17  (Ariz. Ct. App. Oct. 13, 2016), *as amended* (Nov. 17, 2016) (vacating award of attorneys'

18  fees granted under A.R.S. § 12-341.01, where Wyoming law applied to the issue of

19  attorneys' fees, and Wyoming "has no statutory counterpart to A.R.S. § 12-341.01");

20  *Aspect Sys., Inc. v. Lam Research Corp.,* No. 06 Civ. 1620 (PHX) (NVW), 2009 WL

21  1390837, at *12 (D. Ariz. May 14, 2009) (holding that because the parties' agreement

22  contained choice-of-law provisions applying California law, attorneys' fees may not be

23  awarded under A.R.S. § 12–341.01); *Century 21 Real Est. Corp. v. Motlagh*, No. 03 Civ.

24  2353 (PHX) (DGC), 2007 WL 778184, at *2 n.1 (D. Ariz. Mar. 12, 2007) (finding that,

25  given the underlying contract's New Jersey choice-of-law provision, "the [c]ourt need not

26  address [p]laintiff's argument that it is entitled to [fees] under A.R.S. § 12–341.01").

27       **B.    <u>The Annex's Indemnity Provision Does Not Apply to First-Party Claims</u>**

28       There is a presumption under Delaware law that the term "indemnify" in a standard

14

indemnity provision applies to third-party claims, rather than to first-party or *inter se* claims between the contracting parties.  *See, e.g.*, *Winshall v. Viacom Int'l Inc.*, No. 15 Civ. 06137 (EMD) (CCLD), 2019 WL 5787989, at *5 (Del. Super. Ct. Nov. 6, 2019), *aff'd*, 237 A.3d 67 (Del. 2020), *reh'g and reargument denied* (Aug. 7, 2020); *TranSched Sys. Ltd. v. Versyss Transit Sols., LLC*, No. CIV.A. 07C-08-286 (WCC), 2012 WL 1415466, at *2 (Del. Super. Ct. Mar. 29, 2012).  Indeed, indemnification provisions "are presumed *not* to require reimbursement for attorneys' fees incurred as a result of substantive litigation between the parties to the agreement absent a clear and unequivocal articulation of that intent."  *SENIOR HOUS. CAPITAL, LLC*, 2013 WL 1955012, at *45 (citation omitted); *TRANSCHED SYS. LTD.*, 2012 WL 1415466, at *2 (same, and finding that the fact that the applicable contract defined "adverse" events requiring indemnification to include attorneys' fees did not "clearly and unequivocally indicate that the parties intended the indemnitor to pay the indemnitee's attorneys' fees in the event of *INTER SE* litigation"); *DEERE & CO. V. EXELON GENERATION ACQS., LLC*, 2016 WL 6879525, at *2 (Del. Super. Nov. 22, 2016) (same).

Here, there is no language in the SGHA or Annex that covers fee-shifting.  Moreover, Paragraph 4.1 of the Annex, which sets forth Menzies' indemnity obligations, does not reference "prevailing parties," which is "a hallmark term of fee-shifting provisions."  *TRANSCHED SYS. LTD.*, 2012 WL 1415466, at *2.  As such, Frontier cannot overcome the presumption under Delaware law that the indemnity language in the Annex relates only to third-party claims.

## III.   FRONTIER'S TORT CLAIM SHOULD BE DISMISSED IN ITS ENTIRETY

Because Frontier has waived any claim to leasing fees and the Annex does not allow for recovery of attorneys' fees, the Court has ample grounds on which to grant summary judgment as to those categories of damages.  However, there is also independent ground for dismissing Frontier's tort claims in their entirety, since Frontier's damages are purely economic losses.

### A.      Arizona Law Applies to Frontier's Negligence Claim

Tort claims are not ordinarily controlled by a contractual choice of law provision; rather, they are decided according to the law of the forum state.  *See Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992).  Arizona courts generally apply the law of the state that has "the most significant relationship to both the occurrence and the parties." *Bates v. Superior Court, Maricopa County,* 156 Ariz. 46, 749 P.2d 1367, 1370 (1988).  Here, Arizona has the most significant relationship to Frontier's tort claim: "[Frontier]'s injury occurred in Arizona, as did the conduct causing this injury.  Further, Arizona is . . . the place where [Frontier]'s relationship with [Menzies]" – memorialized in the Annex which governed Menzies' operations at Phoenix Sky Harbor Airport specifically – "was centered." *Sutter Home Winery, Inc.*, 971 F.2d at 407.  Accordingly, it is Arizona's economic loss rule that should be applied here.

### B.      Frontier May Not Bring Tort Claims in Addition to its Contract Claim

The Arizona Supreme Court first adopted the economic loss rule ("ELR") in the context of strict product liability, in *Salt River Project Agric. Improvement and Power Dist. v. Westinghouse Elec. Corp.,* 694 P.2d 198 (Ariz. 1984).  There the court found that in order to determine whether a particular claim sounds in tort or in contract, a court must consider the facts of the case while bearing in mind that tort law is designed to promote the safety of persons and property, while contract law is designed to protect the parties' expectations. *Id.* at 205.  The Arizona Supreme Court subsequently revisited the ELR in the context of construction contracts.  *See Flagstaff Affordable Hous. Ltd. P'ship v. Design All., Inc.*, 223 Ariz. 320, 325 (2010).  Relying on *Salt River Project,* the *Flagstaff* court analyzed the contract law policy of upholding the parties' expectations, and found the ELR particularly applicable in cases where the relevant contracts contain "detailed provisions allocating risks of loss and specifying remedies." *Id.* at 671.

In addition to weighing the relevant contract and tort law policies, Arizona courts determining whether to apply the ELR consider whether "there has been no injury besides that to the subject property." *Cook v. Orkin Exterminating Co.*, 258 P.3d 149, 153 (Ariz.

16

Ct. App. 2011) (Ariz. Ct. App. 2011) (finding that where the defendant allegedly failed to "adequately perform its promises" under a service contract, and plaintiffs were seeking remedies for purely economic losses stemming from damage to the property that was the subject of the service contract, the ELR barred their tort claims).

Arizona courts have explicitly found that the ELR applies to service contracts more broadly. *See, e.g.*, *Evans v. Singer*, 518 F. Supp. 2d 1134, 1147 (D. Ariz. 2007). As the District of Arizona has opined, "if a musician negotiated a contract where the terms required a performance at a certain location, on a specified date . . . and contained provisions defining what constitutes breach and what remedies are available, it would certainly confound the reasonable expectations of the parties if that musician were later sued in tort . . . when she failed to show up at the venue on the specified date." *Id.*

Here, the SGHA and Annex fully address the standards by which Menzies was expected to perform its ground handling services. The SGHA required Menzies to carry out all services – including those which have a "safety aspect," such as "loading of aircraft" – in accordance with Frontier's instructions. SOF ¶ 5; Ex. B. Frontier in turn promises that it "shall supply [Menzies] with sufficient information and instructions to enable [Menzies] to perform its handling properly." SOF ¶ 7. "In the . . . absence of instructions by [Frontier]," Menzies was required to follow "its own standard practices and procedures." *Id.* ¶ 6. Frontier's Ground Handling Manual lays out the procedures for operating ground handling equipment, including belt loaders, and prescribes the proper way to enplane and deplane individuals from aircraft. *Id.* ¶ 8.

In the event that any damage or loss occurred in the course of Menzies' performance of services, the Annex provides that Menzies must indemnify Frontier for "any and all . . . [direct] damages, losses, costs and expenses . . . aris[ing] out of or result[ing] from any act(s) or omission(s) by [Menzies] . . . in the performance or non-performance of services . . . including but not limited to . . . damage [to] . . . the property of [Frontier]." Ex. A, Para. 4.1. Thus, as in *Flagstaff*, the SGHA and Annex contain "detailed provisions allocating risks of loss and specifying remedies," in addition to safety and quality standards

17

1    pertaining to each service provided by Menzies, and as such, "the policies of accident

2    deterrence and loss-spreading [do] not require allowing tort recovery in addition to contract

3    remedies" in this case, "because the parties had already made these contractual

4    allocations." *Cook*, 258 P.3d at 153.

5        Even if an independent tort duty did exist beyond the duties contained in the SGHA

6    and Annex, the economic loss rule still bars Frontier from recovering under a tort theory

7    because Frontier's damages consist of exclusively economic losses. *See Cook,* 258 P.3d at

8    152 (costs associated with repairing property that was the subject of the underlying service

9    contract considered purely economic losses).  Just as a new construction is considered the

10   "bargained-for item" in a construction contract (*see Flagstaff,* 223 P.3d at 671), or a house

11   is considered the "bargained-for item" in a pest control service contract (*Cook,* 258 P.3d at

12   152), Frontier's aircraft is the "bargained-for item" in the SGHA and Annex.  Accordingly,

13   the damages sustained to the A319 aircraft and other related monetary damages constitute

14   "purely economic damages" under Arizona law, which warrants dismissal of Frontier's

15   negligence claim in its entirety.

16                                    **CONCLUSION**

17       Based on the foregoing, Defendant respectfully requests that this Court grant

18   summary judgment as to the following: (1) that Frontier is not entitled to recover

19   consequential damages in this action in the form of rental charges and penalties paid to

20   SMBC, (2) that Frontier may not recover attorneys' fees pursuant to either the

21   SGHA/Annex or A.R.S. § 12-341.01, and (3) that Frontier may not bring separate tort law

22   claims in addition to its breach of contract claims.

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED this 30th day of September, 2021.

JONES, SKELTON & HOCHULI, P.L.C.


By /s/ J. Gary Linder
J. Gary Linder
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
Attorneys for Defendant Menzies Aviation
(USA), Inc.

19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of September, 2021, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

Adam E. Lang
Snell & Wilmer, LLP
One Arizona Center
00 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202

/s/ Jennifer Bernardo

20

9792934.1