

Adam E. Lang (#022545)
Matt Jarvey (#031350)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: alang@swlaw.com
        mjarvey@swlaw.com
*Attorneys for Plaintiff Frontier Airlines, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Frontier Airlines, Inc., | No. 2:20-cv-01432-ESW |
|---|---|
| Plaintiff, | **PLAINTIFF'S RESPONSE TO DEFENDANT MENZIES AVIATION (USA) INC.'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| Menzies Aviation (USA), Inc., | |
| Defendant. | (Oral Argument Requested) |

The Court should deny Defendant Menzies Aviation (USA), Inc.'s ("Menzies's") motion for summary judgment. Doc. 71. Menzies raises three principal arguments, each of which should fail. <u>First</u>, Menzies argues that Plaintiff Frontier Airlines, Inc. ("Frontier") should be limited in the damages it may pursue, even though the parties' contract requires Menzies to indemnify Frontier against damages of "any kind or nature whatsoever." <u>Second</u>, Menzies argues that Frontier may not recover its attorneys' fees, even though the parties' contract expressly requires Menzies to cover Frontier's "court costs and attorney's fees." <u>Third</u>, Menzies argues that Arizona's economic loss rule ("ELR") bars Frontier from pursuing its negligence claim, even though that claim is premised on Menzies damaging property and violating an independent tort duty, which removes Frontier's negligence claim from the ELR's ambit. Because each of Menzies's arguments fail, the Court should deny Menzies's motion in full.

## I. INTRODUCTION

Frontier asserts claims against Menzies for breach-of-contract and negligence after a Menzies employee ran a belt loader into the side of a Frontier aircraft, causing over $1.4 million in damage. Frontier seeks three categories of damages:

1. <u>Flight-operations costs</u>: the logistical costs associated with substituting and rerouting other aircraft to cover for the damaged aircraft;

2. <u>Repair costs</u>: the cost of repairing the damaged aircraft; and

3. <u>Lease-penalty costs</u>: the monetary penalties that Frontier had to pay to the aircraft's lessor for returning the aircraft late as a result of the damage.

Frontier also seeks to recover its costs and attorneys' fees. Menzies, however, argues that the parties' contract precludes Frontier from recovering lease-penalty costs and attorneys' fees, and more broadly that, given the existence of the contract, the ELR precludes Frontier from recovering in tort.

Menzies's arguments about Frontier's right to recover lease-penalty damages and attorneys' fees simply ignore the plain language of the parties' contract. Paragraph 4.1 requires Menzies to indemnify Frontier against damages "of any kind or nature whatsoever" and "court costs and attorney's fees" that result from Menzies performing its contractual services:

> [Menzies] shall indemnify, defend and hold harmless [Frontier] from and against *any and all* claims, damages, losses, fines, civil penalties, liabilities, judgments, costs and expenses *of any kind or nature whatsoever*, including, but not limited to, interest, court costs and attorney's fees, which *in any way* arise out of or result from any act(s) or omission(s) by [Menzies] (or anyone directly or indirectly employed by [Menzies] . . .) in the performance or non-performance of services under this Annex B . . . including but not limited to: . . . The loss . . . damage or destruction of property, including the property of [Frontier] . . . .

Ex. A ¶ 4.1 (emphasis added).[1] As the italicized parts of this paragraph demonstrate, there

---
[1] Citations to lettered exhibits refer to those exhibits (both sealed and unsealed) appended to Menzies's Statement of Facts ("SOF"). Doc. 66. Citations to numbered exhibits refer to those exhibits appended to Frontier's Controverting Statement of Facts ("CSOF"), filed alongside this response.

is no limit on the damages Frontier may seek that result from Menzies damaging Frontier's property. It is thus irrelevant whether Fronter's lease-penalty damages are properly categorized as "consequential," as Menzies argues; the contract requires Menzies to cover all damages no matter the category. Moreover, although Paragraph 4.3 contains a damages waiver, critically, that waiver only limits damages "unless specifically permitted by this agreement." Ex. A ¶ 4.3 (all-caps omitted). Because Paragraph 4.1 specifically and clearly permits Frontier's damages, Paragraph 4.3's waiver does not apply.

Additionally, Menzies's ELR argument stretches the rule beyond its limits. The ELR does not preclude recovery in tort simply because parties have a contract with one another. Where, as here, a tort claim arises from damage to property that is not itself the subject of a contract or from the breach of an independent tort duty, the ELR does not apply. Menzies damaged property, an aircraft, that was not itself the subject of the parties' contract and did so by breaching its independent duty to operate equipment with reasonable care. Accordingly, the ELR does not prevent Frontier from pursuing its negligence claim.

## II. BACKGROUND

### A. The Parties' Contract

To understand the parties' arguments, it is important to understand some background information about the parties' contract. Like many airlines, Frontier outsources ground handling services—services performed for an aircraft between its arrival and departure, such as towing, cleaning, baggage handling, and ticketing—to third-party contractors. In 2018, at Phoenix Sky Harbor International Airport ("Phoenix Sky Harbor"), Menzies was Frontier's ground handling services contractor who performed various services for Frontier pursuant to a contract between the parties.

It is undisputed that the contract between Frontier and Menzies consists of two documents: (1) a 2013 Standard Ground Handling Agreement ("SGHA"), which itself contains a Main Agreement and Annex A; and (2) a 2018 "Annex B." CSOF ¶ 2; Exs. A–B. The SGHA is a document drafted by the Internal Air Transport Association, and it contains standardized terms for ground-handling-services contracts. Ex. B; Ex. 1. In

essence, the SGHA provides a foundation for contracts between particular airlines (like Frontier) and ground-handling-services contractors (like Menzies). The SGHA expressly contemplates that parties will execute their own "Annex B" contract, which will contain the particular terms agreed upon between the parties. CSOF ¶ 54. In this way, the SGHA functions like a menu, offering standardized contract provisions for parties to incorporate, reject, or modify as needed for their particular Annex B contracts.

Effective January 1, 2018, Frontier and Menzies entered into their own Annex B contract, which both incorporated and modified the terms of the SGHA, and which governed Menzies's provision of ground handling services for Frontier at Phoenix Sky Harbor. CSOF ¶¶ 2, 54–55; Doc. 71 at 10 n.3. Among other things, the parties' Annex B identifies the specific services that Menzies would perform for Frontier. *See* Ex. A ¶ 1.1 (Menzies "shall provide the following services . . . ."). As noted earlier, it also requires Menzies to indemnify Frontier against *any* losses or damages that "arise out of or result from . . . [Menzies's] performance or non-performance of services under this Annex B." Ex. A ¶ 4.1.

### B. The Damage Event

This case arises out of a particular damage event. On April 1, 2018, a Menzies employee, Shantell Jordan ("Jordan"), ran a belt loader into the side of a Frontier aircraft while the aircraft was parked on the tarmac, thereby damaging the aircraft. CSOF ¶ 56. Jordan's supervisor (another Menzies employee) had asked Jordan to drive the belt loader up to the aircraft to allow a mechanic to board the aircraft (by walking up the mechanical belt) so it could be towed to a gate. CSOF ¶ 57. Immediately after the incident, Jordan admitted in a written statement that he had "mistakenly pressed the gas for the brake" and by the time he tried to brake "it was to[o] late. The end result was me hitting the plane." CSOF ¶ 58. Jordan's failure to safely operate the belt loader is unsurprising given that he had never been trained to operate a belt loader. CSOF ¶ 59. Following the incident, another Menzies employee, David Yanez ("Yanez"), also admitted in a written report that Jordan

had not been properly trained, was not properly "signed off" on the use of a belt loader, and thus, should not have been operating the belt loader at all. CSOF ¶ 60.

Not only did Menzies permit an untrained employee to operate a belt loader around Frontier's aircraft, the manner in which Menzies used the belt loader also violated the parties' contract. That contract required Menzies to abide by Frontier's Ground Services Manual ("GSM"), which is a manual that details various safety protocols for ground handling services. CSOF ¶ 61. The GSM, in turn, required Menzies's employees, among other things, to be trained before operating equipment, to use a "guide person" to safely usher a belt loader up to an aircraft, to position a belt loader only at the aircraft's cargo doors—*never* the doors at the front of the aircraft—and never to use a belt loader as a means to board the aircraft. CSOF ¶ 62. Menzies violated each of these protocols during the incident in question: not only was Jordan untrained, Menzies did not use a guide person and Jordan tried to position the belt loader near the aircraft's front right door, which is where he hit the aircraft, to allow a person to board the aircraft. CSOF ¶ 63. Menzies employee Yanez further admitted in his report that Jordan, and therefore, Menzies, used the belt loader for an unintended purpose. CSOF ¶ 64.

Unfortunately, the damage event followed a pattern of incidents in which Menzies allowed untrained employees to work near Frontier aircraft. In the months leading up to the incident, Frontier had to instruct Menzies repeatedly not to permit untrained employees near Frontier aircraft. CSOF ¶¶ 65–66. In fact, Frontier specifically instructed *Jordan himself*, as well as his supervisor, not to have Jordan work near Frontier aircraft because he was not properly trained. CSOF ¶¶ 65–66. Then, about a week before the incident, a Frontier manager warned Menzies about untrained employees, stating, "I am concerned someone or an aircraft will get damaged." CSOF ¶ 67. That warning, unheeded, turned out to be prescient.

As a result of the damage to the aircraft, Frontier suffered at least the three categories of damages, summarized above: (1) flight-operations costs; (2) repair costs; and (3) lease-penalty costs. Only the third category is at issue in Menzies's motion. In short, Frontier

leased the aircraft at issue from a lessor, and the aircraft was due to be returned to that lessor on June 21, 2018. SOF ¶ 24. Per the return requirements of the lease contract, Frontier had to repair the damage and was thus delayed in returning that aircraft to the lessor. CSOF ¶ 68. As a result, Frontier incurred monetary penalties for the late return, as defined in the lease contract. CSOF ¶ 69. Importantly, Menzies does not argue that Frontier lacks evidence of its lease-penalty damages, only that Frontier may not pursue them under the terms of the parties' contract. For the reasons discussed below, that argument, like Menzies's other arguments, fails as a matter of law.

### III. <u>LEGAL STANDARD</u>

"The Court may only grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, determines that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Sanchez v. Arpaio*, No. CV-09-1150-PHX-LOA, 2010 WL 3938353, at *3 (D. Ariz. Oct. 5, 2010) (citations and internal quotation marks omitted).

Notably, although both parties cite record evidence in support of their arguments, Frontier contends that Menzies's motion can be resolved in Frontier's favor as a matter of *legal* principles governing contract interpretation or the boundaries of the ELR. This is particularly true because both parties agree that they have a valid contract and that the contract comprises the two documents from which Menzies's Exhibits A and B are excerpted. In Frontier's view, Menzies's arguments simply rest on a legally untenable misreading of that contract, which the Court can reject as a matter of law given the contract's terms, read consistently with the cannons of contract interpretation. *See Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992) ("The proper construction of any contract . . . is purely a question of law.").

### IV. <u>ARGUMENT</u>

#### A. **Frontier may recover its lease-penalty damages.**

Of the three categories of damages Frontier seeks, Menzies moves to preclude only one of them: Frontier's lease-penalty damages. According to Menzies, those constitute

"consequential" damages that the parties waived in their contract. Menzies's argument fails, however, because it ignores the central indemnity provision of the parties' contract, which plainly requires Menzies to cover Frontier's lease-penalty damages regardless of how those damages are categorized. Thus, whether Frontier's lease-penalty damages constitute "consequential" damages is irrelevant. Whatever the category, Menzies's indemnity obligations are broad enough to include those damages.

Tellingly, in the eight pages Menzies devotes to excluding Frontier's lease-penalty damages, it never once mentions the central contract provision that defines Menzies's indemnity obligations. That provision is Paragraph 4.1, and it expressly, without exception, requires Menzies to indemnify Frontier against *all* losses resulting from Menzies performing its contractual services, including those resulting from Menzies damaging Frontier's property. By its plain text, Paragraph 4.1 requires Menzies to indemnify Frontier against "*any and all* claims, damages, losses, fines, civil penalties, liabilities, judgments, costs and expenses . . . of *any kind or nature whatsoever* . . . which *in any way* arise out of or result from" Menzies performing its services. Ex. A ¶ 4.1 (emphasis added). That language could not be broader. Far from limiting Menzies's indemnity obligations to particular categories of damages, the provision extends Menzies's indemnity obligations to any damages causally connected to Menzies's performance of its contractual services. Menzies does not even attempt to argue otherwise.

Menzies simply ignores Paragraph 4.1 and instead focuses exclusively on Paragraph 4.3, which contains a limited waiver of certain types of damages including consequential damages. Menzies treats that provision as dispositive even though the provision's terms only waive the types of damages listed "unless specifically permitted by this agreement." Ex. A ¶ 4.3 (all-caps omitted). Paragraph 4.3 thus expressly yields to other contract provisions that might specifically permit the types of damages listed in Paragraph 4.3. Stated differently, if another paragraph permits the damages, then Paragraph 4.3 does not preclude them. Here, Paragraph 4.1 plainly and specifically permits Frontier's lease-penalty damages, which renders Paragraph 4.3's waiver inapposite as applied to the lease-

penalty damages sought here.

Menzies's theory that Paragraph 4.3 is the dispositive paragraph not only ignores the plain language of the contract, it violates one of the "fundamental rules of contract construction," that "a court must construe the agreement as a whole, giving effect to all provisions therein." *E.I. du Pont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108, 1113 (Del. 1985); *see also Sonitrol Holding Co. v. Marceau Investissements*, 607 A.2d 1177, 1183 (Del. 1992) ("Under general principles of contract law, a contract should be interpreted in such a way as to not render any of its provisions illusory or meaningless."). Menzies's theory reads the broad language in Paragraph 4.1 completely out of the contract and implies that, when the contract requires Menzies to indemnify Frontier against damages of "any kind or nature whatsoever," it does not really mean what it says. In essence, Menzies's theory renders Paragraph 4.1's language ineffectual or illusory.

Frontier's theory, by contrast, gives effect to both Paragraphs 4.1 and 4.3. It is important to remember that, although broad, Menzies's indemnity obligations in Paragraph 4.1 are ultimately limited to those losses resulting from Menzies's "performance or non-performance of services under this Annex B." Ex. A ¶ 4.1. Those "services" are the contractual duties listed in Paragraph 1 of the parties' contract, which were selected from the menu of services in the SGHA. *See* Ex. A ¶ 1.1 (providing that Menzies "shall provide the following services of Annex A"); *see also* Ex. A ¶ 2.1 (Frontier may request additional services). Although Menzies's services are, of course, central to the parties' contract, they are not the *only* obligations in the contract. For example, other obligations include: Frontier's payment obligations (¶ 1.2); Menzies's obligation to get pre-approval for disbursements made for Frontier (¶ 3.1); Menzies's obligation to insure itself and Frontier (¶ 5.1); and Menzies's obligation to keep certain information confidential (¶ 16.2). These are just examples; Annex B comprises 18 paragraphs plus subparagraphs, many of which describe obligations *other* than Menzies's services, which likely would not be subject to Paragraph 4.1's indemnity obligations. Accordingly, if either party alleged damages resulting from the breach of one of those non-services provisions, then Paragraph 4.3's

damages waiver likely would apply. Frontier's reading is thus not only consistent with the contract's plain language, it is the *only* reading that harmonizes Paragraphs 4.1 and 4.3. *See GRT, Inc. v. Marathon GTF Tech., Ltd.*, No. CIV.A 5571-CS, 2012 WL 2356489, at *6 (Del. Ch. June 21, 2012) ("Delaware law requires that this court attempt to give effect to the plain terms of all provisions of a contract, and to give them a harmonious reading.").

In light of Paragraph 4.1's plain language, the rest of Menzies's arguments about how to categorize Frontier's lease-penalty damages become inapposite. Although Frontier disputes Menzies's categorizations,[2] it does not matter whether the lease-penalty damages are properly labeled "consequential" or "direct" (or anything else). Whatever the label, the contract permits Frontier to recover the damages. Regardless of whether Paragraph 4.1 uses the words "consequential damages," the "provision states that it covers 'any and all . . . damage,' and 'any and all' means ***any and all***," which includes consequential damages. *BP Prod. N. Am. Inc. v. J.V. Indus. Companies, LTD.*, No. CIVA H-07-2369, 2010 WL 1610114, at *5 (S.D. Tex. Apr. 21, 2010) (emphasis in original); *see also Federated Mut. Ins. Co. v. Concrete Units, Inc.*, 363 N.W.2d 751, 757 (Minn. 1985) (requirement that insurer "pay all damages which are causally related to an item of 'property damage'" implied coverage for consequential damages). Menzies's eight pages on the topic of consequential damages are thus beside the point. Even if Menzies prevailed in its categorization, it would not change the fact that the parties' contract requires Menzies to cover Frontier's lease-penalty damages because they resulted from Menzies performing its contractual services. Therefore, such damages are covered under Paragraph 4.1.

---

[2] For example, Menzies attempts to categorize Frontier's lease-penalty damages as "consequential" by analogizing them to lost-profits or loss-of-use damages. Doc. 71 at 17. But Frontier does not claim lost-profits damages, and the lease-penalty costs that Frontier incurred only relate to profits in the sense that *any* cost is a "component of its profits." Doc. 71 at 17. By Menzies's logic, *all* of Frontier's damages would be excludable as "lost profits" because they all represent costs that Frontier incurred. But even Menzies does not take that extreme position. *See* Doc. 17 at 8 (acknowledging that Frontier may seek its other costs). Similarly, Frontier's lease-penalty damages are not loss-of-use damages. The penalties do not represent the cost of replacing the damaged aircraft by leasing another aircraft (which is the type of cost Menzies's cases discuss) but rather a monetary penalty that Frontier must pay to the aircraft's lessor regardless of any replacement aircraft.

**B.     Frontier may recover its attorneys' fees.**

Menzies's motion to preclude Frontier from recovering its attorneys' fees should similarly fail because the parties' contract expressly includes a fee-recovery provision. Again, the relevant provision is Paragraph 4.1, which provides that Menzies's indemnity obligations include covering Frontier's "court costs and attorney's fees" resulting from Menzies damaging Frontier's property. Ex. A ¶ 4.1. Given this provision, whether A.R.S. § 12-341.01 applies becomes irrelevant (or at best secondary); the parties' contract itself shifts Frontier's attorneys' fees to Menzies as part of Menzies's indemnity obligations. And even under Delaware law, "[a] fee-shifting provision in an enforceable contract provides a clear exception to the default American Rule." *Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*, No. CV 2017-0887-SG, 2020 WL 4596838, at *4 (Del. Ch. Aug. 11, 2020), *aff'd*, No. 354, 2020, 2021 WL 4165159 (Del. Sept. 13, 2021).

Menzies attempts to avoid the fee-recovery provision by arguing that the provision does not apply to first-party claims—i.e., Frontier's claims against Menzies. Doc. 71 at 20. But the contract language vitiates this argument too. Whatever presumption Delaware law might apply to fee-recovery indemnity provisions, the law clearly permits fee recovery in first-party indemnity cases if the parties' contract provides for it. "There is no specific language that must be used in order for an indemnity provision to provide for [fee] recovery in first-party actions," the contract simply "must specifically state that requirement." *Deere & Co. v. Exelon Generation Acquisitions, LLC*, No. CVN13C07330MMJCCLD, 2016 WL 6879525, at *1–2 (Del. Super. Ct. Nov. 22, 2016). Here, the contract states just that. The indemnity obligations in Paragraph 4.1, including its fee-recovery provision, expressly apply where Menzies's actions result in "damage or destruction of property, *including the property of [Frontier]*, [Menzies] and third persons." Ex. A ¶ 4.1 (emphasis added).[3]

---

[3] Paragraph 4.2 reinforces Menzies's first-party indemnity obligations. That paragraph requires Menzies to indemnify Frontier against "any loss, cost, or damage resulting from flight delays or cancellations caused by the performance or nonperformance of services under this Annex B." Ex. A ¶ 4.2. Frontier (the airline) would obviously suffer the losses resulting from delays and cancellations caused by Menzies' performance or non-performance of services for Frontier, which makes Paragraph 4.2 another first-party indemnity scenario.

Menzies damaging Frontier's property is plainly a first-party claim scenario, and the parties' contract unambiguously requires Menzies to cover Frontier's attorneys' fees in that scenario in addition to third-party scenarios. None of the cases on which Menzies relies involved contracts that contained similar first-party language.

Moreover, Menzies's itself acknowledges its indemnity obligations extend to first-party claims. That is, in fact, the premise of Menzies's ELR argument. All of Frontier's damages stem from Menzies damaging Frontier's aircraft, yet Menzies only seeks to exclude one subset of those damages, the lease-penalty damages. Menzies acknowledges that Frontier may pursue its other categories of damages. *See* Doc. 71 at 8 (arguing "the damages recoverable by Frontier in this action must be limited to the cost of repairing the subject aircraft . . . and the short-term flight operations costs Frontier incurred as a result of the damage"). In other words, Menzies acknowledges that its indemnity obligations in Paragraph 4.1 cover at least *some* of Frontier's first-party damage claims. Menzies cannot acknowledge that Paragraph 4.1 contemplates some first-party indemnity and yet seek to preclude the first-party fee-recovery contemplated in the very same paragraph.

**C.    The economic loss rule does not bar Frontier's negligence claim.**

Finally, Menzies argues that, because the parties have a contract with one another, the ELR bars Frontier's negligence claim. This argument fails for at least two reasons. First, the ELR does not apply where, as here, a party damages property that is not itself the subject of the contract at issue. Second, the ELR does not apply where, as here, a party breaches a duty independent of the contract at issue. Either reason is sufficient to reject Menzies's argument.

**1.    Menzies damaged extra-contractual property.**

"An actor whose negligence causes . . . physical harm to the property of another can be held liable in tort regardless of whether the negligence occurs in the performance of a contract between the parties." Restatement (Third) of Torts: Liab. for Econ. Harm § 3 cmt.

- 11 -

b (2020).[4] Such physical harm to property is not the purely "economic loss" with which the ELR is concerned. Accordingly, as applied in Arizona, the ELR "does not bar tort recovery when economic loss is accompanied by physical injury to persons or other property," meaning property that is not "itself the subject of a contract between the plaintiff and defendant." *Flagstaff Affordable Hous. Ltd. P'ship v. Design All., Inc.*, 223 P.3d 664, 667, 671 (Ariz. 2010) (citations omitted).

Confining the ELR in this way preserves the distinct purposes underlying contract and tort law. "An action in contract . . . involves a duty arising out of the parties' agreement. Tort obligations, on the other hand, are imposed by law on the basis of policy considerations, and are independent of promises made between or manifested by parties." *KD & KD Enterprises, LLC v. Touch Automation, LLC*, No. CV-06-2083-PHX-FJM, 2006 WL 3808257, at *2 (D. Ariz. Dec. 27, 2006) (citation omitted). Where property damage is at issue, allowing recovery in tort furthers the goal of tort law to "protect the public from harm to person or property." *In re Banner Health Data Breach Litig.*, No. CV-16-02696-PHX-SRB, 2017 WL 6763548, at *8 (D. Ariz. Dec. 20, 2017). "A broad application of the economic loss rule to preclude all tort claims," as Menzies attempts here, thus "fails to recognize that both contract and [tort] can arise out of commercial transactions, and that each serves a complementary, albeit distinct, purpose." *KD & KD Enterprises*, 2006 WL 3808257, at *2.

Because this case involves physical injury to other property—the aircraft—it falls outside of the ELR's ambit even though the parties also have a contract with one another. Contrary to Menzies's representation, the aircraft constitutes "other property" because it was *not* the "bargained-for item" in the parties' contract. Doc. 71 at 23. The parties' contract is not about the aircraft; rather, it is a contract for Menzies's ground handling *services*. Menzies not only has a contractual duty to perform those services for Frontier, it

---

[4] Both the Arizona Supreme Court and Arizona Court of Appeals have favorably cited the Restatement (Third) of Torts: Liab. for Econ. Harm (then in draft form) on the topic of the ELR. *See Sullivan v. Pulte Home Corp.*, 306 P.3d 1, 2 (Ariz. 2013); *Sullivan v. Pulte Home Corp.*, 354 P.3d 424, 429 (Ariz. Ct. App. 2015).

- 12 -

also has an independent tort duty to exercise reasonable care in the operation of equipment so as not to damage others' property. *See* Section IV(C)(2). While Menzies's contractual duties are owed to Frontier, Menzies's tort duties are owed to the public more generally. This distinction is particularly important here where Frontier is not the only entity with a property interest in the aircraft at issue, which was owned by a third-party lessor. Moreover, Menzies's negligent operation of machinery could have damaged *another* entity's property at the airport. Allowing a tort remedy against Menzies thus preserves the goal of tort law to incentivize parties like Menzies to exercise reasonable care so as not to damage others' property.

Because this case involves damage to property that is not itself the subject of the parties' contract, the ELR cases on which Menzies relies offer little support for Menzies's argument as applied here. Those cases either (a) permitted a party to proceed in tort despite the existence of a contract, which is what Frontier seeks to do, *see Salt River Project Agr. Imp. & Power Dist. v. Westinghouse Elec. Corp.*, 694 P.2d 198, 211 (Ariz. 1984); or (b) dealt with claims about property that was itself the central subject of the parties' contract, *see Flagstaff Affordable Hous.*, 223 P.3d at 665 (claim against architect for negligent design of apartments that were subject of contract); or (c) did not involve claims that the defendant damaged property, *see Cook v. Orkin Exterminating Co.*, 258 P.3d 149, 152 (Ariz. Ct. App. 2011) (claim for failure to perform services satisfactorily under a contract to treat pre-existing termite damage) and *Evans v. Singer*, 518 F. Supp. 2d 1134, 1136 (D. Ariz. 2007) (claim against realtor for negligent performance of real-estate services). In short, Menzies's cases are either favorable to Frontier or materially different from this case.

### 2. Menzies violated an independent tort duty.

Relatedly, the ELR does not bar Frontier's negligence claim because that claim arises from Menzies's breach of an independent tort duty. Regardless of any contract with Frontier, Menzies had an independent duty to exercise reasonable care in the operation of equipment. *See Alires v. S. Pac. Co.*, 378 P.2d 913, 921 (Ariz. 1963) (negligence liability arises from "the failure to act as a reasonable and prudent person would act in like

circumstances"); *Rudolph v. Arizona B.A.S.S. Fed'n*, 898 P.2d 1000, 1003 (Ariz. Ct. App. 1995) (for example, drivers owe a general duty to others to "drive carefully so as not to subject [others] to unreasonable risks of harm"). And the ELR does not bar "tort claims . . . premised upon independent duties existing apart from the contract." *Sports Imaging of Arizona, L.L.C. v.1993 CKC Tr.*, No. 1 CA-CV 05-0205, 2008 WL 4448063, at *20–21 (Ariz. Ct. App. Sept. 30, 2008) (collecting cases).

Menzies's actions here present a paradigm case of negligence. A Menzies employee with no training in operating a belt loader got behind the wheel, failed to operate that belt loader properly or safely, and as a result caused substantial damage to an aircraft. Just like someone driving a car may be held liable in negligence for failing to drive the car safely, so too may Menzies be held liable for failing to operate the belt loader safely. In this case, Menzies's negligence harmed a plaintiff with whom Menzies happened to have a service contract. But that does not obviate Menzies's independent tort duty to exercise reasonable care in operating a belt loader. Accordingly, Frontier should be permitted to pursue its tort remedies against Menzies, in addition to any contractual remedies.

\* \* \*

Because the ELR does not bar Frontier's negligence claim, Frontier may recover any available tort damages, which include consequential damages. *See Rawlings v. Apodaca*, 726 P.2d 565, 577 (Ariz. 1986) (tort damages include "all the losses caused by defendant's conduct, including . . . pecuniary losses"); *Standard Chartered PLC v. Price Waterhouse*, 945 P.2d 317, 343 (Ariz. Ct. App. 1996), *as corrected on denial of reconsideration* (Jan. 13, 1997) ("tort damages comprehend all damages" that the tort was a "substantial factor" in causing). Thus, despite Frontier being able to recover its lease-penalty damages under the parties' contract, Frontier may still recover those damages in tort. Menzies argues that Paragraph 4.3's damages waiver applies to Frontier's negligence claim too. Doc. 71 at 11. That paragraph does not apply here for the reasons discussed earlier. But even if it did, its terms only purport to limit the parties' damages "arising from any provision of this agreement." Ex. A ¶ 4.3 (all-caps omitted). Frontier's tort damages do not arise from a

provision of the parties' contract but rather from common law, so Paragraph 4.3's waiver does not apply to those damages. Most of the cases on which Menzies relies did not even involve damages-limitation clauses,[5] and the few that did involved clauses much broader than the one at issue here,[6] which only purports to limit damages arising from a provision of the parties' contract and only if not "specifically permitted" by the contract.

## V.     CONCLUSION

In sum, the parties' contract specifically permits Frontier to recover its lease-penalty damages and attorneys' fees, both of which Frontier may pursue via its contract claim. Additionally, the ELR does not bar Frontier's negligence claim, which is based on Menzies's damage to extra-contractual property resulting from a violation of Menzies's independent tort duties. Accordingly, the Court should deny Menzies's motion for summary judgment in full.

---

[5] Several of Menzies's cases dealt instead with the breadth of choice-of-law clauses, some of which were construed broadly enough to dictate the law governing tort claims between the parties. *See VGS, Inc. v. Castiel*, No. C.A. 17995, 2003 WL 723285, at *7 n.29 (Del. Ch. Feb. 28, 2003); *Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 310 (2d Cir. 1994). Others were construed not to dictate the law governing tort claims. *See Gloucester Holding Corp. v. U.S. Tape & Sticky Prod.*, LLC, 832 A.2d 116, 124 (Del. Ch. 2003). If Menzies's point is that the parties' Delaware choice-of-law clause governs Frontier's negligence claim too, then that would actually *defeat* Menzies's ELR argument, for which Menzies relies exclusively on cases applying Arizona law. Doc. 71 at 21.

[6] *See Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 328 (1st Cir. 2008) (expressly limiting damages for negligence); *Gates Rubber Co. v. USM Corp.*, 508 F.2d 603, 617 (7th Cir. 1975) (limiting consequential damages "owing to failure of machinery or equipment"); *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 276 (4th Cir. 1987) (precluding "any claim for consequential or special damages . . . made by either party"); *Colonial Bancgroup Inc. v. PricewaterhouseCoopers LLP*, No. 2:11-CV-746-BJR, 2016 WL 9686250, at *2 (M.D. Ala. Aug. 25, 2016) (precluding "[a]ny liability" of one contracting party for "any special, consequential, incidental, punitive, or exemplary damages").

DATED this 15th day of November, 2021.

                                              SNELL & WILMER L.L.P.

By: *s/Matt Jarvey*
     Adam E. Lang
     Matt Jarvey
     One Arizona Center
     400 E. Van Buren, Suite 1900
     Phoenix, Arizona 85004-2202

*Attorneys for Plaintiff Frontier Airlines, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record in this matter.

 *s/Kathy Sprinkle*
4845-6346-2141