

Adam E. Lang (#022545)
Matt Jarvey (#031350)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: alang@swlaw.com
        mjarvey@swlaw.com
*Attorneys for Plaintiff Frontier Airlines, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Frontier Airlines, Inc., | No. 2:20-cv-01432-ESW |
| Plaintiff, | **PLAINTIFF'S CONTROVERTING STATEMENT OF FACTS** |
| v. | |
| Menzies Aviation (USA), Inc., | |
| Defendant. | |

Pursuant to LRCiv 56.1(b), Plaintiff Frontier Airlines, Inc. ("Frontier") submits the following Controverting Statement of Facts, in response to Defendant Menzies Aviation (USA), Inc.'s ("Menzies's") Statement of Facts ("SOF") in support of its motion for summary judgment.  Doc. 66.

As an initial matter, although Frontier disputes some of Menzies's purported statements of fact, Frontier contends that Menzies's motion for summary judgment can be resolved in Frontier's favor as a matter of law, based on the language in the parties' contract. Thus, in Frontier's view, the disputes over Menzies's SOF are not material in adjudicating Menzies's motion.  In any event, Frontier responds to the particular statements in Menzies's SOF as set forth below.

**<u>Response to Menzies's Statement of Facts</u>**

1.      Frontier does not dispute SOF ¶ 1.

2.      Frontier does not dispute SOF ¶ 2, except to the extent that it suggests that the parties' contract only consisted of Exhibit A to Menzies's SOF.  For clarity, the parties' contract consisted of both documents from which Menzies's Exhibits A and B are excerpted.  *See* Ex. A at 1 (the parties' Annex B contract incorporates the SGHA agreement, from which Exhibit B is excerpted); *see also* Ex. A ¶ 18.2 (to the extent the Annex B contract is inconsistent with the SGHA, the Annex B contract governs).[1]

3.      Frontier does not dispute SOF ¶ 3.

4.      Frontier disputes SOF ¶ 4 to the extent SOF ¶ 4 provides that the parties' contract "fully addresses Menzies' obligations with regard to damages arising from Menzies' performance of services."  The parties' contract does address Menzies's indemnity obligations to Frontier in Paragraphs 4.1 and 4.2, which include Menzies's obligation to indemnity, defend, and hold harmless Frontier for damages that result from Menzies performing its services. Ex. A ¶ 4.1.  But the contract itself did not "fully" address Menzies's obligations because Menzies owed tort-based duties to exercise reasonable care that existed independent of the parties' contract, as set forth in Section IV(C) of Frontier's response to Menzies's motion.

5.      Frontier does not dispute SOF ¶ 5.

6.      Frontier does not dispute SOF ¶ 6.

7.      Frontier does not dispute SOF ¶ 7.

8.      Frontier does not dispute SOF ¶ 8 but, for clarity, Frontier notes that its Ground Services Manual does not purport to address every aspect of how to conduct ground handling services, nor do the excerpted sections in Menzies's Exhibit C purport to address every aspect of how to conduct the services described in those sections.

9.      Frontier does not dispute SOF ¶ 9.

---

[1] Citations to lettered exhibits refer to those exhibits (both sealed and unsealed) appended to Menzies's SOF.  Citations to numbered exhibits refer to those exhibits appended to Frontier's controverting statement of facts.

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

4848-7685-5293

10. Frontier does not dispute SOF ¶ 10.

11. Frontier does not dispute SOF ¶ 11.

12. Frontier does not dispute SOF ¶ 12, except to clarify that at the time of the incident in 2018, Frontier only had one gate available to it "on a full-time basis" but it could occasionally use another airline's gate as well. Ex. D at 26:19–27:14.

13. Frontier does not dispute SOF ¶ 13.

14. Frontier does not dispute SOF ¶ 14.

15. Frontier disputes SOF ¶ 15 in that it does not accurately reflect the testimony cited. In coordinating a brake ride, Frontier would typically contact Menzies (not the other way around, as SOF ¶ 15 suggests) before towing an aircraft. Ex. D at 30:8–31:14. Frontier does not consider this dispute material to Menzies's motion, however.

16. Frontier disputes SOF ¶ 16 in that it does not accurately reflect the testimony cited. The testimony cited in SOF ¶ 16 provides that a Frontier lead mechanic typically instructed Elias Sanchez ("Mr. Sanchez"), a Frontier A&P mechanic, when he needed to perform a brake ride, not that this is what occurred on the date of the incident at issue. In any event, Frontier does not dispute that Mr. Sanchez was tasked with performing a brake ride prior to the damage event at issue, and that Mr. Sanchez witnesses the damage event while on his way toward the aircraft to perform a brake ride.

17. Frontier disputes SOF ¶ 17 in that it does not accurately reflect the testimony cited. The testimony cited is about the deponent's experience in the military with F15 fighter jets, not about brake riding a commercial aircraft while working for Frontier. Frontier does not consider his dispute material to Menzies's motion, however.

18. Frontier does not dispute SOF ¶ 18, except to clarify that Mr. Sanchez testified that belt loaders were used to allow mechanics into aircraft for brake riding "at the time of the incident." Ex. D at 33:11–14.

19. Frontier disputes SOF ¶ 19 to the extent it states that "Frontier's lead mechanics and station manager were well aware of the use of belt loaders as a mechanism for gaining access to aircraft." Menzies's record citations do not substantiate that

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

proposition, and to the extent Menzies relies on Mr. Sanchez's testimony about what his station manager knew, the proposition rests on inadmissible speculation. Frontier does not consider this dispute material to Menzies's motion, however.

20. Frontier does not dispute SOF ¶ 20.

21. Frontier does not dispute SOF ¶ 21.

22. Frontier does not dispute SOF ¶ 22.

23. Frontier does not dispute SOF ¶ 23, but simply clarifies that, as of 2018, SMBC was, in effect, the lessor of the aircraft and the entity to which Frontier directed lease payments (including lease-penalty payments), although the aircraft lease technically defined Wells Fargo Bank Northwest, National Association, as trustee under a trust agreement with the beneficial owner, as the lessor. *See* Ex. F, cover page. This is a product of complicated leasing structures in the area of aircraft leasing, which are not material to the issues in Menzies's motion.

24. Frontier does not dispute SOF ¶ 24.

25. Frontier does not dispute SOF ¶ 25.

26. Frontier does not dispute SOF ¶ 26.

27. Frontier disputes SOF ¶ 27 in that the testimony cited provides that C-checks *did* need to be conducted at the end of aircraft leases (the testimony cited provides nothing about the beginning of aircraft leases). Frontier does not consider this dispute material to Menzies's motion, however.

28. Frontier disputes SOF ¶ 28 in that the testimony cited does not establish the propositions stated in SOF ¶ 28. The testimony cited is a general description about how heavy maintenance on an aircraft differs from overnight maintenance. It does not speak to lease terms or typical lease-end tasks. Frontier does not consider this dispute material to Menzies's motion, however.

29. Frontier does not dispute SOF ¶ 29.

30. Frontier does not dispute SOF ¶ 30 as a general description about how Frontier generally approaches lease-returns with an aircraft lessor. Frontier notes that the

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

record citations in SOF ¶ 30 do not purport to describe the exact process by which the lease return for the aircraft at issue was conducted.

31.     Frontier does not dispute SOF ¶ 31.

32.     Frontier does not dispute SOF ¶ 32.

33.     Frontier disputes SOF ¶ 33 in that Menzies's record citation does not establish either: (a) that anything was to occur within the specific timeframe "[b]etween May 1 and June 21, 2018"; or (b) anything about the existence or remedying of purported "hidden damage."  Frontier does not consider this dispute material to Menzies's motion, however.

34.     Frontier does not dispute SOF ¶ 34 but notes that Menzies's record citation merely describes general observations about C-check maintenance, not particular observations about the aircraft at issue in this case.

35.     Frontier does not dispute SOF ¶ 35.

36.     Frontier disputes SOF ¶ 36 in that Menzies's record citations do *not* provide that Frontier's lease at issue was "unique"—in fact, the testimony cited was that "it wasn't unique"—nor do the record citations provide that "Frontier was required to perform maintenance of more parts of the aircraft than the average lease would require."  Frontier does not consider this dispute material to Menzies's motion, however.

37.     Frontier does not dispute SOF ¶ 37, but notes for clarity that the aircraft at issue was originally scheduled to be taken out of service at a time that Frontier anticipated would allow Frontier to complete the lease-return tasks in enough time to return the aircraft at the scheduled return date in late June 2018. Ex. E at 47:21–48:17.

38.     Frontier does not dispute SOF ¶ 38 to the extent it represents what Frontier's original lease-return timeline was before Menzies damaged Frontier's aircraft.

39.     Frontier disputes SOF ¶ 39.  First, the statement in SOF ¶ 39 is inadmissible speculation because it is a statement about what might occur in the hypothetical world in which Frontier's lease-return work took longer than 52 days to perform.  Second, even in that hypothetical world, the testimony cited does not suggest that the lease penalties Frontier might incur would be incurred "regardless of any additional damage allegedly caused by

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

Menzies." To the extent that Menzies's caused damage requiring repairs, to the extent those repairs caused additional delay in returning the aircraft, that additional delay would affect the lase-return penalties Frontier might incur. *See* Ex. F § 12.3 (providing for stepped-up penalties the longer the return delay). Frontier does not consider this dispute material to Menzies's motion, however.

40. Frontier does not dispute SOF ¶ 40.

41. Frontier does not dispute SOF ¶ 41.

42. Frontier does not dispute SOF ¶ 42.

43. Frontier does not dispute SOF ¶ 43.

44. Frontier does not dispute SOF ¶ 44.

45. Frontier disputes SOF ¶ 45. The testimony cited indicates that the C-check and lease-return work for the aircraft at issue were completed within a "window" that was "in the neighborhood of 120 days"—not that the C-check and lease-return work themselves took 120 days to complete, as Menzies implies. Ex. E at 47:5–16. Because Menzies damaged the aircraft, repairing that damage required Frontier to pause routine maintenance work for a period while portions of the repair work were being performed. Ex. E at 60:15–19. Aside from having to repair the damage that Menzies caused, the rest of the C-check and lease-return work were "normal," and that work was scheduled to have been completed in June 2018, which is when the aircraft was supposed to have been returned to the lessor. Ex. E at 63:13–18. Frontier does not consider this dispute material to Menzies's motion, however.

46. Frontier does not dispute SOF ¶ 46, but Frontier notes that Menzies submits no evidence that "less extensive repair[s]" were possible or available.

47. Frontier does not dispute SOF ¶ 47.

48. Frontier does not dispute SOF ¶ 48, except to clarify that the testimony cited indicates that Frontier negotiated *down* certain late-return penalty fees with SMBC.

49. Frontier does not dispute SOF ¶ 49 to the extent Menzies represents that representatives of the aircraft's lessor were on site in Tampa during the repair process.

4848-7685-5293

50.     Frontier does not dispute SOF ¶ 50 to the extent it provides that the aircraft was returned to the lessor "around" September 8, 2018, but the testimony cited does not establish when the aircraft was returned.  In fact, the aircraft was returned to the lessor on September 11, 2018.

51.     Frontier disputes SOF ¶ 51 only to the extent it provides, "At no point was the lease discussed with Menzies."  The testimony cited merely provides that, as far as the deponent was aware, Frontier does not "normally" communicate with Menzies or other contractors about the terms of leases or lease end dates.  Frontier does not consider this dispute material to Menzies's motion, however.

52.     Frontier does not dispute SOF ¶ 52.

53.     Frontier does not dispute SOF ¶ 53.

## Frontier's Statement of Additional Facts

54.     The SGHA expressly contemplates that parties will execute their own "Annex B" contract, which will contain the particular terms agreed upon between the parties.  *See* Ex. 1 at FRONTIER 000002 ("The agreement consists of: MAIN AGREEMENT . . . ANNEX A . . . ANNEX(ES) B (location(s), agreed services and charges)"); *id* at FRONTIER 000013–39 (Annex A, listing a menu of ground handling services); *id.* at FRONTIER 000040–53 (Annex B, to be completed by the parties).

55.     Effective January 1, 2018, Frontier and Menzies entered into their own Annex B contract, which both incorporated and modified the terms of the SGHA, and which governed Menzies's provision of ground handling services for Frontier at Phoenix Sky Harbor.  *See* Ex. A at 1 (effective January 1, 2018); Ex. A ¶ 4.1 (example of modification of SGHA).

56.     On April 1, 2018, a Menzies employee, Shantell Jordan ("Jordan"), ran a belt loader into the side of a Frontier aircraft while the aircraft was parked on the tarmac, thereby damaging the aircraft.  Ex. 2.

57.     Jordan's supervisor (another Menzies employee) had asked Jordan to drive the belt loader up to the aircraft to allow a mechanic to board the aircraft (by walking up

the mechanical belt) so it could be towed to a gate.  Ex. 2 at FRONTIER 000575 (Jordan noted that his supervisor, "Robert Lam[m]on came in and asked if one of us could help out by taking the belt loader to the plane.  I immediately jumped to volunteer."); *id.* at FRONTIER 000576 (Robert Lammon indicated that the "belt loader was being used to allow the Frontier mechanic to gain entry . . . for towing").

58.    Immediately after the incident, Jordan admitted in a written statement that he had "mistakenly pressed the gas for the brake" and by the time he tried to brake "it was to[o] late.  The end result was me hitting the plane."  Ex. 2 at FRONTIER 000575.

59.    Jordan's failure to safely operate the belt loader is unsurprising given that he had never been trained to operate a belt loader.  Ex. 3 at 44:12–46:23.

60.    Following the incident, another Menzies employee, David Yanez ("Yanez"), also admitted in a written report that Jordan had not been properly trained, was not properly "signed off" on the use of a belt loader, and thus, should not have been operating the belt loader at all.  Ex. 4.

61.    That contract required Menzies to abide by Frontier's Ground Services Manual ("GSM"), which is a manual that details various safety protocols for ground handling services.  Ex. A ¶ 14.2 (Menzies required to train employees per Frontier's policies); Ex. 5 at 105:2–20 (Menzies general manager acknowledging that Menzies was required to comply with GSM); Ex. C (excerpt from GSM).

62.    The GSM, in turn, required Menzies's employees, among other things, to be trained before operating equipment, to use a "guide person" to safely usher a belt loader up to an aircraft, to position a belt loader only at the aircraft's cargo doors—*never* the doors at the front of the aircraft—and never to use a belt loader as a means to board the aircraft.  Ex. 5 at 105:21–106:13; Ex. 6 § 40.10.1; Ex. C §§ 40.10.10, 40.10.11, 40.15.

63.    Menzies violated each of these protocols during the incident in question: not only was Jordan untrained, Menzies did not use a guide person and Jordan tried to position the belt loader near the aircraft's front right door, which is where he hit the aircraft, to allow

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

a person to board the aircraft.  Ex. 2; Ex. 3 at 44:12–46:23; Ex. 4; Ex. 5 at 105:21–106:13; Ex. 4 at FRONTIER 000580.

64.    Menzies employee Yanez further admitted in his report that Jordan used the belt loader for an unintended purpose.  Ex. 4 at FRONTIER 000580.

65.    In the months leading up to the incident, Frontier had to instruct Menzies repeatedly not to permit untrained employees near Frontier aircraft.  Ex. 7 ¶¶ 3–4.

66.    In fact, Frontier specifically instructed *Jordan himself*, as well as his supervisor, not to have Jordan work near Frontier aircraft because he was not properly trained.  Ex. 7 ¶¶ 3–4.

67.    Then, about a week before the incident, a Frontier manager warned Menzies about untrained employees, stating, "I am concerned someone or an aircraft will get damaged."  Ex. 8.

68.    Per the return requirements of the lease contract, Frontier had to repair the damage and was thus delayed in returning that aircraft to the lessor.  Ex. 9 §§ 8.12, 12, Schedule 3.

69.    As a result, Frontier incurred monetary penalties for the late return, as defined in the lease contract.  Ex. F § 12.3(a)(iii); Ex. G at 39:19–40:16.

DATED this 15th day of November 2021.

SNELL & WILMER L.L.P.

By:  *s/Matt Jarvey*
Adam E. Lang
Matt Jarvey
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202

*Attorneys for Plaintiff Frontier Airlines, Inc.*

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

4848-7685-5293

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on November 15, 2021, I electronically transmitted the attached

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to the CM/ECF registrants on record in this matter.

5

6

 *s/Kathy Sprinkle*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4848-7685-5293

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000