J. Gary Linder, Bar #020552
JONES, SKELTON & HOCHULI, P.L.C.
40 North Central Avenue, Suite 2700
Phoenix, AZ 85004
Telephone: (602) 263-1700
Fax: (602) 200-7883
glinder@jshfirm.com

*Attorney for Defendant*
*MENZIES AVIATION (USA) INC.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

---------------------------------------------------x

FRONTIER AIRLINES, INC.,

    *Plaintiff*,

- against -

MENZIES AVIATION (USA), INC.,

    *Defendant*.

---------------------------------------------------x

Case No. 2:20 CV 01432 (ESW)

**Reply Memorandum Of Law In Support Of Defendant Menzies Aviation (USA), Inc.'s Motion For Summary Judgment**

9971180.1

<a>

**TABLE OF CONTENTS**

ARGUMENT ............................................................................................................................. 1

    I.     Frontier's Reading of ¶ 4.3 Would Render the Second Part of the Provision Meaningless ................................................................................... 3

    II.    Frontier's Claims Do Not Arise from the Indemnity Clause ......................... 4

    III.   Frontier Relies on a Strained Interpretation of ¶¶ 4.1 and 4.3 of the Annex ......................................................................................................... 6

        A.     Frontier's Reading of ¶ 4 Is Not Supported By Delaware Case Law ................................................................................................ 6

        B.     Menzies' Reading Gives Full Weight to Both ¶¶ 4.1 and 4.3 ...................................................................................................... 8

    IV.   The Economic Loss Rule Bars Frontier's Tort Claim .................................. 9

CONCLUSION ........................................................................................................................ 11

i

9971180.1
</a>

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aircraft Repair Servs. v. Stambaugh's Air Serv., Inc.*,
   175 F.3d 314 (3d Cir. 1999) ....................................................................................... 1

*Alitalia v. Arrow Trucking Co.*,
   977 F. Supp. 973 (D. Ariz. 1997) ............................................................................... 2

*In re Banner Health Data Breach Litig.*,
   2017 WL 6763548 (D. Ariz. Dec. 20, 2017) ............................................................ 11

*BP Prod. N. Am. Inc. v. J.V. Indus. Companies, LTD.*,
   2010 WL 1610114 (S.D. Tex. Apr. 21, 2010) ............................................................ 7

*In re Bracket Holding Corp. Litig.*,
   2020 WL 764148 (Del. Super. Ct. Feb. 7, 2020) .................................................... 5, 6

*In re Castle Cheese, Inc.*,
   541 B.R. 586 (Bankr. W.D. Pa. 2015) ........................................................................ 3

*Cook v. Orkin Exterminating Co.*,
   258 P.3d 149 (Ariz. Ct. App. 2011) ......................................................................... 10

*Data Centers, LLC v. 1743 Holdings LLC*,
   2015 WL 9464503 (Del. Super. Ct. Oct. 27, 2015) ................................................ 5, 6

*Devincentis v. Eur. Performance, Inc.*,
   2012 WL 1646347 (Del. Super. Ct. Apr. 17, 2012) ................................................... 1

*Exelon Generation Co., LLC v. Tugboat DORIS HAMLIN*,
   2008 WL 2188333 (E.D. Pa. May 27, 2008) .............................................................. 6

*Federated Mut. Ins. Co. v. Concrete Units, Inc.*,
   363 N.W.2d 751 (Minn. 1985) .................................................................................. 7

*Flagstaff Affordable Hous. Ltd. P'ship v. Design All., Inc.*,
   223 Ariz. 320 (2010) ............................................................................................ 9, 10

*Grynberg v. Questar Pipeline Co.*,
   70 P.3d 1 (Utah 2003) .............................................................................................. 11

*Hildebrand v. Watts*,
   1997 WL 124150 (Del. Ch. Feb. 18, 1997) ............................................................... 6

*Hooper Assoc. v. AGS Computers*,
   74 N.Y.2d 487 (1989) ............................................................................................................ 6

*HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*,
   685 So. 2d 1238 (Fla. 1996) ........................................................................................ 10, 11

*KD & KD Enterprises, LLC v. Touch Automation, LLC*,
   2006 WL 3808257 (D. Ariz. Dec. 27, 2006) ...................................................................... 11

*Pharmaceutical Product Development, Inc. v. TVM Life*,
   2011 WL 549163 (Del. Ch. Feb. 10, 2011) ..................................................................... 2, 3

*Relax Ltd. v. ANIP Acquisition Co.*,
   2011 WL 2162915 (Del. Super. Ct. May 26, 2011) ........................................................ 1, 2

*Salt River Project Agric. Improvement and Power Dist. v. Westinghouse Elec. Corp.*,
   694 P.2d 198 (Ariz. 1984)..................................................................................................... 9

*Senior Hous. Capital, LLC v. Shp Senior Hous. Fund, LLC*,
   2013 WL 1955012 (Del. Ch. May 13, 2013) ....................................................................... 4

*SKF USA Inc. v. Okkerse*,
   992 F. Supp. 2d 432 (E.D. Pa. 2014) .................................................................................... 3

*Transched Sys. Ltd. v. Versyss Transit Sols., LLC*,
   2012 WL 1415466 (Del. Super. Mar. 29, 2012) ............................................................... 5, 6

*Turtur v. Rothschild Registry Int'l, Inc.*,
   26 F.3d 304 (2d Cir. 1994)..................................................................................................... 3

*Wiggs v. Summit Midstream Partners, LLC*,
   2013 WL 1286180 (Del. Ch. Mar. 28, 2013) ....................................................................... 6

*Wood v. Coastal States Gas Corp.*,
   401 A.2d 932 (Del. 1979) .................................................................................................. 7, 8

*World-Link, Inc. v. Citizens Telecom. Co.*,
   2000 WL 1877065 (S.D.N.Y. Dec. 26, 2000) ...................................................................... 3

**Statutes**

A.R.S. § 12-341.01 ........................................................................................................................ 5

**Other Authorities**

*Black's Law Dictionary* 784 (11th ed. 2019) ................................................................................ 4

Defendant Menzies Aviation (USA), Inc. ("Menzies") respectfully submits this Reply Memorandum of Law in further support of its motion for summary judgment.

## ARGUMENT

As an initial matter, Menzies notes that it has conceded neither its liability in this action, nor Frontier's ability to prove its damages at trial. Indeed, as discussed in Menzies' opening papers, the record demonstrates that the damage incident giving rise to this claim occurred at least in part due to the acts and omissions of Frontier personnel, including Frontier management. *See* Statement of Facts ("SOF"), ECF No. 66, ¶¶ 18, 19.

Additionally, it bears mention that Frontier's Opposition barely addresses the proper categorization of leasing fees as consequential damages. In a footnote, Frontier cursorily and incorrectly characterizes a single subpart of Menzies' opening brief which highlighted the fact that Delaware courts have repeatedly categorized damages "relat[ing] to . . . lost business or lost profits" as consequential damages (*see, e.g.*, *Relax Ltd. v. ANIP Acquisition Co.*, No. N10C-06-032 (JRS), 2011 WL 2162915, at *4 (Del. Super. Ct. May 26, 2011)), and that leasing costs (which generally represent loss of use of a vehicle) are also typically considered consequential in nature (*see, e.g.*, *Devincentis v. Eur. Performance, Inc.*, No. N10C-08-069 (MMJ), 2012 WL 1646347, at *5 (Del. Super. Ct. Apr. 17, 2012) (collecting cases)). Frontier's assertion that it is not seeking lost profit, lost revenue, or loss-of-use damages is unavailing. In *Iron Branch Assocs., LP v. Hartford Fire Ins. Co.*, the plaintiff did not expressly seek lost profits or lost income, but the damages that it did seek – reimbursement for loss of low-income tax credits – were not recoverable because they essentially acted as proxy for lost profits and lost income, both of which were expressly waived by contract. No. 21 Civ. 463 (MAK), 2021 WL 4129116 (D. Del. Sept. 9, 2021). Here, similarly, Frontier does not explicitly seek loss-of-use damages or lost profits/revenues, but its leasing costs are inextricably linked to its profits and revenues (which are expressly precluded by Paragraph 4.3 of Annex B (the "Annex") to the Standard Ground Handling Agreement ("SGHA")) and its loss of use of the subject aircraft (which

is consistently categorized as consequential damage (*see, e.g.*, *Aircraft Repair Servs. v.*

9971180.1

*Stambaugh's Air Serv., Inc.*, 175 F.3d 314, 321 (3d Cir. 1999))).

Frontier's lease-related costs are precluded not only because of their relationship to lost profits/revenues and loss of use of the damaged aircraft. As discussed extensively in Menzies' opening brief, the leasing fees that Frontier incurred from June through August of 2018 also were unforeseeable to Menzies at the time of contracting (*see, e.g.*, *Alitalia v. Arrow Trucking Co.*, 977 F. Supp. 973, 978 (D. Ariz. 1997) (granting summary judgment on issue of consequential damages in the form of leasing fees), and arose from several collateral agreements (*see, e.g.*, *Relax Ltd.*, 2011 WL 2162915, at *4 (losses arising from party's inability "to fulfill commitments under third party contracts" constitute consequential damages)). Frontier does not even attempt to refute the fact that its lease-related costs "do not flow directly and immediately from [an] act of [Menzies], but only . . . by reason of special circumstances or conditions." *Pharmaceutical Product Development, Inc. v. TVM Life,* No. 5688 (LES), 2011 WL 549163, at *6 (Del. Ch. Feb. 10, 2011) (internal quotation marks omitted). As such, it is largely undisputed that Frontier's leasing fees constitute consequential damages.

Regarding recoverability of its lease-related costs, Frontier's Opposition hinges entirely on (1) the inclusion of the phrase, "unless specifically permitted by this agreement," in the consequential damages waiver in ¶ 4.3 of the Annex, and (2) the inclusion of the phrase, "*any and all* claims, damages, [and] losses . . . which *in any way* arise out of or result from any act(s) . . . by the Handling Company," in the indemnity language in ¶ 4.1. *See* Ex. A to SOF (emphases added). Frontier thus urges this Court to apply this standard indemnity language in ¶ 4.1 – which applies to third-party claims – as a way to provide an exception to the waiver of consequential damages for first-party claims contained in ¶ 4.3. As discussed below, this interpretation of ¶¶ 4.1 and 4.3 is belied both by Delaware case law and a plain reading of the SGHA and Annex in context.

**I.     Frontier's Reading of ¶ 4.3 Would Render the Second Part of the Provision Meaningless.**

2

9971180.1

In order to read ¶ 4.3 as being both qualified by ¶ 4.1 and only applying to breach of contract claims,[1] as Frontier suggests, this Court would need to overlook the last part of the consequential damages waiver, which states unequivocally that "EACH PARTY HEREBY RELEASES AND WAIVES ANY CLAIMS AGAINST THE OTHER PARTY REGARDING SUCH [CONSEQUENTIAL] DAMAGES."

In *World-Link, Inc. v. Citizens Telecom. Co.*, the court examined a provision which stated that "[defendant]'s sole liability . . . for interruption of service or failure of equipment shall be limited to the amount of actual . . . charges incurred by [plaintiff] during a period of such interruption," and that "[i]n no event shall [defendant] be liable to [plaintiff] . . . for indirect, consequential or special damages." No. 99 Civ. 3054 (GEL), 2000 WL 1877065, at *1 (S.D.N.Y. Dec. 26, 2000). The plaintiff argued that the latter phrase was qualified by the former, such that the waiver of consequential damages applied only to claims stemming from interruption of service or failure of equipment. *Id.* The court disagreed, finding that "the language of the consequential damages prohibition itself is sweeping and absolute." *Id.* at *2. The court emphasized the fact that the waiver stated that "in *no* event" would the defendant be liable for consequential damages, thus "quite clearly provid[ing] that [defendant] shall not be liable for consequential damages for *any* type of breach." *Id.* (emphases in original). The court concluded that the plaintiff's reading of the paragraph would render the words "in no event" meaningless. Here, Frontier's reading of ¶ 4.3 would likewise render superfluous the phrase, "each party hereby releases

---

[1] With regard to application of ¶ 4.3 to tort claims, Frontier highlights the fact that ¶ 4.3 bars recovery of consequential damages for claims "arising out of any provision *of this agreement*" (emphasis added), while failing to meaningfully distinguish much of the pertinent case law cited by Menzies regarding the interpretation of such language. Specifically, courts have repeatedly held that contractual provisions containing the phrase "arising out of or relating to this agreement" may encompass tort claims, in the context of choice of law clauses and jury waivers. *See, e.g.*, *Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 310 (2d Cir. 1994) (provision covering all claims "arising out of or relating to" contract applied to tort claims); *SKF USA Inc. v. Okkerse*, 992 F. Supp. 2d 432, 448, n.8 (E.D. Pa. 2014) (collecting cases); *In re Castle Cheese, Inc.*, 541 B.R. 586, 599 (Bankr. W.D. Pa. 2015) (collecting cases). As such, ¶ 4.3 should be read as encompassing tort claims in addition to breach of contract claims.

9971180.1

and waives *any* claims against the other party regarding [consequential] damages" (emphasis added).

It is also worth noting that here, as in *Rob-Win, Inc. v. Lydia Sec. Monitoring, Inc.*, the waiver in ¶ 4.3 is printed in capitalized letters and set apart from the rest of Paragraph 4, thus strongly suggesting that the waiver "provides protection against all potential claims." No. CIV.A. 04C-11-276 (CLS), 2007 WL 3360036, at **6 (Del. Super. Ct. Apr. 30, 2007); *see also World-Link*, 2000 WL 1877065, at *3 (noting that waiver was "distinguished . . . by [its] typeface, appearing in capital letters of a sort typically and appropriately used to call a party's attention to broad disclaimers of liability").

## II.     Frontier's Claims Do Not Arise from the Indemnity Clause.

Frontier's breach of contract claim alleges that 1) Menzies failed to adhere to the standard of work set forth in the SGHA and Annex, and 2) Menzies failed to indemnify Frontier for all claimed items of damage immediately upon Frontier's demand, pursuant to ¶ 4.1 of the Annex.  Throughout its Opposition, Frontier conflates these two bases for its breach of contract claim, attempting to construe its demand for repair costs, flight operations costs, and leasing fees as arising from the indemnity provision.  However, an indemnity right is commonly understood as "the right of a party who is secondarily liable to recover from the party who is primarily liable for reimbursement of expenditures *paid to a third party*" (*Black's Law Dictionary* 784 (11th ed. 2019) (emphasis added)), and as discussed in Menzies' opening brief, Delaware courts have consistently found that indemnity provisions are presumed not to cover first-party claims unless they contain "specific language" evincing an intent to do so (*see, e.g.*, *Senior Hous. Capital, LLC v. Shp Senior Hous. Fund, LLC*, 2013 WL 1955012, at *44–45 (Del. Ch. May 13, 2013)).  Here, ¶ 4.1 does not cover first-party claims, such that Menzies' indemnity obligations are largely irrelevant to Frontier's breach of contract and tort claims.

In support of its contention that ¶ 4.1 encompasses first-party claims, Frontier first points to ¶ 4.1's "fee-recovery provision" – presumably the reference to "court costs and

attorney's fees."[2]  However, it is well-established that such language does not suffice to turn a standard indemnity provision into a fee-shifting clause under Delaware law.  In *Data Centers, LLC v. 1743 Holdings LLC*, the court found that a "regularly utilized" indemnity provision which required indemnification for "all claims . . . liabilities, costs, [and] actual damages or expenses []including reasonable attorney's . . . fees" did not constitute a "clear and unequivocal articulation of intent to provide [indemnitee] with direct indemnity rights for claims brought against [d]efendants."  No. 15 Civ. 02041 (EMD), 2015 WL 9464503, at **3, 5, 6 (Del. Super. Ct. Oct. 27, 2015).  The court in *In re Bracket Holding Corp. Litig.* reached a similar conclusion.  No. 15 Civ. 02233 (WCC), 2020 WL 764148, at *16 (Del. Super. Ct. Feb. 7, 2020) ("standard" indemnity clause covering "any and all losses," including attorneys' fees, did not apply to first-party claims); *Transched Sys. Ltd. v. Versyss Transit Sols., LLC*, No. 07C–08–286 (WCC), 2012 WL 1415466, at *2 (Del. Super. Mar. 29, 2012) (same).

Frontier further highlights the fact that the indemnity clause provides that Menzies must defend Frontier from claims arising out of Menzies' services, including "loss, theft, damage or destruction of property, *including the property of the Carrier*."  However, Frontier ignores the last part of the sentence: "*. . . including the property of the Carrier, the Handling Company and third persons*" (emphasis added).  The inclusion of "property of the Handling Company" in this provision underscores the fact that ¶ 4.1 was not intended to encompass first-party claims.  Rather, the more logical reading is that Menzies is obligated to indemnify Frontier for third-party claims arising from, *inter alia*, damage incidents involving the property of Frontier, Menzies, or third persons.[3]

---

[2] Frontier appears to concede that the choice of law provision in the Annex precludes application of A.R.S. § 12-341.01.

[3] Frontier suggests that ¶ 4.2 – which extends the indemnity obligation to "loss, cost, or damage resulting from flight delays or cancellations caused by the performance or nonperformance of services" – "reinforces Menzies's first-party indemnity obligations," since Frontier "would obviously suffer [such] losses resulting from delays and cancellations."  ECF No. 79 at n.3.  Frontier is mistaken.  If ¶ 4.2 encompassed only third-party claims, expenses incurred by customers or employees of Frontier affected by a cancellation or delay would fall under ¶ 4.2. 5

Courts routinely find that even the broadest indemnity clauses – *e.g.*, covering all claims arising out of the indemnitor's performance of contracted-for services, and all damage to any subject property – *not* to express an intent to apply to first-party claims. *See, e.g.*, *Exelon Generation Co., LLC v. Tugboat DORIS HAMLIN*, No. 06 Civ. 0244, 2008 WL 2188333, at **1–2 (E.D. Pa. May 27, 2008) (indemnity provision covering losses arising from "damage to or loss of property (including the property of the [indemnitee]" did not unequivocally express an intent to cover first-party claims); *Data Centers*, 2015 WL 9464503, at **3, 5 (same, regarding indemnity provision covering "damage to any property"); *In re Bracket*, 2020 WL 764148, at *16 (same, regarding indemnity covering all losses arising from "any breach or violation of the covenants made in this [a]greement by [indemnitor]"); *Hooper Assoc. v. AGS Computers*, 74 N.Y.2d 487, 492 (1989) (same, regarding provision covering all losses arising from indemnitor's installation and maintenance of computer system).[4]

All told, none of the language Frontier highlights in ¶ 4.1 clearly evinces an intent to extend Menzies' indemnity obligation to first-party claims.

## III. Frontier Relies on a Strained Interpretation of ¶¶ 4.1 and 4.3 of the Annex.

### A. Frontier's Reading of ¶ 4 Is Not Supported By Delaware Case Law.

Notably, if ¶ 4.1 were to require indemnification for first-party claims in addition to third-party claims, as Frontier suggests – thus rendering it far broader than ¶ 4.3, which only applies to first-party claims – this would only further Menzies' argument that the language of ¶ 4.3 qualifies ¶ 4.1 and limits the recoverable damages. "An important principle of contract construction is that '[w]here there is an inconsistency between general . . . and specific provisions, the specific provisions ordinarily qualify the meaning of the general . . . .'" *Hildebrand v. Watts*, No. 13988, 1997 WL 124150, at **3–4 (Del. Ch. Feb.

---

[4] Paragraph 4.1 also does not reference "prevailing parties," which is "a hallmark term of fee-shifting provisions." *Transched Sys. Ltd.*, 2012 WL 1415466, at *3. Further, the use of the term "defend and hold harmless" is generally construed as an indication that only third-party claims are contemplated by an indemnity clause. *See, e.g.*, *Data Centers*, 2015 WL 9464503, at *6; *Exelon Generation*, 2008 WL 2188333, at *3.

18, 1997) (citations omitted); *see also Wiggs v. Summit Midstream Partners, LLC*, No. CIV.A. 7801-VCN, 2013 WL 1286180, at *11 (Del. Ch. Mar. 28, 2013) (same, finding general provisions qualified by provision specifically limiting defendants' duties to plaintiff); *Wood v. Coastal States Gas Corp.*, 401 A.2d 932, 941 (Del. 1979) (same).

Moreover, even if ¶ 4.1 were to provide a basis for Frontier's claims in this case (and as discussed above, it does not), the "any and all" language upon which Frontier relies is standard language that frequently appears in indemnity clauses that are found to be subject to limitation of liability provisions. For example, in *Brace Indus. Contracting, Inc. v. Peterson Enterprises, Inc.*, the parties' contract required indemnification of all "losses," and broadly defined "losses" as including "damages, liabilities, deficiencies, [a]ctions, judgments, interest, awards, penalties, fines, costs or expenses *of whatever kind*, including reasonable attorneys' fees." No. 11189 (VCG), 2016 WL 6426398, Dkt. No. 274 (Joint Pre-Trial Stipulation and Proposed Order) at p.7 (March 18, 2016) (emphasis added). The court found that the contract's waiver of consequential damages qualified this indemnity language. Similarly, the court in *Rob-Win, Inc. v. Lydia Sec. Monitoring, Inc.* applied a consequential damages waiver to an indemnity clause requiring indemnification "from and against *all* claims by *any* subcontractor." 2007 WL 3360036, at **6, 3, n.20 (emphases added).[5]

Frontier's interpretation of the phrase "[u]nless specifically permitted by this agreement" is also flawed, as demonstrated by *Wood*, 401 A.2d at 940–41, where the contract at issue provided that "[n]o adjustment of the conversion ratio shall be made . . . *except as expressly provided herein*." (emphasis added). The *Wood* plaintiff argued that the phrase "except as expressly provided herein" should allow the court to look to general

---

[5] Both of the cases that Frontier cites in support of the proposition that the phrase "any and all" must include consequential damages are inapposite. In *BP Prod. N. Am. Inc. v. J.V. Indus. Companies, LTD.*, No. 07 Civ. 2369 (NFA), 2010 WL 1610114, at *6 (S.D. Tex. Apr. 21, 2010), the subject contract provided that the consequential damages waiver "***does not apply*** to any consequential damages which are integrated into any indemnification liability assumed by [indemnitor] pursuant to this [c]ontract." *Id.* (emphasis in original). In *Federated Mut. Ins. Co. v. Concrete Units, Inc.*, 363 N.W.2d 751 (Minn. 1985), the subject contract contained no limitation on consequential damages.

7

provisions in the contract concerning recapitalization, but the court found that the phrase referred to those paragraphs which expressly allowed for changes in the conversion ratio. *Id.* Here, the phrase "unless specifically permitted" likewise refers to provisions specifically allowing recovery of consequential damages, and Frontier has pointed to no such provision or subsequent agreement allowing recovery of lease-related costs.

In sum, even if ¶ 4.1 were to provide Frontier with a basis for its claims against Menzies, it is ¶ 4.3 that qualifies and limits ¶ 4.1, not the other way around.

### B. Menzies' Reading Gives Full Weight to Both ¶¶ 4.1 and 4.3.

Frontier seems to recognize that if ¶ 4.1 were to provide a basis for its claims against Menzies (along with all other first- and third-party claims), and if ¶ 4.3 were limited by ¶ 4.1, the phrase "any and all" in ¶ 4.1 would essentially swallow ¶ 4.3's waiver entirely. In order to avoid this outcome, Frontier argues that ¶ 4.1 only requires indemnification for first- and third-party claims arising out of Menzies' performance of "services" – that is, Menzies' performance of the duties listed in ¶ 1.1 of the Annex. Frontier thus attempts to cast the "services" listed in ¶ 1.1 (which would fall within the scope of ¶ 4.1, according to Frontier), as distinct from the "other obligations" contained in the remainder of the SGHA and Annex (which, according to Frontier, do not fall within the indemnity provision). *See* ECF No. 79 at p 8.

However, it is clear from both the perfunctory language and bullet format of ¶ 1.1, and a plain reading of the Annex and SGHA together, that ¶ 1.1 is intended to broadly list the services that Menzies contracted to provide under the SGHA and Annex, while the rest of the SGHA and Annex elaborates on the manner in which, and the conditions under which, Menzies agreed to carry out such services. For instance, as Frontier correctly states, ¶ 3 of the Annex specifies how Menzies is to make disbursements on behalf of Frontier in the course of providing the various services enumerated in ¶ 1.1 (perhaps in the course of "liais[ing] with ramp fuel suppliers" (6.5.1) or "liais[ing] with the Carrier's catering supplier" (6.7.1)), while ¶ 5 and ¶ 16 describe Menzies' obligations related to insurance and handling of confidential financial information and passenger information, respectively. *See* Ex. A. Similarly, ¶ 15.3 provides that Menzies "shall not discriminate against any . . .

8

9971180.1

individual with a disability . . . *in performing services under this Annex B*." *Id.* (emphasis added). Article 5 of the SGHA sets forth the standard of work for all services "having a safety aspect." *See* Ex. B.

The only logical reading of ¶ 4.1 is that a breach of any of the provisions of the SGHA or Annex – including those that contain what Frontier calls "other obligations," such as ¶¶ 3, 5, and 16 of the Annex – may give rise to a claim for indemnification, as all of Menzies' obligations under the SGHA and Annex relate to its performance of the "services" listed in ¶ 1.1.[6] Thus, Frontier's reading of ¶ 4 – where the waiver in ¶ 4.3 is limited by the indemnity clause in ¶ 4.1 – relies on an interpretation of ¶ 4.1 that is clearly untenable. Under Menzies' reading – where ¶ 4.1 covers only third-party claims, while ¶ 4.3 covers all first-party claims – the sweeping language of both ¶ 4.1 and ¶ 4.3 can coexist, since they apply to different types of claims.

### IV. The Economic Loss Rule Bars Frontier's Tort Claim.

Rather than substantively and fully addressing the application of Arizona's economic loss rule ("ELR") to the instant case, Frontier's Opposition mischaracterizes Arizona's ELR factors as well as the case law cited in Menzies' opening brief.

As discussed at length in Menzies' opening papers, Arizona courts applying the ELR not only weigh the contract and tort law policies implicated in a particular action – as described in *Salt River Project Agric. Improvement and Power Dist. v. Westinghouse Elec. Corp.,* 694 P.2d 198 (Ariz. 1984) and further clarified in *Flagstaff Affordable Hous. Ltd. P'ship v. Design All., Inc.*, 223 Ariz. 320 (2010) – but they also examine whether the subject contract contains "detailed provisions allocating risks of loss" (*Flagstaff*, 223 Ariz. at 325). Here, the SGHA and Annex fully address the standards by which Menzies was expected to perform its services. Frontier's Ground Handling Manual, which is incorporated into the SGHA (SOF ¶ 5), lays out the procedures for operating ground

---

[6] Indeed, while Frontier describes Menzies' confidentiality and data protection duties under ¶ 16 of the Annex as "other obligations" not subject to indemnity, ¶ 4.1 itself lists privacy violations and "libel, slander, and/or defamation of character" as types of claims covered by the indemnity clause – all of which would arise from breaches of ¶ 16.

9
9971180.1

handling equipment and for enplaning and deplaning individuals from aircraft (*id.* ¶ 8). Annex ¶ 1.2 details Menzies' rates for each of its services, as well as penalties for flight delays, passenger complaints, improper training, and other errors. Moreover, in the event that any damage or loss were to occur in the course of Menzies' performance of services, the Annex requires Menzies to indemnify Frontier for third-party claims arising from such damage. The SGHA and Annex thus contain provisions allocating risks of loss, in addition to safety and quality standards pertaining to each service provided by Menzies. As such, "policies of accident deterrence and loss-spreading [do] not require allowing tort recovery." *Cook v. Orkin Exterminating Co.*, 258 P.3d 149, 153 (Ariz. Ct. App. 2011).

Arizona courts applying the ELR further examine whether the alleged damages consist of exclusively economic losses. *See id.* Here, just as a house is considered the bargained-for item in a pest control service contract (*id.*), Frontier's aircraft is the "bargained-for item" under the SGHA and Annex. Frontier's attempt to distinguish *Cook* as not involving damage to property is unavailing. The appellants in *Cook* not only alleged that Orkin had contracted to repair damage to the subject property in addition to treating the property, but they also alleged that Orkin's substandard work caused additional damage to the property. 2010 WL 2893575, Appellate Br. at \*\*6, 8 (June 21, 2010) (alleging that Orkin's conduct caused the home to become "unsightly and structurally unsound," as well as "uninhabitable and dangerous"). After noting that the ELR addresses economic loss in the form of "commercial damage, including any decreased value or repair costs" (258 P.3d at 153 n.4, citing *Flagstaff*), the *Cook* court found that no injury had been alleged besides that to the subject property. *Id.* at 153.

Frontier cites *Sports Imaging of Arizona, LLC v. 1993 CKC Tr.* in asserting that the ELR does not bar "tort claims . . . premised upon independent duties existing apart from the contract" – a point that Menzies does not dispute. No. 1 CA-CV 05-0205, 2008 WL 4448063, at \*20 (Ariz. Ct. App. Sept. 30, 2008). *Sports Imaging* is a pre-*Cook* case where there was no contract between the parties. *Id.* The court thus specifically looked to case law involving tort duties that were separate and distinct from the conduct forming a breach of contract claim. *See, e.g., HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d

10

1238, 1239 (Fla. 1996) (noting that "[f]raudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract"); *Grynberg v. Questar Pipeline Co.*, 70 P.3d 1, 13 (Utah 2003) (distinguishing between torts based on independent duty, such as fraudulent inducement, and ordinary negligence claims based on duty to perform contracted services according to a certain standard, and ultimately finding all tort claims barred by ELR).[7]

Here, as in *Grynberg*, Frontier has failed to allege any duty beyond a duty to perform contracted services according to the exacting standards set by the SGHA and Frontier's Ground Handling Manual. Indeed, Frontier's tort claim does not require "proof of facts separate and distinct from the breach of contract." *HTP, Ltd.*, 685 So. 2d at 1239. As such, Arizona's ELR precludes Frontier's tort claim.

## CONCLUSION

Based on the foregoing, Menzies respectfully requests that the Court grant summary judgment as to the availability of consequential damages and attorneys' fees in this action.

Dated this 27th day of December 2021

JONES, SKELTON & HOCHULI, P.L.C.

By  /s/ Gary Linder
         Gary Linder

*Counsel for Defendant*
*MENZIES AVIATION (USA) INC.*

---

[7] Notably, all of the cases Frontier cites either involve claims for fraudulent inducement (*see, e.g.*, *KD & KD Enterprises, LLC v. Touch Automation, LLC*, No. 06 Civ. 2083 (FJM), 2006 WL 3808257 (D. Ariz. Dec. 27, 2006)), or a failure to establish the existence of a valid contract covering the relevant services (*see, e.g.*, *In re Banner Health Data Breach Litig.*, No. 16 Civ. 02696 (SRB), 2017 WL 6763548, at *8 (D. Ariz. Dec. 20, 2017)).

9971180.1

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of December, 2021, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

Adam E. Lang
Matt Jarvey
Snell & Wilmer, LLP
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
alang@swlaw.cin
mjarvey@swlaw.com
Attorneys for Plaintiff Frontier Airlines, Inc.

/s/ Jennifer Bernardo

12

9971180.1